IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

MID-AMERICA MILLING COMPANY, LLC, et al.,

    Plaintiffs,

v.                                                                                  Case No. 3:23-cv-72

UNITED STATES DEPARTMENT
OF TRANSPORTATION, et al.,

    Defendants.

_____

**DECLARATION OF GREGORY BAGSHAW**
_____

Pursuant to 28 U.S.C. § 1746, I, Gregory Bagshaw, declare as follows:

1. I am Vice President of Bagshaw Trucking, Inc. ("Bagshaw"). I have been employed by the company since I founded it in 1982.

2. Bagshaw is headquartered in Memphis, Indiana and provides heavy trucking and hauling services for the construction industry throughout southern Indiana and Kentucky. Bagshaw trucks haul materials and equipment from job site to job site. Our drivers undergo extensive training and comply with all federal and state Department of Transportation regulations.

3. I started Bagshaw with two dump trucks, two employees, and my will to succeed. Over the years, I grew the business into one of the largest truck fleets in the Louisville metropolitan area.

4. By the mid-1990s, I expanded the business to include not only dump trucks, but tractors and lowboy trailers as well. This was an important step in the business's development. While dump trucks can haul dirt, rocks, fill, and other material from one job site to another, they cannot transport the heavy equipment (including, but not limited to, excavators, bulldozers, skid

steer loaders, backhoes, etc.) that perform the construction work. A lowboy trailer can haul such heavy construction equipment.

5. This expansion increased Bagshaw's capabilities, permitting the company to bid on more and bigger projects. Companies with limited equipment and employees necessarily have limited capacity to take on certain numbers and types of work.

6. Bagshaw routinely works on major interstate construction and restoration projects, bridge building, and other development projects, such as industrial parks and subdivisions.

7. Over the past fourteen months alone, federal highway contract revenue represents between $3 and $4 million of Bagshaw's total revenue.

8. To ensure the best future for the company and to give back to our loyal employees, Bagshaw began transferring ownership of the company to its employees through an employee stock ownership plan (ESOP) in 2019. That transition was completed in 2022, and Bagshaw is now 100% employee owned. Bagshaw employs approximately 75 people.

9. Although I no longer own a majority interest in the company, and even though many of our employee-owners are non-white, according to federal and state agencies, Bagshaw cannot qualify as a federal "disadvantaged business enterprise" or DBE.

10. As Vice President and the former owner, I have personal knowledge of Bagshaw's bidding process for highway work funded by the United States Department of Transportation and overseen by state departments of transportation, including the impact of the federal DBE program on projects for which Bagshaw bids.

11. For example, in Indiana, the Indiana Department of Transportation (INDOT) provides notice of specific dates on which contracts are to be "let" (or opened) for bids. These projects are funded with federal dollars. Contractors and subcontractors then use INDOT's website

to submit extensive documentation about the applicant's scope of work, proposed price for that work, and compliance with DBE goals, among other information. All prime contractors who submit bids are required to use the state's DBE Directory to find and verify DBE contractors before electronically uploading their bids.

12. The bids are then reviewed and contracts awarded. The lowest price for the scope of work bid does not necessarily win the contract because the DBE program requires the general contractor to make affirmative efforts to meet the DBE goal for the particular project. As a practical matter, this sometimes means that work is awarded to a bidder at a higher price than would otherwise have been paid because the recipient of the contract is a DBE.

13. Kentucky's procurement process is similar Indiana's. Both states use DBE goals on their projects.

14. Bagshaw has lost work to DBEs on hauling contracts for federally funded projects in both Kentucky and Indiana for which the company was otherwise able, ready and willing to perform the work.

15. As an example, Bagshaw frequently works with a general contractor to provide hauling services on highway projects. On several occasions, Bagshaw has provided the lowest bid as a subcontractor for the hauling work on bridge and highway projects, but the hauling contract has gone to a DBE instead.

16. By my estimate, Bagshaw loses about $3 million annually to DBEs on projects for which it is otherwise qualified, ready, and able to do the work. If the discriminatory race and gender requirements of the DBE program were not in place, the increase in demand for Bagshaw's services would also allow the company to further grow—adding more trucks and more employees.

17. Both Indiana and Kentucky continuously post new opportunities to bid, and these upcoming projects continue to require DBE goals, just as they have for decades. Therefore, it is certain that each month that goes by, Bagshaw will continue to be negatively impacted by the race and gender preferences imposed by the DBE program.

18. On some occasions, Bagshaw has been called in to perform the work after the DBE on the project has determined it is unable to perform its portion of the work (typically because it has obligations on other projects as a DBE). On other occasions, Bagshaw simply loses the contract and does not get the opportunity to perform the work.

19. Bidding on contracts that are let represents a significant investment of time by our employees. It is frustrating to know that in many instances our company will not even be considered for work, and that in other situations Bagshaw will be considered only if a minority- or woman-owned concern either does not bid or wins but then cannot perform on the contract. Absent discriminatory race and gender preferences, Bagshaw would not be deterred from pursuing additional federally funded hauling and trucking contracts and could place additional bids.

20. The DBE program's discriminatory preferences have foreclosed equal competition for contract work vital to Bagshaw's success and growth.

21. I do not believe it is right for the federal government to discriminate against any person based on their race, no matter what that race is. It is demeaning and dehumanizing to decide who is best qualified to perform work in the construction industry or in any industry based upon the owner's skin color.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 8, 2023.

*Gregory Bagshaw*
Gregory Bagshaw