# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### FRANKFORT

**MID-AMERICA MILLING COMPANY, LLC, *et al.*,**

**Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,**

**Defendants.**

**Case No. 3:23-cv-00072-GFVT**

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

The U.S. Department of Transportation (DOT)'s Disadvantaged Business Enterprise (DOT DBE) program, which has been authorized repeatedly by Congress, is designed to provide fair and efficient small business contracting, including by remedying ongoing discrimination and the continuing effects of past discrimination in federally assisted highway, transit, and airport contracting markets nationwide. *See* 49 C.F.R. § 26.1. To this end, the program requires DOT grant and funding recipients to set subcontracting goals on transportation projects for socially and economically disadvantaged small businesses, known as DBEs, based on local market conditions. *Id.* § 26.45(b). The DOT DBE program does *not* set aside contracts or impose quotas for certain races or genders. *Id.* § 26.43. Instead, DOT requires each funding recipient, such as a state transportation agency, to calculate a local goal for participation by DBEs based on their availability and other factors. *Id.* § 26.45(c)–(d). Recipients must pursue these goals using race- and gender-neutral means to the maximum extent possible. *Id.* § 26.51(a). If they are unable to achieve their goals using race- and gender-neutral means, they set DBE participation goals on certain individual

contracts, and prime contractors on those contracts must make good faith efforts to subcontract enough work to DBE firms to meet those goals. *Id.* §§ 26.51(d)–(e), 26.53.

Any person may qualify as socially and economically disadvantaged (a prerequisite for DBE status), regardless of their race or gender. 49 C.F.R. § 26.67(d) & app. E. The only explicit race- or gender-based aspects of the DOT DBE program are the rebuttable presumptions of social and economic disadvantage afforded to small business owners who are women or members of certain racial and ethnic minority groups. 49 C.F.R. § 26.5. Every court of appeals to consider the constitutionality of the DOT DBE program has upheld it. *See Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 941, 935–36 (7th Cir. 2016); *W. States Paving Co. v. Wash. State Dep't of Transp.*, 407 F.3d 983, 995 (9th Cir. 2005); *Sherbrooke Turf, Inc. v. Minn. Dep't of Transp.*, 345 F.3d 964, 967–68 (8th Cir. 2003); *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1155 (10th Cir. 2000).

On October 13, 2023, Plaintiffs filed a Complaint, ECF No. 1, challenging the facial constitutionality of the DOT DBE program. Plaintiffs assert in conclusory fashion that they are "qualified, willing, and able" to bid or compete for "contracts impacted by the federal DBE program" but "remain at a disadvantage because of their race and gender." Compl. ¶¶ 8, 11–12. Plaintiffs also summarily allege that "the federal DBE program has negatively impacted Plaintiffs and is currently in effect, discriminating against Plaintiffs on the basis of race and gender." *Id.* ¶ 32. But Plaintiffs do not identify their own race or gender, plead any facts suggesting that Plaintiffs would qualify as DBEs without regard to any race- or gender-based presumption, or identify any contracts or awards in either Indiana or Kentucky that have been awarded in a project with DBE subcontracting goals and for which they might otherwise have qualified or, indeed, competed.

Defendants move to dismiss Plaintiffs' Complaint for the following independent reasons. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7). First, under Rule 12(b)(6), Plaintiffs fail to meet Rule 8's basic pleading requirements by which Plaintiffs must make sufficient factual allegations to raise the possibility of their right to relief above the speculative level. As noted, Plaintiffs fail to identify the race or gender of the Plaintiff businesses' owners, thus rendering any equal protection claim fatally deficient. Nor do Plaintiffs provide any information about the contracts they allegedly "competed for and lost out on," Compl. ¶ 38, to DBEs—such as what state or local agency awarded the contract, when the award was made, whether Plaintiffs were otherwise qualified for them, or why they lost out on them.

Second, the Court should dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs fail to plausibly allege injury in fact, traceability, or redressability as required for Article III standing. Plaintiffs do not allege that they have ever lost out on contracts with DBE participation goals or that they are likely to do so in the future. Nor do they allege that they meet the race- and gender-neutral requirements for DBE certification. Plaintiffs therefore do not plausibly allege that any alleged disadvantage they face as non-DBEs is traceable to the program's rebuttable presumptions or would be redressed by enjoining the use of those presumptions.

Third, the Court should dismiss the Complaint under Rule 12(b)(7) because it fails to name as a defendant any state or local agency that applies the presumptions in certifying DBEs, sets contract-specific DBE goals, places contracts out for bid, or selects prime contractors' bids. Consequently, the Court cannot accord complete relief among existing parties in those entities' absence. Finally, the Court should dismiss Plaintiffs' Administrative Procedure Act claim under Rule 12(b)(1) and Rule 12(b)(6) because it fails for the same substantive reasons that their

constitutional claim does, and because it is time-barred.

## I.    BACKGROUND

The DOT DBE program is designed to ensure that state and local recipients of certain DOT funds award and administer contracts in DOT-funded highway, transit, and airport projects to small businesses in a nondiscriminatory manner. *See* 49 C.F.R. § 26.1. Congress first mandated the DOT DBE program in 1983,[1] and it has since regularly reauthorized the program in surface transportation bills,[2] most recently in the Infrastructure Investment and Jobs Act. *See* Pub. L. No. 177-58, § 11101(e), 135 Stat. 429, 448–450  (Nov. 15, 2021) (Infrastructure Act).[3] Congress has established a national aspirational goal of spending at least 10% of funds through DBEs, *see* 49 C.F.R. § 26.41, but the Secretary of Transportation may also determine alternate goals, *see* Pub. L. No. 117-58, § 11101(e)(3), 135 Stat. 449. To meet this national aspirational goal, recipients of DOT funding set their own local aspirational DBE goals and "cannot be penalized, or treated by the Department as being in noncompliance with this rule, because [their] DBE participation falls short of [the recipients'] overall goal," as long as they operate the DBE program in good faith. 49 C.F.R. § 26.47.

DOT regulations define a DBE as a for-profit small business concern: (1) "that is at least 51 percent owned by one or more individuals who are both socially and economically

---

[1] *See* Surface Transportation Assistance Act of 1982, Pub. L. No. 97-424, § 105(f) (1983).
[2] *See* Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub. L. No. 100-17, § 106(c) (1987); Intermodal Surface Transportation Efficiency Act of 1991, Pub. L. No. 102-240, § 1003(b)(1) (1991); Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, § 1101(b)(1) (1998); Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109-59, § 1101(b)(2) (2005); Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112-141, § 1101(b)(3) (2012); Fixing America's Surface Transportation Act, Pub. L. No. 114-94, § 1101(b)(3) (2015).
[3]      Available      here:      https://www.govinfo.gov/content/pkg/PLAW-117publ58/pdf/PLAW-117publ58.pdf.

disadvantaged . . . ; and (2) [w]hose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it." *Id.* § 26.5. A small business concern is a business that adheres to the requirements of "section 3 of the Small Business Act and Small Business Administration regulations implementing it," *id.* (citing 13 C.F.R. pt. 121), and that also has "average annual gross receipts . . . over the firm's previous three fiscal years" of $30.40 million or less, *id.* § 26.65(b).[4] DOT DBE regulations also prescribe ownership structure requirements for partnerships, corporations, and limited liability companies, requiring at least 51% ownership by a DBE for each type of entity. *Id.* § 26.69(b). Only an independent business whose "viability . . . does not depend on its relationship with another firm or firms" may be certified as a DBE. *Id.* § 26.71.

DOT provides funds and grants to state transportation agencies and other local recipients, and it is those agencies and recipients that contract directly with private transportation construction firms. *See id.* § 26.1. Recipients of DOT financial assistance—i.e., state and local transportation agencies—are required to establish narrowly tailored DBE participation goals based on local market conditions. *See id.* § 26.45.[5] A recipient must meet the maximum feasible portion of its overall goal by using race- and gender-neutral means of facilitating DBE participation, typically

---

[4] A DOT regulation sets the annual gross receipts cap at $26.29 million and indicates that DOT "will adjust this amount for inflation on an annual basis." 26 C.F.R. § 26.65(b). The current cap, effective March 1, 2023, is $30.40 million. *See* www.transportation.gov/DBEsizestandards.

[5] The Kentucky Transportation Cabinet (KYTC) has set the 2023–25 DOT DBE overall goal at 12.7%, of which it expects to meet 2.3% through race-neutral means. *See Kentucky Transportation Cabinet DBE Goal Methodology Federal Fiscal Year (FY) 2023–2025*, at 1 (available here: https://transportation.ky.gov/Civil-Rights-and-Small-Business-Development/Documents/FY%2023-25%20Goal%20Methodology%207.16.22.pdf); *see also New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

through open contracting in which DBE contractors participate like any other bidders or when DBEs are awarded subcontracts on a prime contract that does not carry a DBE goal. *Id.* § 26.51(a). If and only if a recipient cannot meet its DBE goal through exclusively race- and gender-neutral means, then it sets individual DBE subcontracting goals on at least some prime contracts. *Id.* § 26.51(d)–(e). If the contract includes a DBE goal, typically a percentage value of the overall contract, the prime contractor must meet the goal by hiring DBE subcontractors or show that it could not do so despite using good-faith efforts. *Id.* § 26.53 & App. A. If the prime contractor used good-faith efforts, it may not be denied an award because of its failure to meet the goal. 49 C.F.R. § 26.53. Recipients of DOT funding are required to certify the eligibility of DBE firms to participate in their DOT-assisted contracts. *Id.* §§ 26.81–91.

As noted, DBE firms must be owned and controlled by socially and economically disadvantaged individuals. *See id.* § 26.5. Congress did *not* limit the category of socially and economically disadvantaged persons to persons of any particular race, ethnicity, or gender. Socially disadvantaged individuals are defined in a race-neutral manner as "those who have been subjected to racial or ethnic prejudice or cultural bias within American society" because of their identities as members of groups and without regard to their individual qualities. *Id.* However, based on evidence of discrimination and its lingering effects in many aspects of surface transportation-related business in both public and private markets, Congress concluded that members of specified groups are entitled to a rebuttable presumption of social and economic disadvantage: Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and women of any race. *Id.* In reauthorizing the DOT DBE program under the Infrastructure Act in 2021, Congress found that:

- "[W]hile significant progress has occurred due to the establishment" of the program, "discrimination and related barriers continue to pose significant obstacles for minority-

and women-owned businesses seeking to do business" in the transportation industry, Pub. L. No. 117-58, § 11101(e)(1)(A), 135 Stat. at 448;

- These barriers merit the continuation of the DOT DBE program, *id.* § 11101(e)(1)(B), 135 Stat. at 448; and

- The "testimony and documentation of race and gender discrimination from numerous sources, including congressional hearings and roundtables, scientific reports, reports issued by public and private agencies, news stories, reports of discrimination by organizations and individuals, and discrimination lawsuits . . . show that race- and gender-neutral efforts alone are insufficient to address the problem," *id.* § 11101(e)(1)(C), 135 Stat. at 449.

Taken together, this evidence: (1) demonstrates that "discrimination across the United States poses a barrier to full and fair participation in surface transportation-related businesses of women business owners and minority business owners and has impacted firm development and many aspects of surface transportation-related business in the public and private markets"; and (2) "provide[s] a strong basis that there is a compelling need for the continuation of the [DOT DBE program] to address race and gender discrimination in surface transportation-related business," *id.* § 11101(e)(1)(D)–(E), 135 Stat. at 449.

The rebuttable presumption of social and economic disadvantage for members of the groups identified in 49 C.F.R. § 26.5 does not automatically entitle them to participate in the DOT DBE program. To the contrary, recipients of DOT funding must require DBE "applicants to submit a signed, notarized certification that each presumptively disadvantaged owner is, in fact, socially and economically disadvantaged," 49 C.F.R. § 26.67(a)(1), "certify that he or she has a personal net worth that does not exceed $1.32 million," *id.* § 26.67(a)(2)(i), "support [the certification] with a signed, notarized statement of personal net worth, with appropriate supporting documentation," *id.* § 26.67(a)(2)(ii), and "on a case-by-case basis, require additional financial information from the owner of an applicant firm," *id.* The presumption of economic disadvantage is rebutted if the owner submits a statement that shows a personal net worth in excess of $1.32 million or

demonstrates the owner's ability to accumulate substantial wealth. *Id.* § 26.67(b).

The DOT DBE program is not limited to those who fall within the categories of persons who are presumed disadvantaged. To the contrary, firms that are "owned and controlled by individuals who are not presumed to be socially and economically disadvantaged (including individuals whose presumed disadvantage has been rebutted) *may apply* for DBE certification" by showing that they are, in fact, socially and economically disadvantaged. *Id.* § 26.67(d) (emphasis added). To show social disadvantage, the applicant must identify circumstances beyond their control that caused such disadvantage, including "at least one objective distinguishing feature that has contributed to social disadvantage, such as race, ethnic origin, gender, disability, long-term residence in an environment isolated from the mainstream of American society, or other similar causes not common to individuals who are not socially disadvantaged." *Id.* § 26, App. E pt. 1(A). Economic disadvantage is also defined race-neutrally, requiring a showing that an applicant's "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." *Id.* § 26, App. E. If the individual's personal net worth does not exceed $1.32 million, and the individual shows social and economic disadvantage, they will be deemed socially and economically disadvantaged and are therefore eligible for participation in the DBE program. *Id.* § 26.67(d) & App. E.

## II.     ARGUMENT

### A.     Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted Because Their Complaint Fails to Meet Rule 8's Pleading Standard.

Because Plaintiffs have not made factual allegations sufficient to raise a right to relief above a "speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Court should dismiss their Complaint under Federal Rule of Civil Procedure 12(b)(6). A complaint must

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim does not have facial plausibility when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). This showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted." *Evans v. Armenta*, 134 F. Supp. 3d 1052, 1057 (E.D. Ky. 2015).

Even construing "the complaint in the light most favorable to plaintiffs [and] accept[ing] all well-pled factual allegations as true," *League of United Latin Am. Citizens*, 500 F.3d at 527, Plaintiffs' Complaint fails the *Iqbal* standard. It is impossible to decipher from the Complaint who Plaintiffs are, how they were injured, or by whom. Plaintiffs have stated only that they have bid on contracts in Kentucky and Indiana, that they "regularly" do so, that *some* of these contracts have DBE participation goals, and, vaguely, that "Kentucky and Indiana have implemented federal requirements for DBE goals through race-conscious means." *See* Compl. ¶¶ 35–39. Although

Plaintiffs allege in generalized fashion that they "lost out" to DBE firms despite being the lowest bidder on "several federally funded projects," *id.* ¶ 8, they indicate nothing about the nature of those projects, whether they were in Plaintiffs' industries, whether they would have otherwise been qualified for an award of those contracts, whether they would have qualified for a DBE contract if the program were entirely race- and gender-neutral, or whether the contracts in those industries had DBE goals or used race- or gender-based means to meet them.[6] Without these vital facts, Defendants and the Court are required to speculate on how Plaintiffs were injured and by whom.

The Complaint's legal conclusions about race and gender discrimination, *see, e.g.*, Compl. ¶¶ 31, 40–42, although "couched as . . . factual allegation[s]," *Iqbal*, 556 U.S. at 678, are nonetheless deficient because Plaintiffs do not even identify the race or gender of their owners. If Plaintiffs are owned and controlled by individuals that the DBE program presumes to be disadvantaged—i.e., women or members of certain racial groups—then any injury they have allegedly suffered would not be caused by the race- and gender-based program elements that they challenge, and they could not plausibly allege that the program discriminates against them on the basis of race or gender. *See, e.g.*, *Nathan v. Papa John's Int'l, Inc.*, 2011 WL 2173739, at *1 (W.D. Ky. June 2, 2011) (dismissing employment discrimination complaint when it failed to identify the plaintiff's race). Moreover, Plaintiffs do not explain whether they were affected by, and are

---

[6] This type of information is publicly available. For example, KYTC provides project summaries, descriptions, DBE goals, and bidding procedures at *Construction Procurement*, available at https://transportation.ky.gov/Construction-Procurement/Pages/default.aspx (last visited January 16, 2024). Specific contracts with DBE goal information and project details are also publicly available at linked websites including *Notice to Contractors*, https://transportation.ky.gov/Construction-Procurement/Publications/2022-07-21/Notice%20to%20Contractors.pdf (last visited January 16, 2024); https://transportation.ky.gov/Construction-Procurement/Proposals/101-GRANT-22-1033.pdf (last visited January 16, 2024); and https://transportation.ky.gov/Construction-Procurement/Proposals/202-OHIO-22-4446.pdf (last visited January 16, 2024).

complaining about, the race-based presumptions, the sex-based presumption, or both.[7]

Even if this Court were to disregard Plaintiffs' failure to allege the race or gender of their owners, Plaintiffs' Complaint, at most, "pleads facts that are 'merely consistent with'" Defendants' liability, and "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Because DBE participation is not limited to businesses owned by women or members of certain racial or ethnic groups, the fact that Plaintiffs may have lost a subcontracting bid to a DBE by itself says nothing about whether the contract was awarded based on the winning business owner's race or gender; the subcontract may have been awarded to a DBE that established its status without relying on the presumptions and without regard to race or gender. Thus, Plaintiffs' allegation that they have lost or will lose bids to DBEs is insufficient to plead a race- or gender-based equal protection claim because it requires the Court to speculate on whether those contracts were awarded to a DBE based on the presumptions. *Cf. Midwest Fence Corp. v. U.S. Dep't of Transp.*, 84 F. Supp. 3d 705, 722 (N.D. Ill. 2015) (finding that the plaintiff contractor's challenge to the Illinois Department of Transportation's implementation of the DOT DBE program was supported by "evidence of lost . . . bids, decreased

---

[7] On December 15, 2023, Plaintiffs moved for a preliminary injunction and appended declarations purporting to describe, at least in part, Plaintiffs' ownership interests in their respective businesses. However, the Court should not consider those declarations in conjunction with this motion to dismiss. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.") (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (internal quotation marks omitted)); *see also* 2 *Moore's Federal Practice—Civil* § 12.34[2] (3d. ed. 2023) ("In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice."). Yet even if this Court were to consider these additional facts, Plaintiffs *still* have not identified the race or gender of the business owners, Plaintiffs' business structures, or Plaintiffs' ability to qualify as socially or economically disadvantaged absent the race- and gender-based presumptions.

revenue, and difficulties sustaining its business"). And the mere fact that, as alleged, Plaintiffs "in some cases" lost out on federally funded contracts to DBEs even though Plaintiffs had lower bids is even less susceptible to an inference of race- or gender-based discrimination. As noted above, DBE status is available to applicants without regard to the racial and gender-based presumptions and not all KYTC contracts have DBE goals. *See supra* at 5 n.5. At most, Plaintiffs allege that they are treated unequally to DBEs. Plaintiffs plead no facts by which this Court could conclude that the DOT DBE program's race- or gender-based presumptions have hindered Plaintiffs' own ability to establish DBE status (and thus be afforded the same alleged advantages as other DBEs).

In sum, Plaintiffs' Complaint fails to allege sufficient facts to demonstrate "more than a sheer possibility" that Defendants acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Accordingly, this Court should dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

### B.      Plaintiffs Fail to Plausibly Allege Article III Standing.

The Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. To establish standing, each Plaintiff must show: "(i) that [it] suffered an injury in fact . . . ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). Because these three elements of standing are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a motion to dismiss, a complaint's standing allegations must satisfy the same requirements as its other allegations—i.e., it must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)); *see also In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 87 F.4th 315, 320–21 (6th Cir. 2023) (noting that "[e]ven at the pleadings stage, of course, a complaint must do more than just check the boxes for the elements necessary for a claim to proceed," and holding that plaintiff failed to plausibly allege standing).

### 1.   Plaintiffs Fail to Plausibly Allege an Injury in Fact.

Plaintiffs' Complaint is replete with factual deficiencies, as discussed above. Based on those deficiencies and more, Plaintiffs have failed to meet their burden to demonstrate injury in fact. To establish an injury in fact, a plaintiff must plead that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Gerber v. Herskovitz*, 14 F.4th 500, 505–06 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

> a.   *Plaintiffs Do Not Allege They Have Lost Out on Specific Contracts with DBE Participation Goals or that They Likely Will Do So in the Future.*

In the context of an equal protection challenge to racial or gender classifications, a plaintiff may show injury in fact where he adequately pleads that he is "able and ready to bid on contracts and that a discriminatory policy prevents [him] from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.* (*Jacksonville*), 508 U.S. 656, 666 (1993). In *Jacksonville*, an association of general contractors established an injury in fact where many of its members "regularly bid on and perform[ed] construction work for the City of Jacksonville," and "would have . . . bid on . . . designated set aside contracts but for the restrictions imposed" by a city ordinance that set aside those contracts for certain minority-owned businesses. *Id.* at 659 (internal quotation marks and citation omitted); *see also Bruckner v. Project Mgmt.*

13

*Corp.*, __ F. Supp. 3d __, 2023 WL 2744026, at * 4 (M.D. Fla. Mar. 31, 2023) ("a plaintiff must 'clearly' 'allege facts demonstrating' that he is 'able and ready' to bid on contracts under a discriminatory scheme") (quoting *Spokeo*, 578 U.S. at 338; *Jacksonville*, 508 U.S. at 666).

Plaintiffs allege that they are "qualified, willing, and able to apply for" transportation contracts, "but because the federal DBE program treats individuals differently based on race and gender, Plaintiffs cannot compete for contracts on an equal footing." Compl. ¶ 51. These conclusory allegations are not enough, however, to establish injury in fact because Plaintiffs fail to allege that they have been injured by a discriminatory policy or scheme. Unlike the program in *Jacksonville*, the DOT DBE program does not set aside contracts for DBEs; any firm can bid on and be awarded any contract. *See Jacksonville,* 508 U.S. at 658–59. Also, unlike the program at issue in *Jacksonville*, DBE status is not limited to firms that are owned by individuals of any particular race or gender; any person may apply for DBE status by making the necessary factual showing. *See id.* at 658–61. And while some contracts include DBE participation goals, Plaintiffs do not allege that they have lost out on such contracts or that they are likely to do so in the future— or that they could qualify for DBE status by making the race-neutral factual showing.

This case is therefore closely similar to another one in which a district court recently determined that a plaintiff lacked standing to challenge the DOT DBE program. *See Bruckner*, 2023 WL 2744026, at *8. In *Bruckner*, the court stressed that the complaint lacked "any detail regarding the kinds of contracts that the [p]laintiffs would like to pursue," and instead alleged nothing more than a "bare statement of intent" that they were qualified, willing, and able to bid on DOT DBE program contracts. *Id.* at *4–5 (quoting *Carney v. Adams*, 592 U.S. 53, 65 (2020) (internal quotation marks omitted)). That court went on to hold that even if the plaintiffs had plausibly alleged that they were ready and able to bid on *some* DOT-funded contracts, that was not

14

sufficient to allege an injury in fact "because States and localities sometimes award contracts without considering the contractor's race or gender," and the plaintiffs did not allege that they were ready and able to bid on contracts "that use discriminatory means." *Id.* at *7.[8]

The same is true here. As Plaintiffs admit, not all contracts in Kentucky and Indiana contain a DBE participation goal. *See* Compl. ¶ 35 (alleging generally that Kentucky and Indiana advertise some contracts that have DBE participation subcontracting goals). And non-DBE firms are fully eligible even with respect to contracts with participation goals. Plaintiffs allege that they have bid on contracts with goals, *see id.* ¶ 37, and they also allege that they have lost out on contracts to DBE firms, *see id.* ¶ 38. But they do not plausibly allege that the contracts they lost out on were contracts with goals, or that they are likely to do so in the future. They therefore do not allege that the DBE program is causing them any injury.[9]

---

[8] The Complaint also mischaracterizes the DOT DBE program as containing "discriminatory . . . set-asides[.]" Compl. ¶ 2. But recipients "may *not* set-aside contracts for DBEs . . . except that, in limited and extreme circumstances, [they] may use set-asides when no other method can be reasonably expected to redress egregious instances of discrimination,"49 C.F.R. § 26.43(b) (emphasis added); Plaintiffs do not plausibly allege that such "limited and extreme circumstances" have ever affected them. *Cf. Jacksonville*, 508 U.S. at 658 (noting that Jacksonville's program "required that 10% of the amount spent on city contracts be set aside each fiscal year for" minority business enterprises); *Vitolo v. Guzman*, 999 F.3d 353, 356–57 (6th Cir. 2021) (enjoining use of a limited Restaurant Relief Fund available only to disadvantaged businesses for the first 21 days); *Ultima Servs. Corp. v. U.S. Dep't of Agric.*, 2023 WL 4633481, at *5 (E.D. Tenn. July 19, 2023) (describing the federal contracts "set aside" for the Small Business Administration's Section 8(a) program).

[9] Plaintiffs allege that they submitted low bids for DOT-funded contracts and that the contracts were awarded to DBEs. *See* Compl. ¶¶ 8, 38. But selection of a DBE (rather than one of the Plaintiffs) for a contract does not mean that the contract necessarily had DBE participation goals. DBEs can and do bid on contracts without DBE goals, and recipients and prime contractors may choose not to award contracts to the low bidder for reasons unrelated to DBE status (for example, based on previous relationships or the quality of a bidder's work).

       *b.*     *Plaintiffs' Attempt to Manufacture Injury in Fact Based on* Students for Fair Admissions *Is Without Merit.*

Plaintiffs attempt to avoid the injury in fact requirements of *Jacksonville*, *see* 508 U.S. at 666, by alleging that the DOT DBE program injures them because it uses race as a "negative" and a "stereotype," Compl. ¶ 6 (citation omitted). However, the government may employ race-based measures in "remedial settings" when necessary to dispel the effects of invidious discrimination. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989). *Croson* controls here, and Plaintiffs' attempts to argue through their Complaint that the program's race-based presumption is per se injurious is without merit. *See, e.g.*, Compl. ¶¶ 1, 4–6, 9 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* (*SFFA*), 600 U.S. 181 (2023)). In *SFFA*, the Supreme Court held that Harvard's and the University of North Carolina's use of racial classifications in university admissions to promote the educational benefits of a diverse student body in the classroom could not be "reconciled with the guarantees of the Equal Protection Clause." 600 U.S. at 230.[10] At the same time, *SFFA* affirmed that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" is a compelling interest. *Id.* at 207 (citing *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007); *Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996)); *see also id.* at 215 (noting the permissibility of "a race-based benefit" in employment discrimination cases when necessary to make "members of the discriminated class 'whole for [the] injuries [they] suffered'") (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976)) (alterations in original). Nothing in *SFFA* affects *Croson*'s conclusion that "evidence of a pattern of individual discriminatory acts can, if supported by appropriate statistical proof, lend support to a local government's determination that broader

---

[10] The Court also held that these admissions policies violated Title VI of the Civil Rights Act of 1964. *See* 600 U.S. at 198 n.2.

remedial relief is justified." *Croson*, 488 U.S. at 509 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 338 (1977)).

Moreover, to the extent that *SFFA* cautions against "us[ing] race as a stereotype or negative," *SFFA*, 600 U.S. at 213, *see* Compl. ¶ 6, the DOT DBE program does neither. First, the program does not rely on "impermissible racial stereotypes." *Id.* at 220. Rather, Congress made specific findings as to the continuing effects of discrimination in the transportation construction industry, *see supra* at 6–7, and those findings are supported by overwhelming Congressional evidence of discrimination and its lingering effects. *See, e.g.*, *Remote Hearing Before the Committee on Transportation and Infrastructure*, 116th Cong. 64 (Sept. 23, 2020) (statements and testimony of Evalynn Williams, Geri E. Boyer, Mary T. Lerdahl, and Jon S. Wainwright detailing recent instances and evidence of discrimination in industries that DOT regulates and the need for the DOT DBE program to remediate such discrimination).[11] Second, the DOT DBE program does not treat race as a "negative" as the Supreme Court construed the term in *SFFA* because, unlike admission to Harvard's or UNC's freshman class, participation in the DBE program is not a "zero-sum" situation. *SFFA*, 600 U.S. at 218. DBE participation is not capped at a certain number, and the program provides an avenue for members of any group of any race or gender to apply for DBE certification on the basis of their social and economic disadvantage. *See* 49 C.F.R. § 26.67(d). And once in the program, whether through individual application or rebuttable presumption, all DBEs are on equal footing with regard to bid submissions.

---

[11]   Available here:   https://www.govinfo.gov/content/pkg/CHRG-116hhrg43413/pdf/CHRG-116hhrg43413.pdf.

> **2.** **Plaintiffs Fail to Plausibly Allege that Their Alleged Injuries Are Traceable to the DOT DBE Program's Rebuttable Presumptions or Would Be Redressed by Enjoining Application of Those Presumptions.**

Plaintiffs' failure to show a redressable injury that is fairly traceable to Defendants is an independent basis for dismissal. To establish standing, "plaintiffs must not only trace an injury in fact to the defendant's conduct, but they also must establish that their requested relief will redress the injury." *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1162 (6th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). "If that relief does nothing to redress the alleged injury, a court could do nothing more than issue a jurisdiction-less 'advisory opinion.'" *Id.* (quoting *California v. Texas*, 141 S. Ct. 2104, 2116 (2021)). And to establish an injury that is "fairly traceable to the DBE program and its race and gender preferences," Plaintiffs must do more than speculate "that invalidating the allegedly unconstitutional preferences would ameliorate [Plaintiffs'] ability to compete in any way." *Cache Valley Elec. Co. v. Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998) (holding that plaintiff lacked standing to challenge DOT DBE program because "any anticipated redress from a favorable decision is wholly speculative" and that the plaintiff "adduced no evidence that the elimination of the preferences would result in any meaningful reduction in the number of qualifying DBEs").

Here, Plaintiffs fail to plausibly allege traceability or redressability because they do not allege that they would qualify under the race- and gender-neutral requirements of the program. Even if the DOT DBE program's race- and gender-based presumptions were enjoined, the race-neutral requirements would remain intact, and Plaintiffs could qualify as DBEs only if they could show: (1) they are owned and controlled by socially- and economically-disadvantaged individuals; (2) their owners meet the personal wealth requirements; (3) they are small businesses; (4) their business structures comply with DOT DBE program requirements; and (5) the businesses are

independent. *See* 49 C.F.R. § 26.67. As noted above, Plaintiffs fail to make any of these allegations. But if Plaintiffs do not meet these race- and gender-neutral requirements—for example, if they are owned by individuals with a personal net worth exceeding $1.32 million, *see* 49 C.F.R. § 26.67(b), or if their average annual gross receipts exceed the cap, *see id.* § 26.65(b)—then enjoining the presumptions would leave Plaintiffs in exactly the same position, and they would remain at a competitive disadvantage relative to other DBEs. *See Klaver Constr. Co., Inc. v. Kan. Dep't of Transp.*, 211 F. Supp. 2d 1296, 1304–05 (D. Kan. 2002) (holding that plaintiff lacked standing because "even if the Court were to declare rebuttable presumptions unconstitutional and enjoin their use, [plaintiff's] alleged diminished competitiveness would not be materially altered because [plaintiff] would still be ineligible to participate in the DBE program for race- and gender-neutral reasons"); *see also Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 453 (S.D. W. Va. 2000) ("Absent fraud, removing the complained-of conduct, the allegedly unconstitutional rebuttable presumption, from the application process would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate in DBE."); *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 61–64 (D.C. Cir. 2016) (holding that when a program limited access to "socially and economically disadvantaged" individuals, but contained no presumptions about which groups were disadvantaged, it did not make race-based classifications and was subject to rational basis review).

At bottom, Plaintiffs are complaining of alleged disadvantages stemming from a program that—setting aside the rebuttable presumptions—could still disadvantage Plaintiffs because of strict race- and gender-neutral requirements that Plaintiffs fail to allege they could satisfy in any event. *See* 49 C.F.R. § 26.5. Thus, Plaintiffs would presumably continue to compete against DBEs and still face the same alleged disadvantages in competing against them. Because even a favorable

decision would not "amount to a significant increase in the likelihood that [Plaintiffs] would obtain relief that directly redresses the injury [allegedly] suffered" because of the DOT DBE program, they have failed to establish traceability or redressability. *Utah v. Evans*, 536 U.S. 452, 464 (2002).

       **C.**     **Plaintiffs Fail to Join an Indispensable Party.**

       The Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party under Federal Rule of Civil Procedure 19. Plaintiffs brought this suit only against the federal DOT, Secretary Buttigieg, and two Federal Highway Administration administrators. But they have not named as a defendant any state or local agency, even though it is those agencies that place DBE goals on federally funded contracts, certify applicants to the DOT DBE program, and channel DOT funds to contractors. The Court "cannot accord complete relief among existing parties" in their absence. Fed. R. Civ. P. 19(a)(1)(A).

       Whether a case should proceed in the absence of a particular party is governed by a three-step analysis. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). First, the Court determines if the omitted party is "necessary to the action." *Id.* (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 763–64 (6th Cir. 1999)) (internal quotation marks omitted). Second, if the omitted party is necessary, the Court determines if personal jurisdiction can be exercised. *See Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). And third, if personal jurisdiction exists, the party shall be joined unless joinder would result in depriving the Court of subject matter jurisdiction. *See id*.

       Here, that analysis compels dismissal under Rule 12(b)(7), unless and until Plaintiffs join one or more state or local agencies over whom the Court has personal jurisdiction and whose joinder does not deprive the Court of subject matter jurisdiction. Indeed, Plaintiffs appear to concede that the Court may be unable to accord complete relief among existing parties without the

joinder of Kentucky and Indiana to their lawsuit. *See, e.g.*, Compl. ¶ 34 ("Kentucky and Indiana both construct highways with federal aid."); *id.* ¶ 41 ("Defendants' DBE program impacts contracts and subcontracts offered by non-parties[.]"). This is because it is the state agencies—and not the federal Defendants named here—that set statewide DOT-DBE goals for transportation projects, decide which individual projects will have DBE goals, and certify DBEs to the DOT DBE program. Moreover, the Infrastructure Act and the DOT DBE program's implementing regulations require recipients of DOT funds to have a state DBE program of their own, thus underscoring that recipients, not the DOT, administer their own DBE programs and set goals for DBE participation in federally funded projects.

"The 'complete relief' requirement concerns the ability of the already-included defendants to fully satisfy any judgment awarded to the plaintiff." *Camps v. Gore Capital, LLC*, 2019 WL 2763902, at *10 (M.D. Tenn. July 2, 2019) (citing *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984)). Thus, complete relief, particularly the injunctive relief Plaintiffs seek, cannot be accorded in a DOT-fund recipient's absence, as the named federal Defendants cannot stop recipients, including state and local agencies in Kentucky and Indiana, from continuing to implement their own race- or gender-based goals for federally funded projects. Prior lawsuits challenging the DOT DBE program have generally named a state entity as a codefendant to the federal DOT. *See, e.g.*, *Midwest Fence*, 840 F.3d at 932; *W. States Paving*, 407 F.3d at 983; *Sherbrooke Turf*, 345 F.3d at 964; *Adarand Constructors*, 228 F.3d at 1147; *Geyer Signal, Inc. v. Minn. Dep't of Transp.*, Civ. No. 11-321, 2014 WL 1309092, at *12–17 (D. Minn. Mar. 31, 2014); *see also Geod Corp. v. N.J. Transit Corp.*, 678 F. Supp. 2d 276 (D.N.J. 2009) (naming state defendants only). Thus, it is not feasible for Plaintiffs to "seek relief against Defendants alone[.]" Compl. ¶ 41.

Accordingly, the Complaint should be dismissed under Rule 12(b)(7), unless and until Plaintiffs join one or more state or local agencies over whom the Court has personal jurisdiction and whose joinder does not deprive the Court of subject matter jurisdiction. While Plaintiffs seek an order "permanently enjoining Defendants from applying race and gender-based classifications in the Federal DBE program," Compl., Relief Requested ¶ C, at 17, it is state transportation agencies like KYTC and the Indiana Department of Transportation that apply race- and gender-based presumptions at the certification stage for prospective DBEs.[12] Although these agencies enjoy state sovereign immunity, claims for prospective injunctive relief against their officers may be able to proceed under the *Ex parte Young* doctrine. *See Commercial Warehouse Leasing, LLC v. Thomas*, 2019 WL 187872, *2–3 (W.D. Ky. Jan. 14, 2019) (applying *Ex parte Young* to exercise jurisdiction over the secretary of KYTC). Unless Plaintiffs join an appropriate state or local actor, the case should be dismissed.

### D.    Plaintiffs' Claim Under the Administrative Procedure Fails Because It Is Derivative of Their Equal Protection Claim, and It Is Untimely.

Plaintiffs also bring a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(B), challenging the constitutionality of the DOT's DBE implementing regulations. Compl. ¶¶ 55–56. Because Plaintiffs allege no independent injuries that flow solely from their APA claim, the Court should dismiss this claim if it finds either that it lacks jurisdiction over Plaintiffs' equal protection claim under Federal Rule of Civil Procedure 12(b)(1) or that Plaintiffs have failed to state an equal protection claim under Rule 12(b)(6). *See, e.g.*, *Asante v. Azar*, 656 F. Supp. 3d 185, 195 (D.D.C. 2023) ("[T]he APA also provides for the Courts to make an independent

---

[12] The application portal for prospective DBEs may be accessed at *Kentucky Transportation Cabinet, Small Business Development*, available at https://transportation.ky.gov/Civil-Rights-and-Small-Business-Development/Pages/Small-Business-Development.aspx (last visited January 16, 2024).

assessment of constitutional issues, and the court's role is the same whether the plaintiff sues directly under the Constitution or under the APA.") (internal quotation marks, alteration, and citations omitted).

In addition, Plaintiffs' APA claim should be dismissed as untimely because APA claims have a six-year statute of limitations. *See* 28 U.S.C. § 2401(a). "When a party *first* becomes aggrieved by a regulation that exceeds an agency's statutory authority more than six years after the regulation was promulgated, that party may challenge the regulation without waiting for enforcement proceedings." *Herr v. U.S. Forest Serv*., 803 F.3d 809, 822 (6th Cir. 2015) (emphasis in original). However, "[e]very circuit to have addressed the issue [of when an APA claim accrues]—the Fourth, Fifth, District of Columbia, and Ninth Circuits—has concluded that accrual dates differ between facial and as-applied APA claims." *Linney's Pizza, LLC v. Bd. of Governors of the Fed. Reserve Sys*., 2023 WL 6050569, at *3 (E.D. Ky. Sept. 15, 2023) (citing *N. Dakota Retail Ass'n v. Bd. of Governors of the Fed. Reserve Sys.*, 55 F.4th 634, 640–41 (8th Cir. 2022); *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv*., 112 F.3d 1283, 1287 (5th Cir. 1997); *Citizens Alert Regarding the Env't v. Env't Prot. Agency*, 102 Fed. App'x 167, 168–69 (D.C. Cir. 2004); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)). With an as-applied challenge, a plaintiff challenges a specific application of the challenged regulation, such as, for example, whether an agency has authority to bring enforcement proceedings. *See, e.g.*, *Herr*, 803 F.3d at 821.

Here, in contrast, Plaintiffs challenge the DOT DBE program's implementing regulations as unconstitutional in all of their applications. *See* Compl. ¶¶ 10, 58 (seeking to "end[] the DBE program once and for all" and "set aside these regulations" wholesale). This is a "defining feature" of a facial challenge. *Linney's Pizza, LLC*, 2023 WL 6050569, at *3 (quoting *Bucklew v. Precythe*,

139 S. Ct. 1112, 1127 (2019)). This Court has held that facial challenges pursuant to the APA are subject to a 6-year statute of limitations running from the publication of the regulations at issue. *See id.* In *Linney's Pizza*, the Court held that a business's facial challenge to a regulation under the APA was untimely because, although the business had started within the six-year statute of limitations, the regulatory challenge could have been brought by another plaintiff with the same interests. *Id*. Plaintiffs, who allege "a long history of participating in federally-financed road-construction projects," Compl. ¶ 8, are making a facial challenge to a long-running program that they themselves concede has been in place for over four decades, *see* Compl. ¶ 2. Thus, their APA claim "is untimely because it is bringing a facial challenge more than six years after publication of the regulation at issue." *Linney's Pizza, LLC*, 2023 WL 6050569, at *4.

Finally, even if the Court finds that Plaintiffs' APA claim is an as-applied challenge, the Court should still dismiss it under Rule 12(b)(6) because Plaintiffs have not alleged facts by which Defendants or this Court could ascertain when the regulation, following its promulgation, first adversely affected Plaintiffs. *See Herr*, 803 F.3d at 818 (stating that in order to file a lawsuit under the APA, the parties must "know or have reason to know that the challenged agency action caused them to suffer a 'legal wrong' or 'adversely affected or aggrieved' them 'within the meaning of the statute'" and "the challenged agency action must be 'final'") (citing 5 U.S.C. §§ 702, 704; *Stupak–Thrall v. Glickman*, 346 F.3d 579, 584 (6th Cir.2003)). As explained above, Plaintiffs have alleged only vaguely that they "regularly bid on and compete for federally funded highway contracts that contain . . . DBE participation goals as required by the federal DBE program" and that "[i]n the past, Plaintiffs have competed for and lost out on federally funded contracts to DBE firms." Compl. ¶¶ 37–38. These bare allegations, which fail to identify when Plaintiffs first bid on federally funded projects subject to the DBE program, are plainly insufficient to permit the Court

24

to determine when Plaintiffs might have been first "adversely affected or aggrieved" or whether any DOT action was "final." *See Herr*, 803 F.3d at 818. Thus, regardless of whether Plaintiffs' APA challenge is facial or as-applied, the Court should dismiss it as untimely.

## III.    CONCLUSION

For all these reasons, the Court should grant Defendants' Motion to Dismiss Plaintiffs' Complaint.


Dated: January 16, 2024                               Respectfully submitted,

SUBASH IYER                                           KRISTEN CLARKE
 *Acting General Counsel*                             Assistant Attorney General
PAUL M. GEIER                                         Civil Rights Division
 *Acting Assistant General Counsel*
 *for Litigation and Enforcement*                     KAREN D. WOODARD
PETER J. PLOCKI                                       Chief
 *Deputy Assistant General Counsel*                   Employment Litigation Section
 *for Litigation and Enforcement*                     Civil Rights Division
CHARLES E. ENLOE
 *Senior Trial Attorney*                              /s/ Robert Rich
*U.S. Department of Transportation*                   ANDREW BRANIFF
                                                      (IN Bar No. 23430-71)
                                                      Deputy Chief
                                                      ROBERT RICH
                                                      (DC Bar No. 1016908)
                                                      JILLIAN MOO-YOUNG
                                                      (DC Bar No. 1045088)
                                                      DAVID REESE
                                                      (AL Bar No. ASB-0887-167R)
                                                      Trial Attorneys
                                                      Employment Litigation Section
                                                      Civil Rights Division
                                                      United States Department of Justice
                                                      950 Pennsylvania Avenue NW
                                                      Washington, DC 20530
                                                      (202) 598-9898
                                                      Robert.Rich@usdoj.gov

                                                      *Counsel for Defendants*