UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*, <br><br>  Defendants. | Case No. 3:23-cv-00072-GFVT |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, ECF No. 36 (Response), fails to establish that Plaintiffs have stated a claim for relief or that they have Article III standing. Moreover, although Plaintiffs continue to assert that they seek relief from Defendants alone, at least one state agency is a necessary party to this action. And Plaintiffs fail to rebut Defendants' assertion that their Administrative Procedure Act claim is untimely. In short, Plaintiffs' Response cures none of the Complaint's defects.

**I.    Plaintiffs' Complaint Fails To Satisfy Rule 8's Pleading Standard.**

Contrary to Plaintiffs' contentions, Defendants do not seek to impose a heightened pleading standard in this case, nor are Defendants attempting to "pick apart" or "re-write" Plaintiffs' allegations. *See* Resp. at 3. Instead, Defendants ask this Court to hold Plaintiffs to the governing standard under Federal Rule of Civil Procedure 8. The Supreme Court and this Court have spoken directly to what this means: that while Rule 8's pleading standard does not require "detailed factual

allegations," it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "[I]t is not enough merely to plead a set of facts 'consistent with' a claim to relief; there must also be enough 'factual enhancement' to 'nudge [the] claim[ ] across the line from conceivable to plausible.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 557, 570); *see Cambron v. RK Shows, Inc.*, 2014 WL 3419128, at *5 (W.D. Ky. July 14, 2014) ("A 'naked assertion' devoid of 'further factual enhancement' cannot survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to establish the relevant "who, what, where, when, how or why." *Carrier Corp.*, 673 F.3d at 445 (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)) (internal quotation marks omitted). Plaintiffs still have not identified what contract they allegedly lost, to whom, where or when this contract was let or by what state agency, whether DBE goals were included in the project, or why the prime contractor selected a DBE instead of them. This Court should reject Plaintiffs' attempts to read out or rewrite the pleading standards clarified in *Iqbal* and its progeny.

Plaintiffs repeatedly cite *El-Hallani v. Huntington National Bank*, 623 F. App'x 730, 739 (6th Cir. 2015), *see* Resp. at 3, 5, 7, for the proposition that the pleading standard is "low," but nothing in *El-Hallani* is contrary to the requirements of Rule 8 as construed in *Iqbal.* In *El-Hallani*, Arab-American bank account holders sued their bank under 42 U.S.C. 1981, alleging racial discrimination after the bank closed their accounts without explanation. *See id.* at 731–32. In concluding that the plaintiffs had stated a claim, the court engaged in the type of analysis contemplated by Rule 8 and, as relevant here, gave particular import to an affidavit submitted by

2

the plaintiffs, which attested to specifics regarding the defendant's pattern and practice of misconduct. *See El-Hallani,* 623 F. App'x at 737.

Indeed, the court in *El-Hallani* emphasized that "[m]erely reciting the elements of the cause of action, couched as allegations, will not do," and that "[s]uch conclusory allegations 'need not be accepted as true on a motion to dismiss.'" *Id.* at 735 (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613–14 (6th Cit. 2012)).[1] Plaintiffs' Complaint is replete with conclusory allegations, and nothing in their Response cures that. For example, unlike the plaintiffs in *El-Hallani*, Plaintiffs here chose not to proffer an affidavit or other admissible information with their Response. Instead, despite *Iqbal*'s straightforward directive, reiterated by this Court many times, Plaintiffs contend, in effect, that they can rely on naked assertions and legal conclusions to state their claim. Indeed, Plaintiffs ask this Court not just to draw reasonable inferences in their favor but also to make several inferential leaps to fill in the many factual gaps in their Complaint.

Further, this case well illustrates why Rule 8 requires Plaintiffs to establish the relevant "who, what, where, when, how or why" at the pleading stage. *Carrier Corp.*, 673 F.3d at 445. Defendants have described in detail the statutory and regulatory structure and operation of the DOT DBE program at both the federal and state level. *See* Mot. at 4-8. Plaintiffs allege discriminatory treatment under that program, and the viability of their claim must be assessed against and in the context of that program and longstanding precedent governing equal protection

---

[1] The *El-Hallani* court acknowledged that at times plaintiffs "simply may not have access to all the facts" and that the plaintiffs in *El-Hallani* had "limited access to the crucial information regarding how the defendant treated other customers." 623 F. App'x at 735. That is decidedly not the case here, given the open bidding process of construction procurement for the Kentucky Transportation Cabinet, and where Plaintiffs themselves have access to information on their own race, business structure, size, bidding history, and an abundance of publicly available information regarding the contracts for which they are competing. *See* Mot. at 10 n.6; *see also* Kentucky Transportation Cabinet, *Construction Procurement* (available here*:* https://transportation.ky.gov/Construction-Procurement/Pages/default.aspx).

3

challenges to programs like it. Rule 8 ensures that Plaintiffs plead sufficient facts to allow a court to distinguish a plausible claim from one that is merely conceivable. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs' insistence on an "unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, cannot be reconciled with the principles underlying Rule 8 or this Court's precedent applying it. Accordingly, this Court should dismiss Plaintiffs' Complaint for failure to state a claim.

## II. Plaintiffs Lack Standing.

In their Response, Plaintiffs premise their purported Article III standing on an alleged "twofold" injury of competitive and dignitary harms. *See* Resp. at 7–21. These arguments are without merit. First, Plaintiffs' Complaint relies on conclusory assertions that the DOT DBE program injures them, which are insufficient to plausibly allege an injury. Second, Plaintiffs fail to allege that they meet the DBE program's race- and gender-neutral requirements and that they would qualify for DBE status even if the program did not include race- and gender-based presumptions. They therefore cannot plausibly allege that any injury stemming from a lost contracting opportunity to a DBE is caused by the racial and gender classifications they challenge or that eliminating those classifications would redress any injury.

### A. Plaintiffs Fail To Plausibly Allege Injury in Fact.

To plead an injury in fact, Plaintiffs must plausibly allege "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Gerber v. Herskovitz*, 14 F.4th 500, 505–06 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A concrete injury is one that is "*de facto*," meaning that "it

4

must actually exist" and is not "abstract." *Spokeo*, 578 U.S. at 340 (citations omitted). In race-based contracting jurisprudence, Plaintiffs must allege that they are "able and ready" to bid on contracts, but that a "discriminatory policy prevents [them] from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.* (*Jacksonville*), 508 U.S. 656, 666 (1993). But Plaintiffs' Complaint lacks "any detail regarding the kinds of contracts that [Plaintiffs] would like to pursue," with Plaintiffs alleging nothing more than a "bare statement of intent" that they are qualified, willing, and able to bid on DOT DBE program contracts. Mot. at 14 (quoting *Bruckner v. Project Mgmt. Corp.*, 666 F. Supp. 3d 1237, 1245–46 (M.D. Fla. 2023)) (citation and internal quotation marks omitted). This is not enough to show a "concrete and particularized" injury that is "not conjectural or hypothetical," as required to show an injury in fact.

Plaintiffs' Response only underscores this deficiency. Plaintiffs offer no additional facts, by affidavit or otherwise, to demonstrate that they are "qualified, willing, and able" to compete for transportation contracts but cannot equally compete for or lost out on such contracts because of the race- and gender-based rebuttable presumptions of social and economic disadvantage. Indeed, they have not concretely identified even a single contract they sought or would seek, bid on or would bid on, or lost. These are vital requirements in this case because the DOT DBE program is not a set-aside program, and recipients use both race-based and race-neutral methods of achieving their DBE goals; indeed, some projects have no DBE goals. *See* Mot. at 5 n.5. For example, the Kentucky Transportation Cabinet (KYTC) has set the 2023–25 DOT DBE overall goal at 12.7%, of which it expects to meet 2.3% through race-neutral means.[2] Plaintiffs also point to the

---

[2] *See Kentucky Transportation Cabinet DBE Goal Methodology Federal Fiscal Year (FY) 2023–2025*, at 1 (available here: https://transportation.ky.gov/Civil-Rights-and-Small-Business-Development/Documents/FY%2023-25%20Goal%20Methodology%207.16.22.pdf).

5

Complaint's allegation that they "'regularly' experience this unequal treatment." Resp. at 11 (quoting Compl. ¶¶ 34–37). But here, too, Plaintiffs offer no concrete facts by which this Court could discern even a single incident of unequal treatment.

Moreover, Plaintiffs' assertion of a dignitary harm cannot cure their deficient injury showing. Resp. at 9 (identifying a "competitive harm" and a "dignitary harm") (citing *Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.* (*ICC*), 87 F.4th 743, 751–52 (6th Cir. 2023)). In *ICC*, a contracting company sued a government township as a disappointed bidder and identified a specific contract on which it had submitted the lowest bid. It thus concretely alleged the loss of "a lucrative award and profits as a result of alleged racial discrimination." 87 F.4th at 751. The Sixth Circuit concluded that the contractor had suffered an injury in fact because of "the dignitary harm inherent in racial discrimination and the financial harm of the lost profit." *Id.* at 751–52 (citations omitted); *see also Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 450 (S.D. W. Va. 2000) (finding injury in fact where the plaintiff specifically alleged "lost business" from its "failure to receive contracts on which it was the low bidder" and on which "the prime contractor employed a DBE instead").

Here, by contrast, Plaintiffs have neither identified any specific contracts with DBE participation goals on which they submitted the lowest bid nor alleged any lost profits arising from losing out on such contracts, much less that they lost out to DBE firms because of alleged racial discrimination. *See* Mot. at 15–16. Rather, Plaintiffs' allegations consist of the "generic injur[ies] of losing a contract award" that the *ICC* court said would be insufficient to confer standing. 87 F.4th at 751.[3] Plaintiffs' approach also makes transparent that their purported injury is, in fact, a

---

[3] Other cases that Plaintiffs cite in support of their assertion that their alleged dignitary harm is sufficient to confer standing are inapposite or irrelevant. *See* Resp. at 11 n.5. *Triad Associates, Inc.*

6

generalized grievance that the DOT DBE program allegedly "injects an unequal race- and gender-based bias into the system of awarding federal contracts[.]" Resp. at 13. But DBE status is not limited to firms that are owned by individuals of any particular race or gender, and any person may apply for DBE status for their firm by making a factual showing of social and economic disadvantage. *See* Mot. at 14; *cf. Jacksonville*, 508 U.S. at 658–61. Moreover, Plaintiffs concede that even on projects with DBE goals, "DBE and non-DBE firms alike have an opportunity to bid on, or potentially receive, contracts." Resp. at 13. And further, Kentucky and Indiana let contracts without any DBE goals whatsoever. *See* Mot. at 14.

Plaintiffs also misstate how the DOT DBE program operates. *See* Resp. at 13–14. Plaintiffs assert that the program "is enforced through a series of regulations imposing various expectations under the threat of penalty." Resp. at 13 n.6 (citations omitted). To the contrary, the governing regulations provide that recipients of DOT funding set their own local DBE goals and "cannot be penalized, or treated by the Department as being in noncompliance with this rule, because [their] DBE participation falls short of [the recipients'] overall goal," as long as they operate the DBE program in good faith. 49 C.F.R. § 26.47; *see also* Mot. at 4-8. Because Plaintiffs merely object to the DOT DBE program's presumptions without alleging an actual, concrete, and particularized "invasion of a legally protected interest," they lack standing. *Gerber*, 14 F.4th at 505–06 (internal quotation marks and citation omitted).

---

*v. Chicago Housing Authority*, 892 F.2d 583, 590–91 (7th Cir. 1983), *abrogated by Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668 (1996), and *Marshall v. Kleppe*, 637 F.2d 1217, 1220 (9th Cir. 1980), *overruled by Van Strum v. Lawn*, 940 F.2d 406 (9th Cir. 1991), both stand for the uncontroversial proposition that, in the words of the former case, "a corporation may have standing to allege racial discrimination." 892 F.2d at 591 (citation omitted). Neither *Triad Associates* nor *Kleppe* even mention dignitary harm or analyze the showing required to establish a claim under that theory. *See id.*

7

### B.     Plaintiffs Fail To Plausibly Allege Traceability and Redressability.

Even if Plaintiffs could plausibly allege an injury in fact, they have not met their burden to demonstrate traceability and redressability. As explained in Defendants' Motion, to acquire DBE status (and any alleged advantage that comes with it), applicants must meet the program's race- and gender-neutral requirements, such as those related to business size. *See* Mot. at 18–20. But Plaintiffs have not shown, or even alleged, that they can do so. Thus, even if the program did not include a rebuttable presumption of disadvantage for women or members of certain minority racial groups—or even if Plaintiffs fell within those groups—Plaintiffs still could not obtain DBE certification and would still be in the exact same position with respect to the contracting marketplace. They thus "fail to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 485 (1982) (emphasis in original). Indeed, the District Court for the Eastern District of Virginia recently dismissed a similar challenge to the race-based presumption in the Small Business Administration's Section 8(a) program,[4] explaining that the plaintiffs in that case failed to meet the redressability element because they had not demonstrated that they would be socially and economically disadvantaged even absent the presumption. *See Hierholzer v. Guzman*, Slip. Op. at 15, ECF No. 49, No. 2:23-cv-0024 (E.D. Va. Feb. 15, 2024) ("Plaintiffs fail to show that they would be eligible for the program without the race-conscious presumption. Plaintiffs would still have to demonstrate social and economic disadvantage to get into the 8(a) Program. Plaintiffs have not plausibly alleged that striking down the presumption would redress their alleged injury.").

Plaintiffs insist that even if they do not meet the race- and gender-neutral requirements, the

---

[4] *See* 13 C.F.R. § 124.103(b).

8

DOT DBE program "prevents them from being considered on an equal footing without regard to race and gender." Resp. at 18. But that is not accurate; if Plaintiffs do not meet the program's race- and gender-neutral requirements, then the program treats them exactly as it treats similarly situated women- or minority-owned firms. Neither the program's presumptions, nor the races and genders of Plaintiffs' owners, make a difference. *See Klaver Constr. Co. v. Kan. Dep't of Transp.*, 211 F. Supp. 2d 1296, 1303 (D. Kan. 2022) ("The existence of non-discriminatory criteria constitutes an independent cause that severs any causal nexus between the allegedly wrongful conduct and the plaintiff's injury."). Indeed, Plaintiffs themselves acknowledge that, "[i]n order to qualify for the presumption of social and economic disadvantage, an individual must certify that he or she is a woman or member of an included racial group *and* show that he or she meets the personal net worth limitation." Resp. at 20 (citing 49 C.F.R. §§ 26.67(a), 26.5) (emphasis added). Yet Plaintiffs do not allege in the Complaint or otherwise aver in their Response that they could certify that they are socially *and* economically disadvantaged, or that they meet the program's race- and gender-neutral requirements. *See* Mot. at 18–19 (citing 49 C.F.R. § 26.67). In other words, even if the DOT DBE program's race- and gender-based presumptions of social and economic disadvantage did not exist, Plaintiffs would "incur" "DBE contract losses" to DBEs. Resp. at 21. Thus, even if "[c]ausation and redressability follow" when a plaintiff shows that a "discriminatory policy prohibits it from [bidding on contracts] on an equal basis," *Midwest Fence. Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 940 (7th Cir. 2016) (*cited in* Resp. at 16), there is no causation or redressability here because no "discriminatory policy" affects Plaintiffs.

Similarly unavailing is Plaintiffs' contention that eliminating the presumptions would remedy their alleged dignitary injury by removing a "badge of inequality." Resp. at 16 (citation omitted). All that the presumptions do is assist determinations of whether a company is eligible

9

for DBE certification. And if Plaintiffs do not meet the race- and gender-neutral requirements, then they are not eligible for such certification in any event. Plaintiffs cite no authority for the proposition that a person suffers a dignitary harm based on criteria for a benefit for which the person is otherwise ineligible. *Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.21 (1977) (holding that an equal protection plaintiff could not "attribute the injury complained of to improper consideration of a discriminatory purpose" if the "same decision would have resulted even had the impermissible purpose not been considered").

Taking a different tack, Plaintiffs argue that even if they could not qualify for the DOT DBE program, eliminating the program's presumptions would redress their injury by decreasing the number of certified DBEs against whom they compete. *See* Resp. at 18–21. Even if this theory was otherwise appropriate, it is pure speculation that is insufficient to show redressability. *See Glenborough Homeowners' Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 417 (6th Cir. 2021) ("In a nutshell the redressability requirement obliges a plaintiff fairly to allege that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'") (quoting *Lujan*, 504 U.S. at 560). Plaintiffs expound at length on what *could* happen in the absence of the DOT DBE program's race- and gender-based presumptions of social and economic disadvantage, *see* Resp. at 18–21, but this discussion does not cure the Complaint's lack of concrete allegations regarding how removing the presumptions might affect Plaintiffs. *See* Mot. at 18. Thus, "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate [Plaintiffs'] ability to compete in any way." *Cache Valley Elec. Co. v. Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998).

Plaintiffs have not plausibly alleged that eliminating the presumptions would meaningfully decrease the number of certified DBEs, and they cannot "establish standing by merely

10

hypothesizing that elimination of the presumption would improve its terms of competition." *Id.* at 1124 (10th Cir. 1998); *see also Interstate Traffic Control*, 101 F. Supp. 2d at 453 ("In the absence of allegations and proof of fraud by DBE program applicants subject to the disadvantage presumption, it would be pure speculation for the Court to conclude that judicial removal of the presumption would diminish the number of DBE[s]."). Plaintiffs bear the burden to establish every element of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As with Plaintiffs' failings on their injury showing, Plaintiffs' failure to meet their burden to demonstrate that any alleged injury is traceable to Defendants or redressable by the Court are independent bases for dismissal here.

### III. The State Agencies Are Necessary Parties, and Plaintiffs Do Not Demonstrate Otherwise.

As stated in Defendants' Motion, a three-step analysis governs whether a case may proceed in the absence of a particular party, including whether the omitted party is necessary to the action. *See* Mot. at 20. In their Response, Plaintiffs assert that Indiana and Kentucky state agencies are not necessary parties because Plaintiffs purport only to challenge "federal law," and the Court can allegedly afford them "complete relief" without the participation of the state agencies. Resp. at 22–23. That is not correct. Federal regulations set aspirational DBE goals, but it is the state agencies that set *state-specific* DBE goals, certify applicants, enter into the contracts, and pay contractors. And enjoining the federal defendants from applying the DOT DBE program's race- and gender-based presumptions of social and economic disadvantage would not prevent state agencies from continuing to apply those presumptions when certifying applicants. *See* Mot. at 20–22; *see also* 49 C.F.R. § 26.21 (requiring DOT funding recipients to establish a DBE program).

Indeed, the significant autonomy and discretion afforded to state entities that receive and administer DOT DBE funds make them necessary parties under Rule 19. It is the recipient entities

11

that set the DOT DBE goals, that decide which contracts have goals and which do not, and that certify or decertify DBEs. That challenges to the DOT DBE program routinely name state agencies as codefendants properly reflects the structure and operation of the program, *see* Mot. at 21, and Plaintiffs' arguments to the contrary fail. Plaintiffs first assert that *Midwest Fence*, which included state agencies as co-defendants with the DOT, does not support Rule 19 joinder because that case "would be *expected* to involve local fund recipients as it involves challenges related *not only* to the federal DBE Program *but also* the Illinois State Toll Highway Authority." Resp. at 24 (emphasis in original). But Plaintiffs fail to explain that while the plaintiff in *Midwest Fence* sued the Toll Highway Authority regarding its non-federal Tollway program, it also named the Illinois Department of Transportation based largely on its implementation of the *exact same federal program* at issue here. See *Midwest Fence*, 840 F.3d at 936–37. There is nothing in *Midwest Fence* even hinting that, in the absence of a challenge to the non-federally-funded state program, the Illinois Department of Transportation would have been deemed a non-indispensable party.

Plaintiffs' reliance on *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147 (10th Cir. 2000), is likewise flawed. Plaintiffs note that *Adarand* "does *not* appear to include state or local entities, naming only *federal* Defendants—just as Plaintiffs do here." Resp. at 24 (emphasis in original). But Plaintiffs ignore that, unlike in this case, the basis for the suit in *Adarand* was a contract awarded directly by a federal agency—the Central Federal Lands Highway Division—which is part of DOT. Because *Adarand* concerned contracts only with federal entities, there was little cause to join state or local agencies. In contrast, this case involves contracts with Kentucky and Indiana, not contracts directly with DOT or its federal components. *See* Compl. ¶ 35.[5]

---

[5] The other cases cited by Plaintiffs are equally unhelpful to their cause. In *M.B. Guran Company v. City of Akron*, 546 F.2d 201 (6th Cir. 1976), the Sixth Circuit stated, in a footnote, that when a

12

Finally, even in the cases that Plaintiffs cite to establish standing, those plaintiffs named state-level contracting entities that award contracts and set goals for the race- or gender-based policies the contractors were challenging. *See* Resp. at 16–19.[6] Plaintiffs should have done the same here.

## IV.  Plaintiffs' Administrative Procedure Act Claim Fails.

In response to Defendants' arguments that Plaintiffs' Administrative Procedure Act (APA) claim is time-barred, Plaintiffs proffer a single footnote. *See* Resp. at 25 n.12. They do not dispute that a statute of limitations would apply to their APA claim, nor do they make any attempt to defend their claim as timely under Sixth Circuit precedent. *See id.* Nor could they since, as explained in Defendants' Motion, binding circuit precedent compels a determination that Plaintiffs' facial challenge is time-barred. *See* Mot. at 23–24 (citing *Linney's Pizza, LLC v. Bd. of Governors of the Fed. Reserve Sys.*, 2023 WL 6050569, at *3–4 (E.D. Ky. Sept. 15, 2023)). And in their Complaint, Plaintiffs allege nothing about when they first bid on contracts affected by the DOT DBE program or were otherwise adversely affected by its implementing regulations. *See* Mot. at 24–25 (citing *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 818 (6th Cir. 2015)). Thus,

---

contractor sued a city alleging that the city violated a federal regulation on competitive bidding, it was not necessary to consider whether the federal agency was an indispensable party. *Id.* at 204 n.3. Similarly, in *Florida Panthers v. Collier County*, 2016 WL 1394328 (M.D. Fla. Apr. 8, 2016). a district court held that a federal agency and a state were not indispensable parties in a suit against a county government. *Id.* at *16. Those cases thus involved far different situations than that presented here, where Plaintiffs seek to enjoin activities that are governed by federal law but implemented by state and local agencies.

[6] *See also W.H. Scott Constr. Co. v. City of Jackson, Miss.*, 199 F.3d 206, 208–11 (5th Cir. 1999) (§ 1983 action against city and city officials based on municipal policy); *Contractors Ass'n of E. Pa., Inc. v. City of Philadelphia*, 6 F.3d 990, 993–95 (3d Cir. 1993) (challenging a city ordinance that included a set-aside program for DBEs); *Sherbrooke Turf, Inc. v. Minn. Dep't of Transp.*, 345 F.3d 964, 967–69 (8th Cir. 2003) (challenging the federal DOT DBE program as implemented in Minnesota and Nebraska); *ICC*, 87 F.4th at 748–49 (§§ 1981 and 1983 action against a township and consulting company); *Milwaukee Cty. Pavers Ass'n v. Fiedler*, 922 F.2d 419, 421 (7th Cir. 1991) (challenging a state set-aside program for DBEs).

13

regardless of how the Supreme Court rules in the pending case that Plaintiffs cite, Plaintiffs' Complaint remains devoid of the necessary factual allegations to state a plausible APA claim. *See N. Dakota Retail Ass'n v. Bd. of Governors of the Fed. Reserve Sys.*, 55 F.4th 634, 637–43 (8th Cir. 2022), *cert. granted sub nom. Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 216 L. Ed. 2d 1312 (Sept. 29, 2023).

Dated: February 20, 2024

SUBASH IYER
  *Acting General Counsel*
PAUL M. GEIER
  *Acting Assistant General Counsel*
   *for Litigation and Enforcement*
PETER J. PLOCKI
  *Deputy Assistant General Counsel*
   *for Litigation and Enforcement*
CHARLES E. ENLOE
  *Senior Trial Attorney*
U.S. Department of Transportation

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division

/s/ Robert Rich
ANDREW BRANIFF
(IN Bar No. 23430-71)
Deputy Chief
ROBERT RICH
(DC Bar No. 1016908)
JILLIAN MOO-YOUNG
(DC Bar No. 1045088)
DAVID REESE
(AL Bar No. ASB-0887-167R)
Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 598-9898
Robert.Rich@usdoj.gov

*Counsel for Defendants*