UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

MID-AMERICA MILLING COMPANY,
LLC, *et al.*,

      Plaintiffs,

  v.                                                  Case No. 3:23-cv-00072-GFVT

UNITED STATES DEPARTMENT
OF TRANSPORTATION, *et al.*,

      Defendants.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION TO CLARIFY SCOPE OF THE PRELIMINARY INJUNCTION**

**EXPEDITED CONSIDERATION REQUESTED**

**ARGUMENT IN REPLY**

In their response to Plaintiffs' motion requesting clarification on the scope of the preliminary injunction, Defendants primarily argue that Plaintiffs have "ask[ed] this Court again for a nationwide injunction" "without filing an appeal or a motion for reconsideration." ECF 48:2. These assertions are entirely unfounded. Here, Plaintiffs have respectfully requested only that the Court clarify the scope of the preliminary injunction, given the parties' disparate interpretations of the Court's order on this matter. *Compare* ECF 46 *with* 46-5 (Defendants' Letter to Plaintiffs, dated October 8, 2024). Plaintiffs' motion for simple clarification does *not*, as Defendants say, "ask this Court to enter a nationwide injunction under another name." ECF 48:3.

Far to the contrary of Defendants' assertions, Plaintiffs have expressly recognized that the Court selected an "as-applied preliminary injunction" "limited to the parties before the Court" and desire only that the parties comply with the scope of the Court's order. *See, e.g.*, ECF 46:10. Accordingly, Plaintiffs' motion for clarification does *not* make "repeat" requests for nationwide or otherwise broad injunctive relief that would extend beyond the parties. *See* ECF 48:3. Nor have Plaintiffs asked the Court to "alter or amend" its order, or "reconsider" previously "rejected … arguments." *See id.* at 3–10. Defendants' attempt to invoke certain standards under the Federal Rules of Civil Procedure—including Rules 59(e) and 54(b)—are irrelevant to Plaintiffs' motion for clarification, and Defendants' various pages of argumentation on these points are confused and misplaced. *See id.*

For example, in arguing that Plaintiffs are "merely rehashing their prior arguments," Defendants *actually* take aim, *not* at Plaintiffs' motion for clarification, but instead at the broader relief requested in Plaintiffs' motion for preliminary injunction. *See* ECF 44:7–10. Defendants quote incomplete excerpts from Plaintiffs' preliminary injunction briefings and seek to compare them to Plaintiffs' motion requesting clarification. *See, e.g.*, ECF 48:8 (discussing arguments

regarding the scope of Plaintiffs' work). But Plaintiffs' arguments in their two separate motions discuss two *very* different scopes of relief and are, thus, incomparable to one another. On the one hand, Plaintiffs' motion for a preliminary injunction petitioned for broad or nationwide relief *that would have applied beyond the parties* to prohibit Defendants from implementing the DBE Program's discriminatory preferences *at all*—either on a nationwide basis or broadly across designated states in which Plaintiffs operate. *See* ECF 40:19–26. But here, Plaintiffs' motion for clarification makes clear that Plaintiffs have *no expectations for any kind of broad relief* that would, at any point, outright prohibit Defendants' implementation of the DBE Program's discriminatory preferences. *See* ECF 46. Rather, Plaintiffs believe that the Court's opinion and order, taken as a whole, instructs that the injunction is "limited to the parties before the Court"— entitling *Plaintiffs specifically* to relief where Plaintiffs "operate" for those "contracts impacted by DBE goals upon which [they] bid."[1] *See* ECF 46 (discussing and quoting ECF 44:25–27).

Given the Court's reasoning for rejecting broad relief in favor of an as-applied remedy and against the backdrop of the rest of the Court's opinion, Plaintiffs believe their interpretation best comports with the Court's order. *See* ECF 44:7–9, 25–27. *See also* ECF 46. But Defendants do not address *any* of this relevant context. Instead, in arguing that the Court's as-applied injunction imposes a further geographical limitation, Defendants assert (incorrectly) that the Court found standing "based solely on evidence relating to Indiana and Kentucky." ECF 48:6. This assertion further implies that Defendants believe that the Court ignored additional evidence detailing

---

[1] As Plaintiffs noted in their opening brief, the Court *did* note that "the scope of the preliminary injunction shall apply to the Plaintiffs in the states within which they operate," referencing briefly, Kentucky and Indiana. ECF 44:27; 46:8. However, while Plaintiffs *do operate* in Kentucky and Indiana, Plaintiff MAMCO in particular *also operates* in many other states, bidding and performing federal DBE contracts. *See, e.g.*, ECF 46:8 (citations omitted).

3

Plaintiffs' injuries as submitted after the date of their complaint. *See id.* at 6–7. Plaintiffs cannot agree with these contentions.

While the Court found that the "pleadings alone are sufficient" to confer standing, the Court did not close its ears to the rest of the record and render it irrelevant. ECF 44:7–8. To the contrary, the Court specifically stated: "The Plaintiffs have also supplemented the record with declarations of Mid-America's and Bagshaw's owners, who provide further detail as to the regularity at which both companies bid on contracts funded by the DOT." ECF 44:8 (discussing and citing Plaintiffs' declarations, ECF 27-2 and 27-3). The Court specifically regarded "Plaintiffs' detailed accounts of their expertise, prior experience, and the types of contracts they would like to pursue," along with approximations of annual impacts that each Plaintiff has experienced as a result of the federal DBE Program. *Id.* Plaintiffs' "detailed accounts" pertain to each Plaintiffs' scope of work— Plaintiff Bagshaw tends to operate in Indiana and Kentucky, ECF 27-3 ¶ 2, while Plaintiff MAMCO routinely bids and performs work on federal contracting projects not only in these two states, but also in numerous states across the country.[2] *E.g.*, ECF 27-2 ¶¶ 7–10; 46-7 ¶ 2; 40-1 ¶ 3 (noting Plaintiffs' non-exhaustive listing of those states in which Plaintiffs commonly bid federally funded contracts impacted by the federal DBE program and its discriminatory goals, as Plaintiffs discuss in their Verified Complaint and declarations).

---

[2] Indeed, as Plaintiffs discussed in their opening brief, in implementing the Court's preliminary injunction order, MAMCO has specifically identified for submission to Defendants, various federal DBE contracts that MAMCO has bid, or plans to bid, through local transportation agencies in Indiana, Kentucky, West Virginia, and Pennsylvania. *E.g.*, ECF 46-7 ¶ 3; 46-1 ¶¶ 6–7. Likewise, from now until mid-December, MAMCO will likely bid, or seek to bid, federal DBE contracts from state or local transportation departments in the following states: Missouri, Mississippi, Iowa, Virginia, Ohio, New Jersey, Tennessee, Arkansas, North Carolina, Illinois, and West Virginia—with contract letting dates for these projects commencing on October 18, 2024. *E.g.*, ECF 46-7 ¶ 5; 46-1 ¶ 9.

Defendants do not dispute the fact that federal DBE contracts are let in numerous states and localities in which Plaintiffs can, and do, bid them. Indeed, Defendants seem to acknowledge that despite each Plaintiffs' headquarters in Indiana, neither Plaintiff has restricted their federal contracting operations to Indiana. *See* ECF 48:2, 6. However, Defendants claim that implementing the preliminary injunction for those federal DBE contracts that Plaintiffs bid—the challenged conduct that this Court found likely violated the Constitution—would be to include a "patchwork of other jurisdictions" that does not consider "the state-specific operation of the DOT DBE program." *See* ECF 48:6, 10–11. This argument only replays Defendants' past claims that "state or local agenc[ies]" are "necessary" and "indispensable" parties to this lawsuit. *See* ECF 31:20–21 (Defendants' motion to dismiss) ("the Infrastructure Act and the DOT DBE program's implementing regulations require [state and local] recipients of DOT funds to have [and administer] a state DBE program of their own"). But just as the Court was not inclined to agree with these arguments in Defendants' motion to dismiss, this line of argument should be rejected here too.

There is *no* "state-specific operation of the DOT DBE program" that is relevant here.[3] Federal Defendants implement the federal DBE Program and require funding recipients to let contracts in compliance with the discriminatory federal DBE Program. *Defendants' discrimination is the challenged conduct at issue;* and at this stage, the Court found that Defendants' implementation of the race and gender based presumptions through the DBE goals likely violates the Constitution. *See* ECF 44. Because the Court's preliminary injunction applies only to "contracts impacted by DBE goals upon which the Plaintiffs bid," ECF 44:27, Defendants'

---

[3] Plaintiffs' response to Defendants' motion to dismiss addresses in detail why states and localities are not necessary, indispensable, or appropriate parties to this lawsuit. *See* 36:23–26.

5

concerns over a few states that may not use contract-specific DBE goals are irrelevant and unwarranted. *See* ECF 48:6, n. 4 (discussing Florida as one state that uses so-called "race-neutral means" to achieve DBE participation). *See also* ECF 32-1 ¶ 4 (declaring that "there are eight states that administer their [federal] DBE programs without the use of contract goals"). The preliminary injunction clearly applies to contracts that contain federal DBE goals (federal DBE contracts). The injunction does *not* apply to contracts that do not contain federal DBE goals (such as those contracts in Florida, or in one of the seven other states that do not utilize contract-specific DBE goals).[4]

Likewise, the implementation of the as-applied injunction for those "contracts impacted by DBE goals upon which the Plaintiffs bid," ECF 44:27—whether those contracts are let through local transportation departments in Kentucky or West Virginia—does *not*, as Defendants say, give Plaintiffs the authority to "unilaterally transform the Court's limited injunction into a nationwide one simply by bidding on contracts in whatever jurisdiction they chose." ECF 48:9. To the contrary, an as-applied injunction only *adheres to the parties* to the extent they are engaged in the challenged conduct. *See* ECF 46. In contrast, a broad remedy (such as that requested by Plaintiffs in their motion for preliminary injunction) would prohibit Defendants from implementing the DBE Program's discriminatory preferences *at all*.

Here, Plaintiffs' understanding of the Court's as-applied relief does *not* "extend the injunction," nor "transform" it to "provide relief to thousands of non-part[ies]," nor disallow "competing outcomes" that could be produced by other district or circuit courts concerning

---

[4] Consequently, the parties' agreed-upon process for implementing the Court's preliminary injunction requires Plaintiffs to first identify specific contracts containing federal DBE goals that Plaintiffs plan to bid. In turn, Defendants remove the federal DBE goals for Plaintiffs on those federal DBE contracts specifically identified by Plaintiffs. *See, e.g.*, ECF 46-1 ¶ 3.

6

injunctive relief as to other plaintiffs. *See* ECF 48:7, 9–10. Rather, the as-applied preliminary injunction for those "contracts impacted by DBE goals upon which the Plaintiffs bid" simply ensures that no more, or less, relief is ordered than required to afford a plaintiff "adequate[] protect[ion]" from the challenged conduct "while the case is pending disposition on the merits." *See* ECF 44:27. *See also* ECF 46. Other courts remain free to decide differently as to other plaintiffs during that time.

Defendants also complain that they may have to coordinate with other states in which Plaintiffs operate if Plaintiffs identify federal DBE contracts elsewhere. *See* ECF 48:10–11. Defendants specifically grumble that instead of requiring the states *to enforce* the DBE Program's discriminatory preferences, Defendants may have to communicate with certain states to *halt the continued operation of these unconstitutional federal requirements as to Plaintiffs* and that this communication could be "potentially unworkable." *See id.* First off, this argument is speculative if not strained, as both parties note that Defendants already have implemented the injunction successfully as to those specific federal DBE contracts that Plaintiffs bid in Indiana and Kentucky. ECF 48:2; 46:3. Moreover, it is incredible that Defendants seem to suggest that their "burdens" matter more than Plaintiffs, given Defendants' role to cause the injuries at hand.[5, 6] *See* ECF 48-1 ¶ 7.

---

[5] Plaintiffs do not suggest that an as-applied remedy would be an appropriate permanent solution under the circumstances of this case. However, here in the earlier stages of the case, the preliminary injunction afforded to Plaintiffs is a temporary solution to "protect the plaintiffs' interests while the case is pending disposition on the merits." *See* ECF 44:27.

[6] In highlighting their purported "burdens," Defendants again attempt to sidestep their role in creating and enforcing the DBE Program by pointing to state agencies. *See* ECF 48:10–11; 48-1 ¶ 7. As discussed *supra* p. 5–6 & n. 3, Defendants' argument does not fly. Defendants cannot hide behind the states and use them as a shield to the consequences of Defendants' unconstitutional discrimination.

In reality, the Court's ruling against Defendants in this matter makes the injunction implementation process—wherever the challenged conduct occurs—a probable and natural consequence of Defendants' unconstitutional program. Plaintiffs should not have to continue shouldering the inequalities owing to Defendants' discrimination while the case proceeds; and Plaintiffs believe that the Court's issuance of as-applied relief was intended to protect them from the continuing constitutional harms that occur when they bid federal DBE contracts.

## CONCLUSION

For the foregoing reasons, and for those explained in Plaintiffs' opening motion, ECF 46, and supporting materials, Plaintiffs respectfully request that the Court clarify the scope of the preliminary injunction and issue an expedited ruling on the matter.

Dated: October 21, 2024.

        WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

*s/ Cara Tolliver*

Richard M. Esenberg (WI Bar No. 1005622)
Daniel P. Lennington (WI Bar No. 1088694)
Cara M. Tolliver (WI Bar No. 1112818)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Rick@will-law.org
Dan@will-law.org
Cara@will-law.org

COMMONWEALTH COUNSEL GROUP, PLLC
Jason M. Nemes (KBA# 90546)
Greg Healey (KBA# 99546)
10343 Linn Station Road, Suite 100
Louisville, KY 40223
jason@ccgattorneys.com
greg@ccgattorneys.com

*Attorneys for Plaintiffs*