UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br>Defendants. | Case No. 3:23-cv-00072-GFVT<br><br>**OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs' Motion to Clarify the Scope of this Court's Preliminary Injunction. [R. 46.] They see the Court's Order granting the Preliminary Injunction, [R. 44], as ambiguous and emphasize that the Defendants' narrow reading of this Court's injunction has caused, and will continue to cause, the Plaintiffs further harm of the very sort the injunction was designed to prevent. Because the Court agrees with the Plaintiffs as to the intended scope of the preliminary injunction, the pending request to clarify the Court's preliminary injunction will be **GRANTED**.

**I**

On September 23, 2024, this Court issued a preliminary injunction enjoining the Defendants from "mandating the use of race- and gender-based rebuttable presumptions for United States Department of Transportation contracts impacted by DBE goals upon which the Plaintiffs bid" in connection with the Disadvantaged Business Enterprise ("DBE") Program. [R. 44 at 27.] In making this decision the Court found that the Plaintiffs were likely to succeed on the merits of their Constitutional claims, that the Plaintiffs would suffer irreparable harm absent

an injunction, that others would not be harmed by issuing an injunction, and that the public interest lied in favor of an injunction. *Id*. at 22-25. In reaching its decision, the Court carefully considered the proper scope of the injunction. *Id*. at 25-27. Surveying opinions considering the impact of "nationwide injunctions," the Court ultimately concluded that "redressability in the present case is properly limited to the parties before the Court" and issued an injunction cabined only to the Plaintiffs in this case. *Id*.

Plaintiffs Mid-America Milling, LLC ("MAMCO") and Bagshaw Trucking Inc. have now brought a Motion to Clarify the Scope of the Preliminary Injunction, [R. 46], in response to a dispute with Defendants over how the injunction is to be properly interpreted. In their view, the Court's language enjoining Defendants from "mandating the use of race- and gender-based rebuttable presumptions for United States Department of Transportation contracts impacted by DBE goals upon which the Plaintiffs bid" should control. *Id*. However, the Defendants, in their ongoing dialogue with Plaintiffs about implementing the injunction and now in their Response to Plaintiffs Motion to Clarify, [R. 48], focus on separate language from the Court. In concluding its discussion on the proper scope of the injunction, the Court stated that "the scope of the preliminary injunction shall apply to the Plaintiffs in the states within which they operate, Kentucky and Indiana." [R. 44 at 27.] Latching on to the Court's phrasing, the Defendants have complied with the injunction for bids the Plaintiffs have placed in Indiana and Kentucky yet have refused to apply the injunction to contracts in other states on which the Plaintiffs bid. [R.46 at 3.]

In their Response, [R. 48], the Defendants contend that the Court should consider Plaintiffs' Motion to Clarify, [R. 46], under either Federal Rule of Civil Procedure 59(e), which authorizes motions to "alter or amend a judgment," or Rule 54(b), which permits a district court

to reconsider interlocutory orders at any time before final judgment. Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 54(b). They see Plaintiffs Motion to Clarify as an attempt to relitigate issues this Court has already decided and argue that the Plaintiffs Motion cannot meet the standards of either Rule 59 or Rule 54. [R. 48 at 3-6.] In contrast, Plaintiffs contend that their motion "does *not* make 'repeat' requests for nationwide…injunctive relief" nor do they attempt to relitigate previously decided issues. [R. 49 at 1.]

## II

"A district court has discretion to clarify the scope of an injunction." *Smagin v. Yegiazaryan*, No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347, at *3 (C.D. Cal. April 1, 2020). The Supreme Court has long recognized that, "when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. C11-2043-JLR, 2017 WL 1057644, at *2 (W.D. Wash. March 17, 2017) (quoting *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766-BEN (BLM), 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945))).

In assessing the nature of Plaintiffs' request, the Court does not find that Plaintiff is calling for relief under Federal Rules of Civil Procedure 54 or 59. And indeed if Plaintiffs were truly attempting to relitigate substantive aspects of the Court's decision, those would be appropriate avenues for the parties to take. However, here the parties differ over a mere ambiguity in the text of the Court's opinion, the resolution of which is required to give proper effect to the injunction already issued. On one hand the Court's decision appeared to restrict

3

Plaintiffs injunctive relief to Kentucky and Indiana. On the other hand, the language of the injunction was broader and contained no such limitation. Without clarification it is no easy task for the parties to properly comply with this Court's order.

### A

The Court issued its injunction with an eye toward avoiding so called "nationwide injunctions" – a bit of a misnomer which is colloquially used to describe injunctions directed toward defendants and applicable anywhere, against anyone – including non-parties not before the Court.[1] It walked through the ongoing judicial dialogue surrounding nationwide injunctions, noting how such injunctions can encourage forum shopping, rushed decisions, and limit development of legal questions. [R. 44 at 25-27.] Ultimately the Court concluded that the proper scope of the injunction was to limit it *to the parties before the court*. *Id*. at 27.

Defendants are correct that the Court avoided issuing a nationwide injunction. However, through subtle sleight of hand, they now seek to portray the Court's rejection of nationwide injunctions through a geographical lens. Defendants contend that the Court's language referring to the Plaintiffs' activities in Indiana and Kentucky is a consequence of the Court's concern with broad "nationwide" relief. This is a misreading of the Court's concerns. As the Court notes above, "nationwide injunction" is a misnomer, referring more appropriately to the parties involved rather than any geographical limitation.

In assessing "nationwide injunctions," courts have primarily dealt with activities by the Government and its agencies and considered whether to enjoin those activities as to all affected parties or only those parties before the court. As discussed in this Court's initial Opinion

---

[1] In his paper "Disaggregating Nationwide Injunctions" Professor Michael Morley refers to these kinds of injunctions as "nationwide defendant-oriented injunctions," a term which arguably captures the nature of the relief provided more accurately than the more ambiguous "nationwide injunction." *Disaggregating Nationwide Injunctions*, 71 Ala. L. Rev. 1, 28 (2020).

granting the preliminary injunction, [R. 44 at 25-27], injunctions that sweep in non-parties effectively short-circuit the judicial process, may offend Article III's "cases and controversies" requirement, and are often imprudent. Injunctions directed at parties before the court, no matter where those parties are active, do not present the same issues. In such circumstances there is a concrete case before the court, other parties can bring similar actions with other courts reaching differing opinions, and a broad injunction may properly protect the interests of the party seeking an injunction.

Defendants cite *Gun Owners of America, Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021), *rev'd in part on other grounds*, 54 F.4th 325 (6th Cir. 2022), for the idea that the Court's injunction must be restricted to those states within the Sixth Circuit (Ohio, Tennessee, Kentucky, and Michigan).[2] However, *Gun Owners* hardly stands for such a blanket proposition. In that case, the Sixth Circuit dealt with a preliminary injunction that was improperly denied, which prompted the Sixth Circuit to provide some limited guidance as to the injunction's proper scope on remand. *Id*. at 474. Motivating the limitations the Sixth Circuit provided was the fact that the D.C. Circuit and the Tenth Circuit had already ruled in favor of the ATF. *Id*. The *Gun Owners* panel noted that a broader injunction would "create an absurd situation in which the ATF must prevail in every single case brought against the Final Rule in order for its interpretation to prevail" and would effectively overrule the decisions of other circuits. *Id*. While it is not at all clear that the *Gun Owners* panel was laying down a rule for all future cases, as opposed to merely dealing with the facts of the case in front of it, the same concerns are not present in this case.

---

[2] The Court notes that Defendants demonstrate an internal inconsistency in their interpretation of *Gun Owners* as they do not challenge the injunction's applicability to contracts in Indiana, which would appear to be foreclosed by their argument.

5

Such an interpretation also runs afoul of the established principle that, "when 'exercising its equity powers,' a district court 'may command persons properly before it to cease or perform acts outside its territorial jurisdiction.'" *Arizona v. Biden*, 31 F.4th 469, 483 (6th Cir. 2022) (Sutton, C.J. concurring) (quoting *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952)). Remedies ordinarily "operate with respect to specific parties" and not based on "legal rules in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021). And the Sixth Circuit has frequently affirmed injunctions that contained no geographical limitations. *See Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524 (6th Cir. 2017) (affirming order enjoining party from soliciting former clients in violation of non-compete); *RGIS, LLC v. Gerdes*, 817 F. App'x 158 (6th Cir. 2020) (affirming order enjoining party from working for competitor or revealing confidential trade secrets); *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372 (6th Cir. 2023) (comparable to *Gerdes*); *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489 (6th Cir. 2022) (affirming injunction restraining party from continued copyright infringement). These cases, and countless others, show that injunctions can vary vastly in scope, without geographic limitations, as long as they are properly limited to the appropriate parties.

B

In their initial Motion for Preliminary Injunction, [R. 27], both Plaintiffs emphasized their extensive presence in Indiana and Kentucky. However, MAMCO also noted that they frequently bid in many other states, including West Virginia and Pennsylvania. [R. 27-2 at 2.] In describing the difficulties they faced in competing against DBEs, MAMCO gave a number of examples of Indiana based bids. *Id*. They also averred that "MAMCO faces the same issues in Kentucky, as well as the other dozens of states listed above, when bidding projects funded with federal transportation dollars." Defendants turn to these facts to suggest that Plaintiffs are

merely relitigating factors the Court has already taken into consideration. [R. 48 at 7-10.] This argument is again predicated on a misinterpretation of what the Court focused on with its injunction – redressing the injuries of the plaintiffs before the court. Rather than standing for the proposition that this is mere relitigation by the Plaintiffs, the affidavits demonstrating the Plaintiffs' extensive activities in multiple states counsel instead for further clarification by the Court. The Court did not simply ignore evidence of the Plaintiffs' activities in other states.

Apparently adopting a "what is good for the goose is good for the gander" approach, Defendants themselves attempt to relitigate the injunction's potential effect on state officials. Once again, Defendants suggest that any injunction is unworkable because many state entities are not parties to this suit. This Court has already considered that argument and rejected it. The injunction applies to federal officials mandating federal DBE goals on federally funded projects which are then implemented by the states – if the Plaintiffs take issue with separate state-driven DBE goals then that is an issue for another action in an appropriate venue. Furthermore, the Defendants' ongoing cooperation with Plaintiffs and state officials in implementing the injunction in Indiana and Kentucky belies their assertion that it is "unworkable."

Because the Court's initial preliminary injunction was ambiguous as to its geographical reach, sparking disagreement between the parties as to the injunction's proper scope, the Court will clarify the reach of the preliminary injunction. As previously stated, "[t]he United States Department of Transportation, Peter Buttigieg, Shailen Bhatt, Todd Jeter, and any successors in office, are ENJOINED from mandating the use of race- and gender-based rebuttable presumptions for United States Department of Transportation contracts impacted by DBE goals upon which the Plaintiffs bid." [R. 44 at 27.] The Court further clarifies that this injunction

7

reaches all states in which the Plaintiffs operate or bid on DOT contracts impacted by DBE goals, not merely Indiana or Kentucky.

### III

The Court is aware that its prior preliminary injunction order contained ambiguities as to its scope. The Court's injunction was directed at providing relief to the Plaintiffs it found before it, wherever they are subject to the challenged conduct, but that injunction was ultimately misconstrued by the Defendants. In response to Plaintiffs' Motion [R. 46] the Court will clarify the scope of that injunction to include all states in which the Plaintiffs operate or bid on DOT contracts impacted by DBE goals. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiffs' Motion to Clarify [**R. 46**] is **GRANTED**;

2. The United States Department of Transportation, Peter Buttigieg, Shailen Bhatt, Todd Jeter, and any successors in office, are **ENJOINED** from mandating the use of race- and gender-based rebuttable presumptions for United States Department of Transportation contracts impacted by DBE goals upon which the Plaintiffs bid, to be effective in any state in which Plaintiffs operate or bid on such contracts.

This the 31st day of October 2024.

Gregory F. Van Tatenhove
United States District Judge

8