IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, SHAILEN BHATT, & TODD JETER, <br><br> Defendants. | Case No. 3:23-cv-00072-GFVT |

**MOTION TO INTERVENE AND TO MODIFY PRELIMINARY INJUNCTION**

Proposed Intervenor Plaintiffs Central Seal Company ("Central Seal") and Charbon Contracting, LLC ("Charbon") move to intervene in the above-styled matter by right pursuant to Fed. R. Civ. P. 24(a) or, alternatively, by permission pursuant to Rule 24(b). Proposed Intervenors' Verified Complaint is attached hereto as **Exhibit A**. Additionally, Central Seal and Charbon move the Court to modify the scope of its October 31, 2024 injunctive order (DN 50) enjoining Defendants from "mandating the use of race- and gender-based rebuttable presumptions for the United States Department of Transportation contracts impacted by DBE goals upon which Plaintiffs bid" to extend to bids involving Intervenor Plaintiffs.

**BACKGROUND**

On September 23, 2024, the Court entered a preliminary injunction in favor of Plaintiffs Mid-America Milling Company, LLC ("MAMCO") and Bagshaw Trucking Inc. ("Bagshaw") barring the United States Department of Transportation ("USDOT") and its representatives from mandating the use of race- and gender-based presumptions for USDOT contracts impacted by the Disadvantaged Business Enterprise ("DBE") Program. (*See* DN 44 at 27.) Nevertheless, because the Sixth Circuit previously held that the Court "abused its discretion in extending [a] preliminary injunction's protection to non-party contracts in the plaintiff States," in a similar matter, the Court in this matter limited the scope of its injunction to apply only to contracts for which MAMCO and Bagshaw intended to bid and not to any other contracts or parties. (DN 44 at 27 (quoting *Comm v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023)).

On October 8, 2024, following the Court's injunction, USDOT issued a guidance memorandum to the Kentucky Division Administrator identifying certain contracts on which MAMCO and Bagshaw intended to bid, and directing the Kentucky Transportation Cabinet ("KYTC") to set 0% DBE goals for the identified contracts. (Verified Compl., Exh. A, ¶ 2.) USDOT's guidance, however, directed KYTC to "continue to fully implement the DOT DBE program, including setting DBE contract goals on contracts that are not identified" as involving potential bids from MAMCO and Bagshaw. (*Id.*) This guidance, and KYTC's implementation of said guidance, means that the KYTC is continuing to effectuate unconstitutional

2

DBE regulations and program goals with respect to all bidders other than MAMCO and Bagshaw,

Proposed Intervenor Plaintiffs Central Seal and Charbon are two highway construction contractors on similar footing as MAMCO and Bagshaw. Central Seal is a premier striping and sealing company that provides striping services in Kentucky, as well as other states in the Midwest and southeastern United States. (*Id.* ¶ 11.) Charbon is a Kentucky limited liability company that provides turnkey, full service pavement preparation and asphalt milling services in Kentucky, Tennessee, and Indiana. (*Id.* ¶ 12.) Both Central Seal and Charbon have lost bids on projects let by KYTC, as well as other state and federal agencies, solely as a result of these agencies' implementation of USDOT's unconstitutional DBE program regulations. (Verified Compl., Exh. A, ¶¶ 4, 22–26.)

Moreover, Central Seal and Charbon have been and remain qualified, willing, and able to bid on construction contracts impacted by the federal DBE program. (*Id.* ¶ 23.) Both routinely bid for federally funded surface transportation contracts in Kentucky and other states. (*Id.*) For years, Central Seal and Charbon have suffered discrimination by federal fund recipients on race-based and gender-based grounds that violates their rights to equal protection guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. (*Id.*)

For example, Central Seal has bid on numerous projects let by KYTC from 2020 to the present. (*Id.* ¶ 24.) In these four years alone, Central Seal has submitted a bid, but not been awarded the work, on dozens of projects impacted by

3

DBE goals amounting to millions of dollars' worth of work. (*Id.*) In many of these projects, Central Seal submitted bids lower than their DBE competitors, but still was not awarded the work in favor of the bidding DBEs. The dollar value of these lost projects since 2020 is nearly $4 million. As but one recent example, Central Seal submitted the lowest subcontractor bid to perform highway construction services related to a project in Mason County, Kentucky in September, 2024, but was rejected in favor of a DBE with a substantially higher bid. (*Id.*)

Charbon also bids on numerous milling and striping projects let by KYTC which are impacted by DBE goals. (*Id.* ¶ 25.) Indeed, virtually all of the projects on which Charbon bids involve DBE competition. Since the beginning of 2023, Charbon has bid on over 80 such projects in various counties in Kentucky as a subcontractor candidate. (*Id.*) Despite being the lowest bid subcontractor in the letting process for many of these projects, Charbon lost the bids in favor of a DBE so that the prime contractor could meet DBE program goals. Additionally, even on projects where Charbon is not the lowest bidder, if there are no DBEs bidding on such projects, Charbon typically has an opportunity to obtain the work by negotiating its bid price down with the prime contractor, as many contractors value highly the quality of Charbon's services. (*Id.*) Where a project involves a DBE bidder, however, the prime contractor does not negotiate the price of Charbon's bid because these prime contractors discriminate against Charbon in favor of DBEs so that the prime contractor can meet the DBE contract goals. (*Id.*)

4

In other words, like MAMCO and Bagshaw, both Charbon and Central Seal have been discriminated against—and suffered actual injuries in the form of lost work, and lost profits resulting from that loss of work—as a direct result of Defendants' implementation of DBE goals with respect to KYTC-let projects in Kentucky.  (*Id.* ¶ 26.)  These DBE goals force Charbon and Central seal to "compete in a race-based system" that prejudices them.  *Mid-America Milling Company, LLC v. U.S. Dept. of Transp.*, 2024 WL 4267183, at *3 (E.D. Ky. Sept. 23, 20224) (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

Given that USDOT continues to mandate DBE program goals with respect to KYTC and other state agencies, Central Seal and Charbon will continue to suffer harm as a result of Defendants' implementation of DBE-related regulations in a manner in which this Court has already found to be unconstitutional.  (*See generally*, Order, DN 44.)  Accordingly, Central Seal and Charbon seek intervention in this matter in order to request a narrow modification of the Court's previously issued injunctive orders (DN 44, 50) to extend to projects on which Central Seal and Charbon bid, as well as to assert the claims described in greater detail in their Verified Complaint.

**I.      Central Seal and Charbon are entitled to intervene in this action.**

Given the limitation in the scope of the Court's preliminary injunction (DN 50) to contracts on which MAMCO and Bagshaw bid, USDOT's decision to continue implementing unconstitutional DBE program regulations will continue to harm non-parties bidding on projects impacted by DBE goals, including Charbon and

Central Seal. Accordingly, and for the reasons discussed below, the Court should allow Charbon and Central Seal to intervene in this matter pursuant to Fed. R. Civ. P. 24 in order to seek a modification of the Court's injunction to extend to projects on which these entities bid.

### A. Central Seal and Charbon are entitled to intervention under Rule 24(a)(2).

As an initial matter, Central Seal and Charbon are entitled to intervention of right pursuant to Fed. R. Civ. P. 24(a)(2). Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene" who "[c]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Sixth Circuit "has interpreted the language of the Rule to require an applicant to show that: 1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citations omitted). Central Seal and Charbon satisfy each of the four elements.

6

### 1. Intervention is timely sought.

First, Central Seal and Charbon's motion to intervene is timely. "In determining the timeliness of an application for intervention of right," the Court is to consider five factors:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*Zelman*, 636 F.3d at 284. While the "determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances," "[t]he most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties in the case." *Zelman*, 636 F.3d at 284; *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 493 (6th Cir. 2014). "The only prejudice relevant to the timeliness determination is incremental prejudice from a would-be intervenor's delay in intervening, not prejudice from the intervention in and of itself." *Davis*, 560 F. App'x at 493.

Here, Central Seal and Charbon seek leave to intervene within weeks of becoming apprised of how USDOT intended to implement and enforce the Court's injunction with respect to KYTC. (*See* Verified Compl., Exh. A, ¶ 2.) Unusual circumstances weighing in favor of intervention are present because before KYTC issued its guidance memorandum, Central Seal and Charbon could not have known

7

whether Defendants would pause enforcement of the DBE program entirely or make some other changes to the program that may have nullified any need to file suit. This lack of clarity was especially true before the Court clarified the scope of its injunction and further explained the impact of new case law on its ability to grant injunctions that protect non-parties. (*See* DN 50.)

Intervention is also sought shortly after the Court entered its Scheduling Order on December 12, 2024 and, presumably, before significant discovery has been conducted among the original parties to this action. (*Id.*) By seeking to intervene at the beginning of discovery, prejudice like that caused in cases where a party seeks to intervene at or near the conclusion of discovery is not present here. *Contra Suter v. Appalachian Reg'l Healthcare*, 2105 WL 12990211, at *1–*2 (E.D. Ky. Mar. 6, 2015) (motion to intervene held untimely "[b]ecause this litigation is nearly at an end[.]"). Thus, neither Plaintiffs nor Defendants will be prejudiced by the timing of Central Seal and Charbon's intervention.

        **2.    Central Seal and Charbon have a substantial legal interest in the case.**

Second, Central Seal and Charbon have a substantial legal interest in the case. The Sixth Circuit has adopted "a rather expansive notion of the interest sufficient to invoke intervention of right," which ensures that the interest test serves "primarily [as] a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 415 F.3d 309, 315

(6th Cir. 2005); *United States v. Rutherford Cty., Tenn.*, No. 3:12-0737, 2012 WL 3775980, at *4 (M.D. Tenn. Aug. 29, 2012).

Central Seal and Charbon—just like MAMCO and Bagshaw—are contractors directly impacted by USDOT's DBE program and have a substantial legal interest in challenging the constitutionality of the program. Both have lost bids on projects let by KYTC, as well as other state and federal agencies, solely as a result of these agencies' implementation of USDOT's unconstitutional DBE program regulations. Both are ready, able, and willing to bid in the future on projects impacted by DBE programs implemented by USDOT, KYTC, and other federal and state agencies. Because Central Seal and Charbon are currently not protected by the Court's injunction as "non-parties" to the suit, they simply seek to intervene to request injunctive relief similar to that afforded to MAMCO and Bagshaw.

### 3. Intervention is necessary to protect Central Seal and Charbon's interests.

Third, intervention is necessary to protect Central Seal and Charbon's interests. "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (citation omitted). The Sixth Circuit has noted that "potential stare decisis effects can be a sufficient basis for finding an impairment of interest." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (citation omitted). And to claim potential stare decisis effects, the would-be intervenor need

not prove that "impairment will inevitably ensue from an unfavorable disposition." *Purnell v. City of Akron*, 925 F.2d 941, 948–49 (6th Cir. 1991).

MAMCO and Bagshaw have sought a determination that the USDOT's DBE program is unconstitutional. Although Central Seal and Charbon have similar contracting businesses, and the outcome of this litigation will directly impact how Central Seal and Charbon conduct business with KYTC and other federal fund recipients, they are currently deemed non-parties without the ability to make their positions known to the Court. Without intervention, Central Seal and Charbon will not only lack protection under the Court's current injunction, but also they will be unable to ensure that future arguments made to the Court are shaped by their own experiences and injuries or reflect the positions of law they believe to be determinative. Considering the impact of their present exclusion from the suit and scope of the Court's injunction, as well as the possible effects of stare decisis, there is no question that the "impairment" prong of intervention is satisfied.

### 4. MAMCO and Bagshaw inadequately represent Central Seal and Charbon.

Finally, intervention of right is appropriate because MAMCO and Bagshaw inadequately represent Central Seal and Charbon. Because "[t]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests[,]" courts should "be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1909 (3d. ed. 2002).

10

Under this general rule, "the proposed intervenors are 'not required to show that the representation will in fact be inadequate.'" *Grutter*, 188 F.3d at 400 (citation omitted). "Indeed, '[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.'" *Id.* Further, because "[t]he proposed intervenors need show only that there is a potential for inadequate representation," their "burden in showing inadequacy is 'minimal.'" *Id.*

MAMCO and Bagshaw do not adequately represent Central Seal and Charbon for two reasons. First, unlike Central Seal and Charbon, MAMCO and Bagshaw are *already* protected by the scope of the Court's injunction. Simply put, there is no reason for MAMCO and Bagshaw to expend effort asking the Court to extend the scope of its injunction further. Consequently, unless Central Seal and Charbon are permitted to intervene, no party will make any additional arguments in favor of expanding the scope of the injunction. Second, though their interests are generally aligned, Central Seal and Charbon bid on different projects than MAMCO and Bagshaw. Because these projects have the potential to occur in different states and/or against different subsets of competition than those for which MAMCO and Bagshaw bid, there exists the potential that MAMCO and Bagshaw will not adequately represent Central Seal and Charbon's interests at all points in the litigation.

### B. The Court should allow permissive intervention in the alternative.

Were the Court to conclude that Central Seal and Charbon are not entitled to intervention of right, it should allow permissive intervention in the alternative. "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (referencing Fed. R. Civ. P. 24(b)(1)(B)).

Here, Central Seal and Charbon's motion is timely and includes a multitude of common questions of law or facts. Like MAMCO and Bagshaw, Central Seal and Charbon are contractors who bid on USDOT projects, KYTC projects, and other agencies' projects and who have lost bids in favor of parties who received the unconstitutional benefit of the DBE program. And just like MAMCO and Bagshaw, Central Seal and Charbon seek to put forth arguments in support of a permanent injunction and holding that the DBE program is unconstitutional and cannot continue to be enforced. For these reasons, and because litigation in this matter remains at an early stage, the Court should allow permissive intervention.

### II. Central Seal and Charbon's intervention will constitute a changed circumstance warranting modification of the preliminary injunction.

"Courts have long held the power to modify injunctions, whether to narrow or broaden them." *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016). "That power flows from the nature of injunctive relief." *Cernell v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 596 (E.D. Mich. 2020). "Injunctions frequently demand 'continuing supervision by the issuing court and always a continuing willingness to

12

apply its powers and processes on behalf of the party who obtained that equitable relief.'" *Hustler*, 810 F.3d at 426. "Courts thus may exercise their 'sound judicial discretion' to modify an injunction 'if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.'" *Id.* (citations omitted).

This Court has already determined that, because the USDOT's "race and gender classifications violate the Constitution's guarantee of equal protection[,]" MAMCO and Bagshaw are entitled to a preliminary injunction preventing "the use of race- and gender-based presumptions for [USDOT] contracts impacted by DBE goals upon which [MAMCO and Bagshaw] bid." (DN 44 at 1, 27.) In limiting the scope of its injunction, however, the Court indicated that its injunction applied only to contracts for which MAMCO and Bagshaw—as parties to the litigation—intended to bid and not to any other contracts or parties. (*See* DN 44 at 27 (quoting *Comm v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023); *see also* DN 50).

Absent a modification of the Court's injunction, Central Seal and Charbon will continue to suffer injuries as a direct result of USDOT's unconstitutional implementation of DBE regulations, forcing them to "compete in a race-based system" that prejudices them. *Mid-America Milling Company, LLC v. U.S. Dept. of Transp.*, 2024 WL 4267183, at *3 (E.D. Ky. Sept. 23, 20224) (citing *Parents Involved in Cmty. Schs. V. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). The Court previously determined Defendants' conduct to be unconstitutional. If the Court allows Central Seal and Charbon to intervene in this action, however,

13

circumstances will have changed giving rise to the need for a narrow expansion of the Court's injunction. Accordingly, for these reasons, and for all of the reasons previously discussed in the Court's order granting MAMCO and Bagshaw a preliminary injunction (DN 44), Central Seal and Charbon move the Court to expand the scope of its preliminary injunction to apply to all contracts impacted by DBE goals upon which Central Seal and Charbon bid.

## CONCLUSION

For the foregoing reasons, Central Seal and Charbon request that the Court enter the attached proposed order granting their intervention in this matter and expanding the scope of the Court's preliminary injunctive orders (DN 44, 50) to also apply to all contracts impacted by DBE goals upon which Central Seal and Charbon bid.

Respectfully submitted,

*/s/ Frederick R. Bentley III*
David B. Owsley II
Frederick R. Bentley III
Kyle S. Schroader
**STITES & HARBISON PLLC**
400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone: (502) 587-3400
dowsley@stites.com
rbentley@stites.com
kschroader@stites.com

*Counsel for Central Seal and Charbon*

## **CERTIFICATE OF SERVICE**

    This is to certify that the foregoing was served on all following counsel of record via the Court's electronic filing system on this 1st day of January, 2025.

                                  */s/ Frederick R. Bentley III*
                                  Frederick R. Bentley III