# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, *et al.*, | |
| Plaintiffs, | Case No. 3:23-cv-00072-GFVT |
| v. | |
| U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, SHAILEN BHATT, & TODD JETER, | |
| Defendants. | |

**REPLY IN SUPPORT OF CENTRAL SEAL AND CHARBON'S MOTION TO INTERVENE**

Proposed Intervenor Plaintiffs Central Seal Company ("Central Seal") and Charbon Contracting, LLC ("Charbon") submit the following reply in support of their Motion to Intervene and to Modify the Preliminary Injunction in this matter. The USDOT Defendants do not oppose Charbon and Central Seal's motion, which should be granted. The opposition filed by the original Plaintiffs, MAMCO and Bagshaw, is without merit. Charbon and Central Seal clearly have standing, they are ready and willing to meet the deadlines of the existing scheduling order without delay, and they should be afforded the same interim injunctive relief as MAMCO and Bagshaw. There is no prejudice to MAMCO and Bagshaw, and the instant motion should be granted.

I.  **Plaintiffs have failed to demonstrate they will suffer undue prejudice as a result of the timing of Central Seal and Charbon's proposed intervention.**

In challenging the timeliness of Central Seal and Charbon's Motion, Plaintiffs primarily rely on the fact that the Court has already entered a scheduling order. But Plaintiffs fail to demonstrate, under the circumstances of this case, why they will suffer undue prejudice if intervention is allowed. *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 493 (6th Cir. 2014) (explaining that parties challenging the timeliness of a proposed intervention must demonstrate that the alleged "delay in moving for intervention will prejudice the existing parties in the case"). And, Plaintiffs' reliance on the pre-existing scheduling order in this matter is misplaced for several reasons.

First, contrary to Plaintiffs' suggestion, there is no bright line rule under Fed. R. Civ. P. 24 that intervention must be sought before entry of a scheduling order. *See e.g., Kyaw Aung v. USF Holland, LLC*, No. 3:17-cv-00092-GFVT, 2019 WL 10252748, at *1 (E.D. Ky. Mar. 25, 2019) (granting motion to intervene "a few months after entry of a Scheduling Order" and where "fact discovery [was] still ongoing"). Plaintiffs cite two opinions from this Court on this point; however, in both opinions, the Court simply cited the lack of a scheduling order as evidence that the motions *were* timely—it did *not* hold in either case that intervention sought after entry of a scheduling order would be *de facto* untimely. *See Terrell v. Unico, LLC*, No. 5:23-CV-314-GFVT, 2024 WL 4578537, at *1 (E.D. Ky. May 2, 2024); *Gillespie v. H. Cargo LLC*, No. 5:22-CV-297-GFVT, 2023 WL 4138999 (E.D. Ky. June 22, 2023). Indeed, neither the Court nor any of the parties argued for such a

ruling. In both cases, the Court dedicated only one or two sentences to the question of timeliness, no doubt in part because there were no objections to intervention in either case. *Id.* Moreover, this Court has granted motions to intervene filed months after entry of a scheduling order. *See e.g., Kyaw Aung v. USF Holland, LLC*, 2019 WL 10252748, at *1. This is because, as courts routinely acknowledge when considering the timeliness of Rule 24 motions, the potential prejudice (or absence thereof) of the intervenor's timing is more important than the actual length of the alleged delay. *See W.O. v. Beshear*, No. 3:20-cv-00023-GFVT, 2020 WL 2134088, at *4 (W.D. Ky. May 5, 2020) (explaining that with regard to timeliness factor, the "key concern" is not "the absolute measure of time between the filing of the complaint and the motion to intervene," but instead, "what steps occurred along the litigation continuum *during* this period of time"); *see also e.g., Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 490–493 (6th Cir. 2014) (holding that 10 month delay in intervening was, on its own, "insufficient to deny" intervention motion "absent a finding of incremental prejudice").

As a result, and contrary to Plaintiffs' suggestion, Rule 24 does not impose any bright line rule or deadline for seeking intervention, because courts in this circuit "consistently look[] to the totality of the circumstances to determine timeliness." *Davis v. Lifetime Capital*, 560 F. App'x at 490. At any rate, if, as Plaintiffs suggest, intervention *would* have been timely if filed before the Court entered the scheduling order in this case in December, it seems odd to suggest that intervention 19 days later was somehow untimely. *See Kyaw Aung v. USF Holland,*

3

*LLC*, 2019 WL 10252748 at *1 (granting motion to intervene a few months after entry of scheduling order).  This is especially true given that the timing of Central Seal and Charbon's Motion will not significantly delay any of the events set forth in the scheduling order as entered.  The current trial date of January 26, 2026—nearly a year away—is certainly not in jeopardy.  (Scheduling Order, DN 52 p. 7.)  Nor are any dispositive motion deadlines (August 11, 2025), or the discovery cutoff deadlines (fact discovery to be completed by April 10, 2025; expert discovery by July 10, 2025).  (*Id.* pp. 2–3.)  Finally, perhaps most importantly, **the deadline to amend pleadings and join additional parties (such as Charbon and Central Seal) is still months away as of this reply filing** (May 22, 2025).  (*Id.* p. 3.)  Indeed, the only deadline currently impacted by Central Seal and Charbon's intervention is the deadline for routine initial disclosures (December 18, 2024), which Central Seal and Charbon will happily submit to the parties immediately upon the Court's granting their motion.

Given the totality of circumstances here, it would be an unnecessary waste of judicial resources to require Charbon and Central seal to initiate their own duplicative action seeking the same injunctive relief when an extension of the preliminary injunction here (which is clearly warranted under the rationale of that injunction) will have the same affect and result in no undue prejudice to the current parties.  Rather, Plaintiffs' failure to demonstrate any undue prejudice resulting from the timing of Central Seal and Charbon's intervention weighs in favor of granting the Motion.

## II. Central Seal and Charbon have met the "minimal" standard of showing a potential for inadequate representation.

Central Seal and Charbon are "not required to show that [non-movants'] representation will **in fact** be inadequate." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (citation omitted) (emphasis added). Instead, "proposed intervenors need show only that there is a *potential* for inadequate representation," which courts (including the Supreme Court) have described as a "minimal" showing. *Id.* And, because "[t]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests[,]" courts should "be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1909 (3d. ed. 2002).

Central Seal and Charbon have exceeded the standard for establishing a mere *possibility* that the current parties will not adequately represent their interests. Indeed, Plaintiffs' opposition to the Motion to Intervene, a prerequisite to seeking expansion of the Court's preliminary injunction to protect Charbon and Central seal's interests, *definitively proves* that Plaintiffs already do not adequately represent them in multiple respects. Plaintiffs have no interest (understandably) in asking the Court to expand the scope of the preliminary injunction to Central Seal and Charbon while this action is pending. Simply stated, absent intervention, Plaintiffs will enjoy the protection of the preliminary injunction while Central Seal and Charbon will not.

5

Moreover, given the manner in which the government has chosen to abide by the Court's preliminary injunction (by instructing KYTC to abstain from implementing DBE preferences only for projects on which MAMCO and Bagshaw bid), the limitation of the preliminary injunction to only current parties means that the KYTC must attempt to meet its DBE program goals by imposing more extensive discriminatory practices with respect to projects on which MAMCO and Bagshaw *do not bid*. In other words, as a result of the injunction's current limitation, Central Seal and Charbon will be subject to even greater levels of discrimination resulting from USDOT's implementation of DBE laws and regulations, as the pool of projects on which KYTC can meet its DBE program goals shrinks. This dynamic further weighs against any finding that Plaintiffs' interests are adequately aligned with Central Seal and Charbon.

Plaintiffs' stated hope to *eventually* obtain "permanent, nationwide relief for all roadbuilders working on federally funded projects" (DN 55 p. 6) is commendable if true, but it is nevertheless cold comfort to Central Seal and Charbon who will surely not be allowed to intervene when the time comes to submit argument on the conversion of the preliminary injunction into permanent injunctive relief.

And, application for injunctive relief—in both preliminary and permanent forms—requires consideration of the movant's demonstrated injuries and standing to seek such relief. The Court has already shown an unwillingness to expand the scope of injunctive relief beyond the parties in this case. To the extent this reluctance is based in part on the fact that other contractors may have weaker (or at

least different) arguments for standing, Central Seal and Charbon must be allowed the opportunity to present facts and argument to the Court demonstrating both that they have been uniquely harmed by the DBE laws and regulations at issue and are also entitled to the protections of any ultimate injunction entered at the conclusion of this case.

If Plaintiffs truly wish to obtain broader injunctive relief at the conclusion of this case, they should welcome entrants such as Charbon and Central Seal, and all of the resources and unique insights they can offer in the pursuit of that ultimate goal. Their opposition to the Motion to Intervene is itself proof that their interests are not adequately aligned with Central Seal and Charbon to justify denial of intervention.

## CONCLUSION

For the foregoing reasons, Central Seal and Charbon request that the Court grant their Motion to Intervene.

Respectfully submitted,

*/s/ Frederick R. Bentley III*
David B. Owsley II
Frederick R. Bentley III
Kyle S. Schroader
**STITES & HARBISON PLLC**
400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone: (502) 587-3400
dowsley@stites.com
rbentley@stites.com
kschroader@stites.com

*Counsel for Central Seal and Charbon*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was served on all following counsel of record via the Court's electronic filing system on this 5th day of February, 2024.

*/s/ Frederick R. Bentley III*
Frederick R. Bentley III