UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

---

MID-AMERICA MILLING COMPANY,
LLC, *et al.*,

      Plaintiffs,

v.                                                                          Case No. 3:23-cv-00072-GFVT

UNITED STATES DEPARTMENT
OF TRANSPORTATION, *et al.*,

      Defendants.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO PROPOSED DBE INTERVENORS' MOTION TO INTERVENE**

---

## PLAINTIFFS' INITIAL ARGUMENT IN RESPONSE

Just weeks ago, President Trump issued two executive orders indicating a federal commitment to "protect[ing] the civil rights of all Americans" from discrimination based on characteristics, such as race and sex. Exec. Order No. 14,173 (Jan. 21, 2025), 90 Fed. Reg. 8633 (Jan. 31, 2025);[1] Exec. Order No. 14,151 (Jan. 20, 2025), 90 Fed. Reg. 8339 (Jan. 29, 2025).[2] These orders require all federal agencies to, among other things, assess agency "activities," "programs," "policies," "regulations," and "litigating positions" to ensure "align[ment]" with "the policy of equal dignity and respect"; "terminate" "illegal preferences"; and "enforce our longstanding civil-rights laws." Exec. Order No. 14,151 (Jan. 20, 2025), 90 Fed. Reg. 8339 (Jan. 29, 2025); Exec. Order No. 14,173 (Jan. 21, 2025), 90 Fed. Reg. 8633 (Jan. 31, 2025).

Citing to these executive orders, National Association of Minority Contractors ("NAMC"); Women First National Legislative Committee; Airport Minority Advisory Council ("AMAC"); Women Construction Owners & Executives, Illinois Chapter ("WCOE"); Atlantic Meridian Contracting Corp. ("AMC-Civil"); and Upstate Steel, Inc. (collectively, "Proposed DBE Intervenors") move for intervention based on the assumptions articulated in their belief that "the federal government [has abdicated or will] abdicate[] its responsibility to defend [a] statute[] that ha[s] been lawfully adopted." ECF 57:3. *See also Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990) (a proposed intervenor must show, among other things, that the motion is timely "in the context of all relevant circumstances" and that "the parties to the litigation cannot adequately protect the proposed intervenors' interest").

---

[1] https://www.govinfo.gov/content/pkg/FR-2025-01-31/pdf/2025-02097.pdf.

[2] https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-01953.pdf.

However, the President's executive orders suggest only that federal agencies must enforce longstanding civil rights laws and terminate illegal preferences, which may include preferences on the basis of race or sex. At this time, it is simply unknown as to *whether*, and *how*, the aforementioned executive orders may impact federal Defendants' actions with respect to the Disadvantaged Business Enterprise Program ("DBE Program") generally, or Defendants' "litigating position" in this case.

At present, Proposed DBE Intervenors' motion is either untimely in their premature assumption that their interests will not be adequately represented, or alternatively—in the event that the government continues to advance what Proposed DBE Intervenors themselves have described as a "robust defense of the [DBE] [P]rogram," *e.g.*, ECF 57:17—the motion may be untimely, given the progression of this case in which a preliminary injunction for Plaintiffs was obtained over four months ago, ECF 44, the Parties have agreed to an approved plan for efficient discovery with tight deadlines, ECF 52, and the Parties are adhering to that plan, having already prepared and exchanged disclosures and hundreds upon hundreds of pages of discovery. Here, the written discovery deadline is just around the corner and must be completed by February 10. ECF 52. Meanwhile, this motion will still be under decision. *See* ECF 64 (ordering Proposed DBE Intervenors to file any reply to their motion by February 10).[3]

Thus far, the federal Defendants have defended the DBE Program's design to use race and sex to preferentially assist American companies owned by "socially and economically disadvantaged individuals" in obtaining contracts for federally financed highway and

---

[3] Plaintiffs do not suggest that these brief points constitute the entirety of any argument they may have opposing Proposed DBE Intervenors' motion, and Plaintiffs do not waive additional arguments they may have, given further development of the circumstances described herein and given a fuller opportunity respond.

infrastructure projects. *See, e.g.*, ECF 1 ¶¶ 3, 19–42, ECF 31, ECF 32. To be sure, as the Proposed DBE Intervenors point out, the Defendants have, for decades, maintained that this system of preferences is entirely justified and constitutional and have vindicated the program in court a number of times. ECF 57:4. *See also* ECF 32:12 (touting the federal government's successful defense of the DBE Program across decades in four Circuit Courts).[4]

And, while Plaintiffs *hope* that the federal government might finally turn a new page to begin complying with the twin commands of equal protection guaranteed under the United States Constitution, and that—pursuant to that fundamental promise of "equal dignity and respect," Exec. Order No. 14,151 (Jan. 20, 2025)—DOT might finally determine that a 44-year old policy of perpetual discrimination in federal contracting does not comport with the Constitution or other laws, to date, *Defendants have not declared any such change in position as to the DBE Program*, much less a change in the their "litigating position" in this case.[5]

Right now, it would be difficult, if not impractical, to fully and properly evaluate whether the added presence of Proposed DBE Intervenors is justified and appropriate, or to predict exactly

---

[4] Thus, Plaintiffs *cannot* agree with Proposed DBE Intervenors' contention that they are somehow in a better position than the government in "put[ting] forward evidence of [governmental] discrimination" that "the government itself" has argued for 44 years in validating and vindicating the DBE Program. *See* ECF 57:25. Indeed, as Proposed DBE Intervenors concede, "DOT, represented by the Department of Justice, [has] put forth a robust defense of the program." *Id.* at 17.

[5] For its part, the January 20 executive order directs all federal agencies, including Defendant DOT, to "consult[] with the Attorney General" (among others) in considering the legality of policy or program preferences, such as preferences based on race and sex. *See* Exec. Order No. 14,151 (Jan. 20, 2025). To date, a new DOT Secretary was sworn into office approximately one week ago on January 28; meanwhile, the current Attorney General was just confirmed the evening of February 4. *See* U.S. Dep't of Transp., Press Release, *Sean Duffy Sworn In as Secretary of U.S. Department of Transportation …*, (Jan. 28, 2025), archived at: https://archive.ph/moSko; U.S. Senate Comm. on the Judiciary, Press Release, *Grassley Welcomes Pam Bondi's Confirmation as U.S. Attorney General*, (Feb. 4, 2025), archived at: https://archive.ph/LegF5.

3

how Defendants' actions could end up impacting this case. For example, a change in Defendants' position with respect to the DBE Program could impact Plaintiffs' claims, and, in turn, render motions for intervention in this case a moot point.

In addition, Plaintiffs and Defendants are preparing, and intend to submit, a joint motion to stay this case to enable the Parties an adequate opportunity to determine whether any settlement of Plaintiffs' claims might be available in light of Defendants' considerations of the executive orders and their litigation position in this case. A temporary stay of the case would also render it unnecessary for the Court to consider Proposed DBE Intervenors' motion (or *any* intervention motion, *see also* ECF 53) at this time.[6]

---

[6] Notably, in the event that the government's position as to the DBE program changes in a manner that permits the Parties to this case to consider the availability of any potential settlement of Plaintiffs' claims, would-be intervenors, like Proposed DBE Intervenors, would *not* be precluded from filing their motions at a later point and "put[ting] forward evidence of discrimination," ECF 57:25, or other objections, should the Parties determine to move for a consent decree under such circumstances. *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 872 (6th Cir. 2015) ("Before entering a consent decree," a court must allow an objecting party "to present evidence and have its objections heard") (internal citations and quotation marks omitted).

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny the Proposed DBE Intervenors' motion at this time. At a minimum, Plaintiffs would ask the Court to defer a ruling on the motion until after the Court has the opportunity to consider and rule on the Parties' forthcoming motion to stay this case, and after any opportunity the Parties might have to consider a settlement of Plaintiffs' claims following the development of Defendants' litigation position in this case.

In addition, Plaintiffs further request the opportunity to submit additional arguments they may have regarding Proposed DBE Intervenors' motion, given further development Defendants' position as to the DBE Program under the circumstances described herein.

Dated: February 5, 2025.

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

*s/ Cara Tolliver*

Richard M. Esenberg (WI Bar No. 1005622)
Daniel P. Lennington (WI Bar No. 1088694)
Cara M. Tolliver (WI Bar No. 1112818)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Rick@will-law.org
Dan@will-law.org
Cara@will-law.org

COMMONWEALTH COUNSEL GROUP, PLLC
Jason M. Nemes (KBA# 90546)
Greg Healey (KBA# 99546)
10343 Linn Station Road, Suite 100
Louisville, KY 40223
jason@ccgattorneys.com
greg@ccgattorneys.com

*Attorneys for Plaintiffs*