UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:23-cv-00072-GFVT-EBA ) |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*, | ) ) ) |
| Defendants. | ) ) |

### REPLY IN SUPPORT OF MOTION TO INTERVENE

Proposed Intervenor DBEs—a collection of disadvantaged business enterprises and organizations that represent and advocate for them—seek to protect the United States Department of Transportation's ("DOT's") disadvantaged business enterprise ("DBE") program that is a "literal lifeline," Ex. B ¶ 16, Doc. 57-2, PageID 954, from Plaintiffs' challenge, given the likelihood that the new administration will stop defending it. As set forth in their Motion to Intervene, Intervenor DBEs satisfy the legal standard under Rule 24(a) and must be allowed to intervene to protect their legal interests. Even if they did not meet the requirements for mandatory intervention, which they do, Intervenor DBEs easily meet the legal standard for permissive intervention under Rule 24(b). The government, taking no position, Doc. 68, does not dispute these conclusions.

Plaintiffs, offering only their "initial argument in response," Doc. 67, at 1, PageID 1052, purport to oppose the motion but wind up providing evidence that further supports Intervenor DBEs' argument. Indeed, Plaintiffs acknowledge that the government may change its litigating position in this case, a fact they again reiterate in the Parties' Joint Motion to Stay filed today (Doc.

1

69).  And the final response, from Proposed Intervenor Plaintiffs (Central Seal and Charbon Contracting), merely provides opinions of entities not even parties to this case at the time of filing. *See* Doc. 65.  Regardless, their opinions easily fail as they either misunderstand Intervenor DBEs' arguments, misconstrue the relevant statutes and case law, or both.  None of these responses provide any basis on which this Court can deny the Intervenor DBEs' motion to intervene under Rule 24(a), nor should deny it under Rule 24(b).

## ARGUMENT

Plaintiffs' opposition to the Intervenor DBE's motion to intervene is untethered to the legal factors this Court must consider under Rule 24, but appears to object primarily on grounds related to timeliness and adequacy of representation.  Neither of these grounds persuade.

First, Plaintiffs argue (Doc. 67, at 2 and 3 n.5, PageID 1053-54) that it is simply too early to know whether and how DOT may change its litigating position as a result of the Executive Orders directing the federal government to terminate "all…'equity-related' grants or contracts" and to re-assess and "align" litigating positions related to "diversity, equity, inclusion, and accessibility."  Exec. Order No. 14,151 § 2(b)(i), (b)(iii)(B), (c)(i).  But this assertion is in tension with Plaintiffs' suggestion to this Court, only a few weeks ago, that they "anticipate[d] this lawsuit to be among the litigating positions that are re-assessed" by DOT and implication that after such reassessment, DOT may be amenable to "resolution of this matter."  Doc. 55, at 2 n.2, PageID 906. And indeed, Plaintiffs go on to argue—in the very same brief (Doc 67, at 4, PageID 1055)—that they are *presently working with DOT* to prepare "a joint motion to stay this case to enable the Parties an adequate opportunity to determine whether any settlement of Plaintiffs' claims might be available in light of Defendants' considerations of the executive orders and their litigation position

2

in this case."[1]  In other words: within the space of a mere four pages, Plaintiffs state that it is too early to know whether DOT may change its litigating position, and then acknowledge that they have personal knowledge that DOT is in fact considering changing its litigating position.  This suffices to demonstrate that Intervenor DBEs must be admitted to the case now to protect their interests.

Second, Plaintiffs suggest (*Id.* at 2, PageID 1053) that, if Intervenor DBEs have not filed too early, then they have filed too late.  Under Plaintiffs' logic, it is impossible for a motion to intervene here to be timely.  That is not consistent with the many cases cited in Intervenor DBEs' original motion to intervene, *see* Doc. 57, at 14-19, PageID 930-35, and Plaintiffs fail to offer a single citation to the contrary.  Nor could they: Intervenor DBEs filed their motion to intervene only days after the relevant Executive Orders were issued, and while this case remains in the early stages of discovery.  *Cf. Grubbs v. Norris*, 870 F.2d 343, 345-46 (6th Cir. 1989) (reversing a finding of untimeliness where the district court "squeezed" the proposed intervenor "from both ends in its efforts to intervene" by first denying a motion to intervene as premature based on no showing of harm and then as too late because of the procedural posture of the litigation).

Third, Plaintiffs contend (Doc. 67, at 2-3, PageID 1053-54) that DOT has ably defended the DBE program thus far. Intervenor DBEs don't disagree: this is why they did not seek to intervene sooner.  But, in light of the Executive Orders, and Plaintiffs' own admission that DOT is likely to change its litigating position here, past practice is hardly an indicator of future performance.

Finally, Plaintiffs suggest (*Id.* at 4, PageID 1055) that the current Parties will be seeking a

---

[1] The Parties filed that Motion to Stay earlier today. *See* Doc. 69.

3

stay[2] to discuss settlement (which they did earlier today, Doc. 69), and that would render any intervention superfluous. But that argument only emphasizes why joining this case now is essential to protecting Intervenor DBEs' interests. If the current Parties settle the case, then Intervenor DBEs will have lost the opportunity to fully defend the program. *See S.H. v. Stickrath*, 251 F.R.D. 293, 298-99 (S.D. Ohio 2008) (collecting cases). Plaintiffs' suggestion (Doc. 67, at 4 n.6, PageID 1055) that this is immaterial, because Intervenor DBEs could always file an objection to a consent decree, is cold comfort. There is hardly a guarantee that the Parties would elect a settlement that contains that component. And even if it did, voicing objections to a prepackaged settlement is hardly a substitute for participating in, shaping, or potentially rejecting those discussions in the first instance.[3]

      Proposed Intervenor Plaintiffs Central Seal and Charbon also oppose Intervenor DBEs' joining the case, with far less cause: they are not even parties, and provide no support for the notion

---

[2] Plaintiffs alternatively request (Doc. 67, at 5, PageID 1056) that this Court defer ruling on Intervenor DBEs' motion to intervene until after considering the current Parties' "forthcoming" motion to stay. This request highlights the absurdity of Plaintiffs' position and the timeliness of Intervenor DBEs' motion. Should the Court eventually decide to stay the case for any reason, it will harm no one for Intervenor DBEs to be one of the several parties stayed from further litigation. But in the meantime—particularly as Plaintiffs offer no explanation in the briefing on Intervenor DBEs' motion to intervene as to why they had not yet filed a motion to stay, nor an explanation in their Motion to Stay as to why they waited until the very day that briefing was set to be complete on Intervenor DBEs' Motion to Intervene (Doc. 69)—leaving Intervenor DBEs out of the case will put them only further behind in the discovery schedule. If the Court decides to grant the Parties' Motion to Stay (Doc. 69), it should do so only after considering and ruling on this Motion to Intervene. Should the Court grant Intervenor DBEs' Motion to Intervene (Doc. 57), Intervenor DBEs' do not oppose staying the pending discovery deadlines but respectfully request that this Court refrain from entering any settlement agreement or other resolution of this case absent participation by Intervenor DBEs.

[3] Plaintiffs also request the opportunity to submit additional argument opposing Intervenor DBEs' motion later on. They cite no authority to support their view that they should have multiple bites at the apple, irrespective of the scheduling order entered by this Court imposing a February 5, 2025 deadline for "any Response(s)" to Intervenor DBE's Motion. Doc. 64.

4

that they are entitled to have their opposition taken into account just yet. But even if this Court were inclined to entertain these Proposed Intervenor Plaintiffs' arguments, they would fail.

Proposed Intervenor Plaintiffs apparently believe (Doc. 65, at 2-3, PageID 1037-38) that private parties can never intervene to defend a federal government program. This contravenes decades of precedent from the many courts that have permitted just such interventions. *See, e.g.*, *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251 (11th Cir. 2019); *W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017); *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547 (7th Cir. 2014), vacated on other grounds, 575 U.S. 901 (2015); *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003); *Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996); *Mausolf v. Babbit*, 85 F.3d 1295 (8th Cir. 1996). The statutes and authority on which Proposed Intervenor Plaintiffs rely for their objection (Doc. 65, at 2, PageID 1037) simply say that only the Attorney General may represent the United States and its components. But neither Intervenor DBEs, nor their counsel, seek to represent the United States or its interests in any fashion. And indeed, counsel for the Intervenor DBEs seek only to represent the interests of the Intervenor DBEs.

Proposed Intervenor Plaintiffs also suggest (Doc. 65, at 3, PageID 1038) that because the original Plaintiffs could not have sued Intervenor DBEs for the relief they seek, Intervenor DBEs cannot be proper defendants. But again, if that were true, it would eliminate the possibility of intervening as defendants altogether: there is no requirement that an intervenor-defendant have caused the harm of which Plaintiffs complain. The only citation Proposed Intervenor Plaintiffs offer is to a footnote describing how to interpret the words "claims or defenses" in the class action context; it is irrelevant to the analysis here. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 623 n.18 (1997).

5

Proposed Intervenor Plaintiffs next argue (Doc. 65, at 4, PageID 1039) that Intervenor DBEs do not have standing because they have not proven they have bid on the contracts at issue in Kentucky. But Intervenor DBEs are not trying to be plaintiffs in this case, and so they do not need to show that they have been injured by DOT's conduct. Instead, to intervene as defendants at this stage of the litigation, they must merely show a "substantial interest," as they have done, *see* Doc. 57 at 19-21, PageID 935-37, and Proposed Intervenor Plaintiffs offer no authority to the contrary.[4]

## CONCLUSION

For the foregoing reasons, and those stated in their opening brief, Proposed Intervenor DBEs respectfully request that this Court grant their Motion to Intervene.

Dated: February 10, 2025

Respectfully submitted,

/s/ Douglas L. McSwain

| | |
|---|---|
| Brooke Menschel* | Douglas L. McSwain |
| DC Bar No. 9000389 | KY Bar No. 46895 |
| Adnan Perwez* | Wyatt, Tarrant & Combs LLP |
| DC Bar No. 90027532 | 250 West Main Street |
| Jessica Anne Morton* | Suite 1600 |
| DC Bar No. 1032316 | Lexington, KY 40507 |
| Audrey Wiggins* | (859) 288-7415 |
| DC Bar No. 482877 | dmcswain@wyattfirm.com |
| Democracy Forward Foundation | |
| P.O. Box 34553 | Sarah von der Lippe* |
| Washington, DC 20043 | DC Bar No. 454585 |
| (202) 448-9090 Ext. 1011 | Minority Business Enterprise Legal Defense |
| bmenschel@democracyforward.org | and Education Fund, Inc. |
| aperwez@democracyforward.org | 1104 East Capitol St. NE |
| jmorton@democracyforward.org | Washington, DC 20002 |
| awiggins@democracyforward.org | (202) 744-5415 |
| | Outsidecounsel1@mbeldefwatchdog.org |
| | *Counsel for Proposed Intervenor DBEs* |
| | *\*admitted pro hac vice* |

---

[4] In any event, should Plaintiffs prevail, Intervenor DBEs would suffer an injury in fact more than sufficient to confer standing. *See, e.g.*, Doc. 57, at 20 n.7, PageID 936; *see also generally* Docs. 57-1 - 57-8.

6

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d)(1)(B), service of the foregoing is made on all parties of record through the Court's electronic service system.

Dated: February 10, 2025   /s/ Douglas L. McSwain
  Douglas L. McSwain

101866775.1