UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:23-CV-00072-GFVT-EBA

MID-AMERICA MILLING COMPANY, *et al.*,                             PLAINTIFFS,

V.        **MEMORANDUM OPINION & ORDER**

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,                                          DEFENDANTS.

*** *** *** ***

This matter is before the Court on a Motion to Intervene by Proposed Intervenor Defendants National Association of Minority Contractors ("NAMC"), Women First National Legislative Committee ("Women First"), Airport Minority Advisory Council ("AMAC"), the Illinois Chapter of Women Construction Owners & Executives ("WCOE"), Atlantic Meridian Contracting Corporation ("AMC-Civil"), and Upstate Steel, Inc. (collectively, "Intervenor DBEs"). [R. 57]. The matter is fully briefed and ripe for review. [R. 65; R. 67; R. 68; R. 70]. For the reasons outlined below, Intervenor DBEs' Motion to Intervene, [R. 57], will be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.**

This case centers around the United States Department of Transportation's ("DOT") Disadvantaged Business Enterprise ("DBE") Program. By prior Opinion and Order, Judge Gregory F. Van Tatenhove thoroughly described the DBE Program and its legal backdrop:

> [The DBE Program] require[s] that ten percent of federal highway construction funds be paid to small businesses owned and controlled by "socially and economically disadvantaged individuals," as that term is defined in § 8(d) of the

Small Business Act (15 U.S.C. § 637). [R. 1 at pgs. 7–8]; *Sherbrooke Turf, Inc. v. Minn. DOT*, 345 F.3d 964, 967 (8th Cir. 2003). "[S]ocially disadvantaged individuals" are "those who have been subjected to racial or ethnic prejudice or cultural bias within American society[.]" 49 C.F.R. Part 26 app. E. "Economically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired … as compared to others in the same … line of business who are not socially disadvantaged." *Id.*

Any person may qualify as socially and economically disadvantaged regardless of their race or gender. 49 C.F.R. § 26.67(d) & app. E. But under the law, certain racial groups and women are rebuttably presumed to be disadvantaged. 49 C.F.R. § 26.5. All other applicants for DBE certification who are not presumed disadvantaged on the basis of their racial or female status must prove, by a preponderance of the evidence, that they are socially and economically disadvantaged. 49 C.F.R. § 26.67(a)(3)(i)-(d).

Under federal law, fund recipients, such as state departments of transportation, are required to have a DBE Program and must set a DBE participation goal "based on demonstrable evidence of the availability of ready, willing and able DBEs relative to all businesses ready, willing and able to participate on" federally funded contracts. 49 C.F.R. §§ 26.21, 26.45(a)–(b). To the extent feasible, state-recipients of federal highway funds attempt to meet their overall goals through the use of race and gender-neutral means. 49 C.F.R. § 26.51(a). But to the extent they cannot meet their overall goals, the state must utilize "contract goals" to meet its overall goal. 49 C.F.R. § 26.51(d). On these particular contracts, the recipient sets goals for DBE subcontractor participation on specific contracts. *Id.* On contracts with goals, states must meet the goal for DBE participation or otherwise document that a bidder has made "good faith efforts" to meet the DBE goal. 49 C.F.R. § 26.53.

[R. 44 at pgs. 2–3]. The DBE Program was most recently re-authorized by the Infrastructure Investment and Jobs Act, P.L. 117-58, which was passed by Congress and signed into law by President Biden in November 2021. [R. 1 at pg. 2; R. 57 at pg. 6].

On October 26, 2023, Plaintiffs Mid-America Milling, LLC and Bagshaw Trucking Inc. (collectively, "Plaintiffs"), regular bidders on DOT contracts impacted by the DBE Program, filed suit seeking preliminary and permanent injunction, as well as a declaratory judgment. [R. 1]. Plaintiffs followed up their complaint with a Motion for Preliminary Injunction, which sought to halt the enforcement of the DBE Program. [R. 27]. Defendants DOT, (former) Secretary of Transportation Peter Buttigieg, Shailen Bhatt, and Todd Jeter (collectively, "Defendants") then moved to dismiss Plaintiffs' complaint. [R. 31]. On September 23, 2024, Judge Van Tatenhove

found that the DBE Program likely violated the Equal Protection Clause, granted Plaintiffs' Motion for Preliminary Injunction, enjoined Defendants from "mandating the use of race- and gender-based rebuttable presumptions for [DOT] contracts impacted by DBE goals upon which Plaintiffs bid," and denied Defendants' Motion to Dismiss. [R. 44]. After Plaintiffs filed a Motion to Clarify the scope of the injunction, [R. 46], Judge Van Tatenhove granted the motion and explained that the injunction was "effective in any state in which Plaintiffs operate or bid on [DOT] contracts [impacted by the DBE Program]." [R. 50 at pg. 8].

Because of the ongoing litigation regarding the Motion for a Preliminary Injunction and Motion to Dismiss, Defendants did not file an answer until October 7, 2024. [R. 45]. On December 12, 2024, the Court entered a Scheduling Order. [R. 52]. Pertinently, initial disclosures were to be made by December 18, 2024, written discovery requests (i.e., document requests, interrogatories, and requests for admission) by February 10, 2025, and Fact Discovery closed on April 10, 2025. [*Id.* at pgs. 1–2]. A jury trial is set for January 26, 2026. [*Id.* at pg. 7].

On January 1, 2025, Central Seal Company and Charbon Contracting, LLC (collectively, the "Claimants") filed a Motion to Intervene and to expand Judge Van Tatenhove's Preliminary Injunction. [R. 53]. Claimants allegedly suffered harms similar to the Plaintiffs' injuries due to the DBE Program. [*Id.*]. While Defendants took no position on the Motion, [R. 56], Plaintiffs are opposed. [R. 55]. The Court has not yet ruled on the Claimants' motion.

**B.**

On January 20, 2025, President Trump signed an Executive Order titled "Ending Radical and Wasteful Government DEI Programs and Preferencing." Exec. Order, No. 14151 (Jan. 20, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/01/ending-radical-and-wasteful-government-dei-programs-and-preferencing/. As relevant here, the EO directs "[e]ach

Page **3** of 13

agency, department, or commission head, in consultation with the Attorney General, the Director of [the Office of Management and Budget], and the Director of [the Office of Personnel Management]" to "terminate . . . all 'equity action plans,' 'equity' actions, initiatives, or programs, [and] 'equity-related' grants or contracts." *Id.* In a subsequent Executive Order titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," President Trump also directed the Office of Federal Contract Compliance Programs to "immediately cease . . . [a]llowing or encouraging Federal contractors and subcontractors to engage in workforce balancing based on race, color, sex, sexual preference, religion, or national origin." Exec. Order, No. 14173 (Jan. 21, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/01/ending-illegal-discrimination-and-restoring-merit-based-opportunity/.

Plaintiffs' lawsuit against Defendants largely mirrors President Trump's view that these merit-based and DEI programs are unconstitutional. [*See* R. 1]. Accordingly, viewing these EOs and Plaintiffs' lawsuit as a threat to their own interests, Intervenor DBEs have filed a Motion to Intervene. [R. 57]. Intervenor DBEs are comprised of various advocacy groups, trade organizations, and businesses that claim to heavily rely on the DBE Program. [*Id.* at pgs. 6–9]. Specifically, NAMC, WCOE, and AMAC are trade associations whose members are comprised of socially and economically disadvantaged businesses which benefit from the DBE program; Women First is a "non-partisan grassroots organization" which has, *inter alia*, "fifteen women serving as Trustee Board members who own DBE-certified businesses" and thus depend on the DBE program for consistent business; and AMC-Civil and Upstate Steel are minority- and women-owned businesses which are purportedly reliant on the DBE Program. [*Id.* at pgs. 6–10]. Both the Plaintiffs and the Claimants opposed Intervenor DBEs' Motion, [R. 65; R. 67], but the Defendants

take no position on the Motion. [R. 68]. Intervenor DBEs filed a Reply in support of their Motion. [R. 70]. The matter is now ripe for review.

## DISCUSSION

### A. Standing

As a preliminary matter, Claimants contend that Intervenor DBEs lack standing to intervene under Rule 24. [R. 65 at pgs. 2–4]. Accordingly, because courts lacking jurisdiction "cannot proceed at all in any cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), the Court must first consider whether Intervenor DBEs have standing.[1]

### *1. 28 U.S.C. § 516*

Claimants first invoke 28 U.S.C. § 516, which they interpret to mean that Intervenor DBEs do not have jurisdiction to intervene. [R. 65 at pg. 2–3]. The statute provides that, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. The Supreme Court has clarified, however, that Section 516 concerns "the conduct of litigation *on behalf of* the United States and its agencies." *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 92 n. 1 (1994) (emphasis added). Here, Intervenor DBEs do not seek to litigate on behalf of the DOT or the United States more generally. [R. 70 at pg. 5]. Rather, they only seek to represent their own interests. [*Id.*].

Defendants point to non-controlling precedent where a court denied a Rule 24 motion to intervene because it would violate 28 U.S.C. § 516. *See In re Ocean Shipping Antitrust Litigation*, 500 F.Supp. 1235, 1238–39 (S.D. N.Y. 1980). That case, however, is factually distinguishable

---

[1] "A motion to intervene is a nondispositive motion which may be heard and determined by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A)." *United States v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 267 n. 1 (E.D. Mich. 1997) (collecting cases).

from this matter, as it involved the Federal Maritime Commission's attempt to intervene on behalf of certain private party defendants. *Id.* at pg. 1237. Conversely, Intervenor DBEs—as private parties—seek to intervene to defend a federal government program. As Intervenor DBEs point out, courts have consistently permitted such interventions without any mention of or concern for Section 516. *See, e.g.*, *Callahan v. United States Dep't of Health and Hum. Serv.*, 939 F.3d 1251, 1256 n. 6 (11th Cir. 2019) (noting that two private individuals were permitted to intervene as defendants under Rule 24 where liver-transplant candidates and hospitals challenged HHS policy); *California ex rel. Lockyer v. United States*, 450 F.3d 436, (9th Cir. 2006) (holding that private healthcare providers were entitled to intervene as defendants when California challenged a congressional appropriation that risked harming intervenors' interests); *Herr v. United States Forest Serv.*, 865 F.3d 351, 355 (6th Cir. 2017) (noting, without concern, that "[t]wo environmental protection organizations and two property owners . . . intervened to support" a federal agency being sued for allegedly violating Michigan and federal law). Accordingly, the Claimants' reliance on Section 516 is misplaced, and their argument must fail.

### 2. *Article III Standing*

Claimants next argue that Intervenor DBEs lack Article III standing. Article III of the U.S. Constitution cabins the power of federal courts to resolving only "Cases" and "Controversies." U.S. CONST. art. III, § 2. The Supreme Court has explained that "[a]n intervenor as of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n. 6 (2020). But where the putative intervenor seeks to intervene as a *defendant*, it need not independently demonstrate Article III standing. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (intervening defendant need not

"demonstrate its standing" because intervening as a defendant did not "entail[] invoking a court's jurisdiction").

Here, because Intervenor DBEs seek to intervene as defendants in support of the DBE Program, they need not independently demonstrate Article III standing. *Id.* And, in any event, because Intervenor DBEs effectively seek the same ultimate outcome as Defendants (namely, to defend the constitutionality of the DBE program and oppose Plaintiffs' requests for injunctive relief, [*compare* R. 45 at pg. 9, *with* R. 57-10 at pgs. 7–9]), any inquiry into their standing would be improper. *See Little Sisters*, 591 U.S. at 674 n. 6 (inquiry into an intervening-defendant's standing was improper when it sought the same relief as the named-party defendant).

## B. Intervention under Rule 24

Intervenor DBEs argue that they are entitled to intervene as a matter of right or, alternatively, should be permissively allowed to intervene. [R. 57 at pg. 14].

Under Rule 24, a party may intervene as a matter of right where it "claims an interest relating to the property or transaction that is subject to the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" so long as the intervention is timely and "existing parties [do not] adequately represent" the absentee's interest(s). FED. R. CIV. P. 24(a)(2). The Sixth Circuit has distilled Rule 24 into four elements which must all be established before a court will permit intervention as a matter of right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties before the court." *United States v. Tennessee*, 260 F.3d 587, 591–92 (6th Cir. 2001) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)); *see also United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

Importantly, when determining whether to permit intervention, the court "must accept as true the non-conclusory allegations of the motion." *Horrigan v. Thompson*, No. 96-4138, 1998 WL 246008, at *2 (6th Cir. May 7, 1998) (citing *Lake Inv. Dev. Grp. V. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983)).

   1. *Timeliness*

Whether a motion to intervene is timely depends on the "totality of the circumstances." *Davis v. Lifetime Capital, Inc.*, 560 Fed.App'x. 477, 490 (6th Cir. 2014). In making this determination, five factors are instructive:

> (1) the point to which the suit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990) (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Intervenor DBEs' motion to intervene is timely. First, while Plaintiffs' complaint was first filed back in 2023, [*see* R. 1], discovery in this matter is still in its infancy. Indeed, when Intervenor DBEs' motion was filed on January 24, 2025, only the initial disclosures deadline from this Court's December 12, 2024, Scheduling Order had passed, and a jury trial is not scheduled until January 2026. [R. 52]. Moreover, while Plaintiff notes that several deadlines have now passed, the parties have expressed a continued willingness to extend deadlines. [*See* R. 71; R. 75]. These facts weigh in favor of a finding of timeliness.

Second, Intervenor DBEs state that they wish to intervene because they "have a strong interest in preserving the DOT DBE program in order to mitigate the pervasive discrimination that they and the members they represent confront in seeking to access federal transportation

contracts." [R. 57 at pg. 17]. Moreover, "because the federal government has demonstrated that it may not defend this lawsuit going forward, Intervenor DBEs . . . will fill a critical role by providing an adequate defense of" the DBE Program. [*Id.*]. The Intervenor DBEs have stated an adequate purpose for intervening, so the second factor also weighs in their favor.

Third, Plaintiffs argue that Intervenor DBEs motion is untimely because the Court's injunction was put in place on September 23, 2024, [R. 44], so Intervenor DBEs should have known of their interest in the case at that time. [R. 67 at pg. 2]. But this argument is unavailing. Indeed, Plaintiffs sought to intervene only days after the Executive Orders were passed, [R. 57], and both Plaintiffs and Intervenor DBEs appear to agree that the federal government had otherwise "vindicated the [DBE] program in court" for decades. [R. 67 at pg. 3; R. 57 at pg. 4 (noting that "every federal court of appeals to consider the question has found the DOT DBE program constitutional"). Thus, it was not until the EOs were signed and the Defendants' position on the DBE program materially changed that Intervenor DBEs "knew or should have known of their interest in the case," *Jansen*, 904 F.2d at 340, and any attempt to intervene before the EOs were signed would have likely been considered premature. *See Carpenter Indus. Council v. Zinke*, Civil Action No. 13-361, 2018 WL 11424768, at *3 (D.D.C. Mar. 28, 2018) (finding intervention to be premature when it was based on a "belief that the Trump Administration will not adequately defend" a position without any indication of an actual change in position on the issue). Accordingly, the third factor also weighs in favor of timeliness.

Fourth, any prejudice to the original parties is minimal. "The prejudice inquiry is narrow: only that prejudice attributable to a movant's failure to act promptly may be considered. The broader factor of prejudice that may flow from the intervention itself does not weigh in the balance." *Stotts v. Memphis Fire Dep't.*, 679 F.2d 579, 591 (6th Cir. 1982). Plaintiffs' arguments

that the motion is untimely because "the Parties have agreed to an approved plan for efficient discovery with tight deadlines" and have already engaged in discovery are unpersuasive given that, by and large, discovery is still in its early stages. Additionally, as discussed above, Intervenor DBEs acted promptly in seeking to intervene as soon as they knew they had an interest in this case. And Intervenor DBEs are "not attempting to inject wholly unseen, unnecessary, or irrelevant issues into this litigation" and "would address the same issues [the] Defendant[s] must confront," so prolonged discovery would not be required. *Priorities USA v. Benson*, 448 F.Supp.3d 755, 765 (E.D. Mich. 2020) (first citing *Kirsch v. Dean*, 733 Fed.App'x. 268, 279 (6th Cir. 2018); then citing *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005)) Accordingly, an absence of any cognizable prejudice to the original parties weighs in favor of a finding that Intervenor DBEs' motion is timely.

Finally, the fifth factor also weighs in favor of finding timeliness. While the Sixth Circuit "does not have an established list of additional factors that it considers" when determining whether unusual circumstances exist militating for or against intervention, a court may "consider the total balance of the timeliness factors under this prong." *Davis*, 560 Fed.App'x at 494. Because the other four factors all weigh in favor of a finding of timeliness, the fifth factor also weighs in favor of timeliness. In sum, then, after having considered all relevant factors, the Court finds that Intervenor DBEs' motion is timely.

    2. ***Substantial Legal Interest***

Intervenor DBEs must also demonstrate a "direct and substantial interest" in this case. *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989) (citing *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1223 (6th Cir. 1975)). Courts in this Circuit, however, "subscribe[] to a 'rather expansive notion of the interest sufficient to invoke intervention of right'" and "reject[] the requirement of a 'specific legal or equitable interest.'" *Davis*, 560 Fed.App'x. at 495 (quoting

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). Rather, "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Michigan State AFL-CIO*, 103 F.3d at 1245.

Intervenor DBEs have a direct and substantial interest in this case. The Claimants contend that Intervenor DBEs do not have a substantial legal interest because any interest they may have is "more rooted in their broad and abstract public policy concerns." [R. 65 at pg. 3]. While that may be true to some extent, Intervenor DBEs have also alleged facts which demonstrate that they have a substantial interest in this litigation. Indeed, they point to Declarations from each of the Plaintiffs which state that they are "DBEs [and organizations that represent similarly situated DBEs] that currently bid for contracts under and benefit from the DOT DBE program." [R. 57 at pg. 20]. Intervenor DBEs' businesses thus rely heavily on the DBE program to obtain contracts, without which they would be unable to obtain due to the alleged "pervasive discrimination" within their respective industries. [*Id.* at pg. 21]. Courts in this Circuit have found that a substantial legal interest exists, and thus permitted intervention, where the intervenors' business interests were at stake in the litigation. *See, e.g.*, *Nutrien AG Solutions, Inc. v. Anderson*, No. 2:24-CV-93, 2024 WL 4843967, at *3-4 (E.D. Tenn. Nov. 20, 2024) (finding a substantial legal interest where the outcome of the case could harm the intervenor's job duties and business operations); *INVESCO Institutional (N.A.), Inc. v. Paas*, No. 3:07-CV-0175-R, 2008 WL 4858210, at *6–7 (W.D. Ky. Nov. 7, 2008) (same). Accordingly, because this litigation "seeks [to] . . . end[] the DBE program once and for all," [R. 1 at pg. 4], Intervenor DBEs' non-conclusory allegations suffice to demonstrate that they have a substantial legal interest in this matter. *Cf. Michigan State AFL-CIO*, 103 F.3d at 1247 (noting that, when the question of whether the putative intervenor has a

substantial legal interest in the litigation is "a close one," courts should resolve the matter "in favor of recognizing an interest under Rule 24(a)").

### 3. Impairment of Ability to Protect Interest

To establish the impairment element, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. *Id.* (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)). This is a low bar, *id.*, and Intervenor DBEs easily clear it. This case effectively turns on the constitutionality of the DBE program. As Intervenor DBEs allege, the upshot of any unfavorable ruling on the DBE program would result in them no longer having access to contracts for their respective transportation businesses (or the businesses of their members). [R. 57 at pgs. 21, 23]. Thus, if they are unable to intervene in this matter, it is possible that Intervenor DBEs' ability to protect their own interests could be impaired given the nature of this case and surrounding circumstances. Accordingly, Intervenor DBEs have established a potential impairment of their ability to protect their interests.

### 4. Inadequate Representation by Current Parties

Finally, to demonstrate that the current parties do not adequately represent their interests, Intervenor DBEs "need show only that there is a *potential* for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (emphasis in original). Here, while Defendants have thus far litigated this case forcefully, the changing of the guard in Washington suggests that Defendants will likely take a far different stance regarding the constitutionality of the DBE program going forward. In fact, Intervenor DBEs point to Plaintiffs' "personal knowledge that DOT is . . . considering changing its litigating position" in this matter. [R. 70 at pg. 2–3 (citing R. 67 at pg. 4) (discussing parties' joint motion to stay, which is purportedly intended "to enable the Parties an adequate opportunity to determine whether any settlement . . . might be available in light of" Trump's new EOs and Defendants' "litigation position in this case")]. "An interest that is not

Page **12** of 13

represented at all is surely not adequately represented, and intervention in that case must be allowed." *Grubbs*, 870 F.2d at 347. Because Defendants are considering a change in position that would result in their not defending the constitutionality of the DBE program, it necessarily follows that Defendants cannot be said to adequately represent Intervenor DBEs in this matter.

## CONCLUSION

In conclusion, the Court finds that Intervenor DBEs need not have Article III standing to intervene in this matter. Moreover, the Court also finds that their motion to intervene is timely and meets all the requirements for intervention as of right under Rule 24, so the Court need not consider permissive intervention. Accordingly, having considered the issues and reviewed the pleadings, and being otherwise sufficiently advised,

**IT IS ORDERED** that Intervenor DBEs motion to intervene, [R. 57], is **GRANTED**.

Signed May 21, 2025.



Signed By:
*Edward B. Atkins*   EBA
**United States Magistrate Judge**