UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC & BAGSHAW TRUCKING INC., Plaintiffs, | |
| v. | **Case No. 3:23-cv-00072-GFVT-EBA** |
| U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, SHAILEN BHATT, & TODD JETER, Defendants. | |

**BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS, LOCAL GOVERNMENT AGENCIES, AND LOCAL GOVERNMENT OFFICIALS IN SUPPORT OF INTERVENORS' OPPOSITION TO JOINT MOTION FOR CONSENT ORDER**

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................3

    A. The Court Should Reject the Consent Order in Favor of a More Developed Record. ...................................................................................3

    B. The Court Should Reject the Proposed Consent Decree Because It Erodes Local Government's Self-Governance in Addressing Systemic Racial Exclusion. ......................................................................4

III. CONCLUSION....................................................................................................7

APPENDIX A – LIST OF *AMICI CURIAE*..........................................................10

i

# **TABLE OF AUTHORITIES**

**CASES**

*City of Richmond v. J.A. Croson Co.*,
   488 U.S. 469 (1989)......................................................................................... 4

*Pedreira v. Sunrise Children's Servs., Inc.*,
   802 F.3d 865 (6th Cir. 2015) ............................................................................ 3

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ............................................................................ 3

**RULES**

Fed. R. Civ. P. 24(a)(2) ......................................................................................... 4

**REGULATIONS**

49 C.F.R. § 26.67(a)(1) .......................................................................................... 5

49 C.F.R. § 26.67(d) ............................................................................................... 5

**STATUTES**

23 U.S.C. § 101 note ........................................................................................ 1, 6

49 U.S.C. § 47113 ................................................................................................. 6

**OTHER AUTHORITIES**

Aaron Aupperlee, *Pittsburgh sets minority employment goal for city construction projects*, TRIB LIVE (May 29, 2018) ............................................ 6

Jordana Rosenfeld, *Remembering Nate Smith, Pittsburgh's Prizefighting Labor Activist*, The Nation (May 1, 2018) ....................................................... 5

KDKA News, *Labor Rights Activist Nate Smith Passes Away*, CBS News (Apr. 1, 2018) ................................................................................................... 5

Margaret J. Krauss, *How Nate Smith Forced Pittsburgh To Confront Discrimination*, 90.5 WESA (Jan. 1, 2016) ..................................................... 5

U.S. Dep't of Transp, *2024 SS4A Full Award List*, Transportation.gov ................. 1

U.S. Dep't of Transp., *Disadvantaged Business Enterprise (DBE) Program*, Transportation.gov ........................................................................................... 6

U.S. Dep't of Transp., *DOT Competitive Grants Dashboard*, Transportation.gov ........................................................................................... 1

*Amici* are local governments, local agencies, and local government officials from across the country ("Local Government *Amici*"). Local Government *Amici* respectfully submit this brief in opposition to the parties' request to enter a consent order that will impose significant consequences to local jurisdictions and their ability to address historic discrimination in government contracting.

## I. INTRODUCTION

Each year, the U.S. Department of Transportation ("DOT") provides billions of dollars in funding for crucial transit, highway, and other transportation safety and infrastructure projects,[1] including to local jurisdictions. DOT and its subdivisions, such as the Federal Highway Administration ("FHWA"), fund projects in local jurisdictions that incorporate Disadvantaged Business Enterprise ("DBE") goals. *Amici* use DBE goals, which are authorized by Congress, *see, e.g.*, Infrastructure Investment and Jobs Act ("IIJA"), Pub. L. No. 117–58, § 11101(e)(3), 135 Stat. 429, 449 (2021) (codified at 23 U.S.C. § 101 note) (Nov. 15, 2021), to ensure inclusive contracting opportunities for historically marginalized business owners.

If entered, the proposed consent order will affect Local Government *Amici* and potentially every local jurisdiction that receives DOT funding, which includes hundreds, if not thousands, of local and regional entities.[2] In particular, the consent order purports to have the Court determine, on a scant record, that "the use of DBE contract goals in a jurisdiction, where any DBE in that jurisdiction was determined to be eligible based on a race- or sex-based presumption, violates the

---

[1] U.S. Dep't of Transp., *DOT Competitive Grants Dashboard*, Transportation.gov, https://perma.cc/MM22-PBCW.

[2] *See, e.g.*, U.S. Dep't of Transp, *2024 SS4A Full Award List*, Transportation.gov, https://perma.cc/PUX9-MLVH (identifying over 700 local and regional recipients of one FHWA grant in FY 2024).

1

equal protection component of the Due Process Clause of the Fifth Amendment," and that, therefore, DOT "may not approve any federal, state or local DOT-funded projects with DBE contract goals where any DBE in that jurisdiction was determined to be eligible based on a race- or sex-based presumption." Consent Order ¶¶ 11-12.

The sweeping effect of these two provisions in the proposed consent order would be to dismantle a critical federal inclusion program, created and repeatedly reauthorized by Congress and implemented by regulation, by denying funding to localities that seek to implement DBE goals. These provisions of the proposed consent order seek to impose political preferences that significantly impair local self-governance and that will hamper individual community development. They will unfairly prevent *Amici* and other local jurisdictions from utilizing statutory and regulatory DBE goals designed to fit the specific needs of their communities and projects. Local governments would be forced to make one of two choices: to give up transformative, long-established, and valued DBE goals that help their local communities, or to forfeit DOT funds for critical projects. And as Intervenors discuss, it is uncertain whether any choice is even available to local governments, because of the undefined and ambiguous criteria imposed by the consent order that may prevent a jurisdiction from complying with those criteria even if it wanted to. *See* Dkt. No. 93 at 21-22. Significantly, the parties ask the Court to take this unprecedented step without a developed record or clear findings of harm allegedly caused by the DBE programs.

Local Government *Amici* submit this brief to underscore the real-world value of the DBE program, and to assist the Court in evaluating the significant broader public consequences of a decision to approve the proposed consent order. The DBE program reflects long-standing federal and local commitments to inclusive development. DBE goals support small businesses, foster community trust, and encourage equitable participation in the transformative power of public

2

infrastructure investment. The proposed consent order would undermine these purposes, threaten the viability of ongoing projects, and may permanently impose the current administration's political policy without sufficient record support. The Court should not adopt the proposed consent order with such broad effect, permanently forcing local governments to adopt a particular federal policy by holding hostage all DOT funding, particularly at this stage of the proceeding.

## II. ARGUMENT

### A. The Court Should Reject the Consent Order in Favor of a More Developed Record.

Before approving a consent order, courts are obligated to conduct a careful inquiry to determine whether the proposed consent decree is "fair, adequate, and reasonable, as well as consistent with the public interest." *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 872 (6th Cir. 2015). The responsibility of courts to ensure these outcomes is especially critical where, as here, a proposed consent order would impose broad policy outcomes with far-reaching implications for non-parties, including local governments across the country like *Amici*. See *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). In particular, the impact of the proposed consent order is not limited to the participants in its drafting: if approved, it would provide a judicial stamp to DOT's policy objective to defund "any federal, state or *local* DOT-funded projects with DBE contract goals where any DBE in that jurisdiction was determined to be eligible based on a race- or sex-based presumption." Consent Order ¶ 12 (emphasis added). It thus aims to strip federal DOT funding from any local jurisdiction that seeks to continue to exercise its authority to remedy past discrimination through the Congressionally authorized DBE program.

In the absence of an adversarial process, the parties have produced no meaningful record to support findings on whether the proposed consent decree is fair or reasonable, particularly given its extraordinary effect on the DBE Intervenors and affected jurisdictions such as *Amici*, who were

3

excluded from the negotiation of the proposed consent order. Although the original parties have engaged in discovery, neither original party is currently defending the DBE program. The DBE Intervenors were permitted to intervene as a matter of right for multiple reasons, including because "the existing parties [did not] adequately represent" their interests. Fed. R. Civ. P. 24(a)(2); Mem. Opinion and Order on Intervenor DBEs' Mot. to Intervene, ECF No. 78 at 12. But those DBE Intervenors have not had an opportunity to engage in discovery or to thus develop their case.

The Court should not rush to accept and adopt an agreement between non-adversarial parties that has such far-reaching consequence and closes off development of a more complete factual record, with a full opportunity for participation by the Intervenors.

### B. The Court Should Reject the Proposed Consent Decree Because It Erodes Local Governments' Self-Governance in Addressing Systemic Racial Exclusion.

The Supreme Court has recognized that "a state or local subdivision (if delegated the authority from the State) has the authority to eradicate the effects of private discrimination within its own legislative jurisdiction." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 491–92 (1989). In fact, when equipped with evidence of discrimination and granted state authority, local governments are entitled to act to correct such disparities—especially in vital areas like public contracting and infrastructure development. When a city or local government is faced with evidence, even as "a 'passive participant' in a system of racial exclusion practiced by elements of the local construction industry," the Supreme Court held that "the city could take affirmative steps to dismantle such a system." *Id.* at 492. Furthermore, "[i]t is beyond dispute that any public entity, state or federal, has a compelling interest in assuring that public dollars, drawn from the tax contributions of all citizens, do not serve to finance the evil of private prejudice." *Id.*

Local governments thus have legal authority to take proactive steps to address systemic racial exclusion in their communities. *Amici*, like many other local jurisdictions and local

4

government officials, recognize the need and value that the DBE program brings to achieve that purpose. The DBE program in DOT-grant-funded work, like that performed by the Intervenor DBEs, is essential to promoting economic opportunity and ensuring fair access to federally funded infrastructure projects in local communities. DBE goals in DOT and FWHA grant-funded projects ensure that small businesses owned by "women, Black American, Hispanic American, Native American, Asian Pacific American, [and] Subcontinent Asian American," among others, can fairly compete for public infrastructure opportunities. *See* 49 C.F.R. § 26.67(a)(1). Moreover, the DBE program provides necessary tools to counteract systemic historical and ongoing exclusion in public contracting, permitting non-presumptive disadvantaged qualifications when appropriate. 49 C.F.R. § 26.67(d).

As one illustration of the import of DBE programs to local policy, in Pittsburgh, DBE goals have played an important role in historic equitable development even prior to the federal DBE programs. As far back as the 1960's, Pittsburgher Nate Smith recognized the need to combat racial disparity in the construction sector.[3] At the time, "ninety-eight percent of Pittsburgh's 30,000 union construction workers were white, preventing black laborers in Pittsburgh from sharing in the benefits of [Pittsburgh's] first construction boom." *Id.* Mr. Smith took matters into his own hands, organizing protests, training laborers, and ultimately working with Pittsburgh City leaders on the "Pittsburgh Plan," which established goals to include black workers and contractors in major infrastructure and construction projects. Although Pittsburgh still benefits from Mr. Smith's efforts, racial disparities in the construction industry still exist today.[4] Efforts to dismantle systemic

---

[3] *See* Jordana Rosenfeld, *Remembering Nate Smith, Pittsburgh's Prizefighting Labor Activist*, The Nation (May 1, 2018), https://perma.cc/H9BL-KR8T; *See* KDKA News, *Labor Rights Activist Nate Smith Passes Away*, CBS News (Apr. 1, 2018), https://perma.cc/N2M4-EG3D.

[4] *See* Margaret J. Krauss, *How Nate Smith Forced Pittsburgh To Confront Discrimination*, 90.5 WESA (Jan. 1, 2016), https://perma.cc/7FWT-JEDZ.

racial exclusion live on in programs like the DBE goals set forth in recent Congressional legislation. *See* IIJA, Pub. L. 117-58, 135 Stat. 429; *see generally* U.S. Dep't of Transp., *Disadvantaged Business Enterprise (DBE) Program*, Transportation.gov, https://perma.cc/X6FT-2NQS ("To assist small business formation and growth, Congress enacted DOT's DBE program in 1983 and reauthorized it in each subsequent surface and aviation authorization. The DOT DBE program was recently reauthorized by Congress on November 15, 2021 in the IIJA, Pub. L. 117–58, 135 Stat. 429, and is codified in 49 U.S.C. § 47113 for aviation-funded projects for aviation-funded projects."). Pittsburgh's use of DBE goals in construction projects have effectively promoted inclusion in infrastructure contracting and advanced its success in the region. However, evidence of unfair local racial disparity in construction projects are still present as Pittsburgh experiences another "boom" in construction.[5] The proposed resolution of this case would affirmatively bar Pittsburgh from continuing to use these effective remedial measures by denying it critical federal funding if it did so.

Pittsburgh's example demonstrates that the proposed consent order ignores the needs of the unique local governments. It instead trades local governments' inherent ability to self-govern and trades it in favor of permanently imposing the current Administration's policies through a coercive ban on funding. The inherent authority of local governments to implement contracting programs with DBE goals should not be curtailed by a judicially-blessed consent order, particularly one to which no local government is a party.

---

[5] Aaron Aupperlee, *Pittsburgh sets minority employment goal for city construction projects*, TRIB LIVE (May 29, 2018), https://perma.cc/2LB3-568A.

6

In sum, the proposed consent order in this case directly undermines Local Government *Amicis*' authority and compelling interest in addressing and affirmatively dismantling systems of racial and sex-based exclusion, and for that reason as well, should be rejected.

## III. CONCLUSION

For these reasons, and those articulated by the Intervenors, the Court should deny entry of the proposed consent order.

Dated: June 24, 2025

                                      KRYSIA KUBIAK, Esq.
                                      City Solicitor

                                      */s/ Julie E. Koren*
                                      Julie E. Koren (PA Bar No. 309642)*
                                      Associate City Solicitor
                                      CITY OF PITTSBURGH, DEPT. OF LAW
                                      313 City-County Building
                                      414 Grant Street

                                      * *Pro Hac Vice application filed separately*

                                      PUBLIC RIGHTS PROJECT

                                      */s/ Toby Merrill*
                                      Toby Merrill (MA Bar No. 601071)**
                                      Sharanya Mohan (CA Bar No. 350675)**

                                      PUBLIC RIGHTS PROJECT
                                      490 43rd Street, Unit #115
                                      Oakland, CA 94609
                                      (510) 738-6788
                                      toby@publicrightsproject.org
                                      sai@publicrightsproject.org

                                      ***Pro Hac Vice applications filed with this motion*

                                      *Counsel for Amici Curiae*

8

## **ADDITIONAL COUNSEL**

ROSALYN GUY-MCCORKLE
Allegheny County Solicitor
445 Fort Pitt Boulevard, Suite 300
Pittsburgh, PA 15219
*Attorney for Allegheny County,
    Pennsylvania*

EBONY M. THOMPSON
City Solicitor
Baltimore City Department of Law
100 North Holliday Street
Baltimore, MD 21202
*Attorney for the City of Baltimore, Maryland*

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago
121 North LaSalle Street, Room 600
Chicago, IL 60602
*Attorney for the City of Chicago, Illinois*

CHRISTIAN D. MENEFEE
Harris County Attorney
Harris County Attorney's Office
1019 Congress Street
Houston, TX 77002
*Attorney for Harris County, Texas*

MICHAEL HAAS
City Attorney
210 Martin Luther King Jr. Boulevard,
    Room 401
Madison, WI 53703
*Attorney for the City of Madison, Wisconsin*

KRISTYN ANDERSON
City Attorney
City Hall, Room 210
350 South Fifth Street
Minneapolis, MN 55415
*Attorney for the City of Minneapolis,
    Minnesota*

DOUGLAS T. SLOAN
City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa Monica,
    California*

PETE RAMELS
General Counsel and Chief Compliance
    Officer
WSBA Number 21120
2711 Alaskan Way
P.O. Box 1209
Seattle, WA 98121
*Counsel for Port of Seattle, Washington*

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 West Kellogg Boulevard
St. Paul, MN 55102
*Attorney for the City of St. Paul, Minnesota*

MIKE RANKIN
City Attorney
PO Box 27210
Tucson, AZ 85726-7210
*Attorney for the City of Tucson, Arizona*

## **APPENDIX A – LIST OF *AMICI CURIAE***

Allegheny County, Pennsylvania

City of Austin, Texas

City of Baltimore, Maryland

Robin Wilt
*Councilmember, Township of Brighton, New York*

Sarah Leonardi
*School Board Member, Broward County, Florida*

City of Chicago, Illinois

Bryan "Bubba" Fish
*Councilmember, City of Culver, California*

David Stout
*Commissioner, El Paso County, Texas*

Harris County, Texas

City of Evanston, Illinois

City of Madison, Wisconsin

City of Minneapolis, Minnesota

Brenda Gadd
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

John Clark
*Mayor, Town of Ridgway, Colorado*

City of Santa Monica, California

Port of Seattle, Washington

City of St. Paul, Minnesota

City of Tucson, Arizona

City of Wauwatosa, Wisconsin

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2025, the foregoing was mailed for physical filing with the Clerk of the Court via FedEx. Pursuant to Fed. R. Civ. P. 5(b) and each party's written consent for electronic service, I also certify that copies were served by electronic mail the following counsel representing the parties in this case.

**PLAINTIFFS' COUNSEL**

Cara Tolliver
Daniel P. Lennington
Richard M. Esenberg
WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC
330 E. Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Email: cara@will-law.org
       dan@will-law.org
       rick@will-law.org

Gregory Austin Healey
LYNCH, COX, GILMAN & GOODMAN PSC
500 W. Jefferson Street, Suite 2100
Louisville, KY 40202
Email: ghealey@lynchcox.com

Jason Michael Nemes
COMMONWEALTH COUNSEL GROUP, PLLC
10343 Linn Station Road
Louisville, KY 40223
Email: jason@ccgattorneys.com

**DEFENDANTS' COUNSEL**

Andrew Braniff
Robert Rich
David Reese
Jillian Moo-Young
Katelyn Davis
Sosun Bae
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave, NW
4-CON Washington, DC 20530
Email: andrew.braniff@usdoj.gov
       robert.rich@usdoj.gov
       david.reese@usdoj.gov
       jillian.moo-young@usdoj.gov
       katelyn.davis@usdoj.gov
       sosun.bae@usdoj.gov

Charles Ethan Enloe, GOV
U.S. DEPARTMENT OF TRANSPORTATION
1200 New Jersey Avenue SE
Washington, DC 20590
Email: charles.enloe@dot.gov

**INTERVENOR-DEFENDANTS' COUNSEL**

Brooke Menschel
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Email: bmenschel@democracyforward.org

Sarah C. Von Der Lippe
LAW OFFICE OF SARAH C. VON DER LIPPE
1104 E. Capital Street NE
Washington, DC 20002
Email: scvdl@aol.com

Douglas L. McSwain
WYATT, TARRANT & COMBS LLP
Lexington 250 W. Main Street, Suite 1600
Lexington, KY 40507
Email: dmcswain@wyattfirm.com


Dated: June 24, 2025

_/s/ Toby Merrill_
Toby Merrill