UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MID-AMERICA MILLING COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. 3:23-cv-00072-GFVT |
| v. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

*** *** *** ***

This matter is before the Court on a Motion to Intervene filed by proposed intervenor plaintiffs Central Seal Company and Charbon Contracting, LLC. [R. 53.] They seek to intervene as of right pursuant Federal Rule of Civil Procedure 24(a) or, alternatively, by permission pursuant to Rule 24(b). *Id*. They also move for the Court to modify the scope of its October 31, 2024, injunctive order, [R. 44; R. 50], to "extend to bids involving Intervenor Plaintiffs." [R. 53 at 1.] For the reasons that follow, the Court will **DENY** the Proposed Intervenors' motion.

**I**

This case was originally filed on October 26, 2023. [R. 1.] The Plaintiffs challenged the use of race- and gender- based presumptions that apply to United States Department of Transportation contracts in connection with the Disadvantaged Enterprise Program, seeking a declaratory judgment. As relief, they seek to permanently enjoin the Defendants from applying

these race- and gender-based classifications in the federal DBE program. *Id*. On September 23, 2024, this Court considered and ultimately granted the Plaintiffs' request for a preliminary injunction, reasoning that the "race and gender classifications" used by the Defendants in connection with the DBE program "violate the Constitution's guarantee of equal protection." [R. 44.] The background of this case, the DBE program and its related statutory and regulatory scheme, and the reasoning for this Court granting a preliminary injunction are explained more fully in that Opinion.

Shortly following that order, the Defendants and the Plaintiffs came together to coordinate a plan for complying with this Court's order. [R. 46 at 4-5.] This plan involved the Plaintiffs identifying for the Defendants the contracts they wished to bid upon, at which point the Defendants would work with state and local officials to remove any federal DBE goals from said contracts. *Id*. However, this process swiftly broke down and on October 10, 2024, the Plaintiffs brought a motion requesting that this Court further clarify the geographical scope of its injunction. [R. 46.] On October 31, 2024, this Court did so, making clear that it was enjoining the Defendants from applying federal DBE goals to any contracts anywhere *on which the Defendants bid*. [R. 50.] This clarification ensured that the Plaintiffs would receive the full relief this Court ordered, while making clear that the Court was only applying its power to the parties that stood before it.[1]  *Id*. at 4-6.

---

[1] The Supreme Court has since decided *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (June 27, 2025), wherein it determined that universal injunctions step outside the bounds of federal courts' authority. Instead, courts may – as the Court did here – only "administer complete relief between the parties." This understanding of equitable relief, amply supported by the historical record as made clear in *CASA*, only furthers the Court's ultimate conclusion that the Proposed Intervenors were untimely in asserting their rights in this case. And while *CASA* suggests channeling similar requests for broad equitable relief into other mechanisms, such as class actions, it plainly contemplates that those alternative mechanisms will continue to follow established lines of jurisprudence – established lines that answer such

On January 1, 2025, more than a year after this case began, over three months after the Court first issued its preliminary injunction order, two months after the Court entered its clarification order, and almost a month after the Court entered a scheduling order in this case, [R. 52], the Proposed Intervenors filed their motion to intervene. [R. 53.] They contend that they are situated almost identically to the Plaintiffs in this case – like the Plaintiffs they are non-DBE construction contractors that bid on governmental projects, and, like the Plaintiffs, they have lost out on contracts to DBE competitors on account of being forced to "compete in a race-based system that prejudices them." [R. 53 at 2-5.] In their view they are entitled to intervene as of right in this action. *Id*. at 5-6. They contend that their intervention is timely, that they have a substantial legal interest in the case, that intervention is necessary to protect their interests, and that the existing Plaintiffs do not adequately represent the Proposed Intervenors. *Id*. at 7-11. In the alternative, they ask that the Court allow permissive intervention on their part because their motion is timely and shares "a multitude of common questions of law or facts." *Id*. at 12. Should they be permitted to intervene, either as of right or discretionarily, they argue that such an intervention is a changed circumstance warranting a modification of this Court's preliminary injunction to sweep them within its ambit. *Id*. at 12-14. Thus, they also ask that this Court "expand the scope of its preliminary injunction to apply to all contracts impacted by DBE goals upon which Central Seal and Charbon bid." *Id*. at 14.

The Defendants do not oppose the Proposed Intervenors Motion to Intervene, [R. 56], but the Plaintiffs do. [R. 55.] In the Plaintiffs' view, the Proposed Intervenors are untimely in seeking intervention and "their participation in this lawsuit will add nothing except delay." [R.

---

questions as when parties may properly intervene and whether they have been dilatory in doing so.

55 at 3.] Furthermore, the Plaintiffs argue that they can adequately represent the Proposed Intervenors' interests as they move toward a permanent injunction. *Id*. at 6-8. Finally, they contend that permissive intervention should also be denied in order to allow the parties to move toward a timely resolution and avoid other similar businesses piling into this case en masse. *Id*. at 8-9.

After the briefing on this motion concluded, the existing parties filed a joint motion to stay the case, as they were working towards a final resolution. [R. 69.] The Plaintiffs and the Government have since filed a Joint Motion for Entry of Consent Order, seeking that the DBE program be declared entirely unconstitutional. [R. 82.] The DBE Intervenors, parties to the case after Magistrate Judge Atkins' Order [R 78], declared their intent to oppose the proposed consent decree, which they have now done. [R. 83; R. 91.] In light of the potentially pending resolution of this matter, the Court granted the proposed joint motion to stay the case. [R. 85.] The pending motion to intervene, [R. 53], was taken under advisement by the Court at that time.

## II

### A

Federal Rule of Civil Procedure 24(a)(2) provides that a non-party may intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The standard within the Sixth Circuit for determining whether intervention as a matter of right is proper was enunciated in *Jansen v. City of Cincinnati*:

> ...the proposed intervenors [must] demonstrate that the following four criteria have been met: (1) the motion to intervene is timely; (2) the proposed intervenors have a significant legal interest in the subject matter of the pending litigation; (3) the disposition of the

4

>action may impair or impede the proposed intervenors' ability to protect their legal interest; and (4) the parties to the litigation cannot adequately protect the proposed intervenors' interest.

904 F.2d 336, 340 (6th Cir. 1990) (citing *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984)); *see also Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999); Fed. R. Civ. P. 24(a). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). The Plaintiffs contest only the first and last factors, presumably conceding that the Proposed Intervenors have satisfied the others. [R. 55 at 4-8.]

**1**

First, the Court considers whether the Proposed Intervenors' motion is timely. The Sixth Circuit directs district courts to consider five factors in determining whether intervention was timely:

>1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*In re Auto. Parts Antitrust Litig.*, 33 F.4th 894, 900 (6th Cir. 2022). The Proposed Intervenors argue that their motion is timely under these factors because they "seek leave to intervene within weeks of becoming apprised of how USDOT intended to implement and enforce the Court's injunction with respect to KYTC." [R. 53 at 7.] They consider this case to involve "unusual circumstances" because "before KYTC issued its guidance memorandum, Central Seal and Charbon could not have known whether Defendants would pause enforcement of the DBE

5

program entirely or make some other changes to the program that may have nullified any need to file suit." *Id*. at 7-8.  Finally, the Proposed Intervenors suggest little prejudice will occur as a result of their intervention.  *Id*. at 8.  By contrast, the Plaintiffs emphasize the late hour at which the Proposed Intervenors seek to join this action.  They note that this lawsuit was filed well over a year ago and has already involved significant briefing and resolution of issues related to this Court's preliminary injunction.  [R. 55 at 2.]  They also point to this Court's scheduling order, [R. 52], as further evidence that the Proposed Intervenors' "participation in this lawsuit will add nothing except delay." [R. 55 at 3, 4-5.]  Even accepting the Proposed Intervenors' characterization of the timeline of this case, the Plaintiffs point out that the Proposed Intervenors still waited almost three months to intervene following the DOT's memorandum regarding implementation of this Court's preliminary injunction.  *Id*. at 5.

a

Turning to the first subfactor, while not an immensely relevant concern, the Court notes that the Proposed Intervenors waited for over a year to file their motion from the inception of this case.  More importantly, when considering the point to which the suit has progressed, courts consider "what steps occurred along the litigation continuum" between the filing of the complaint and the motion to intervene.  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000).  The Proposed Intervenors take pains to note that discovery has not yet closed and that the existence of a scheduling order does not render intervention "*de facto* untimely." [R. 66 at 2.] True, but this overlooks the substantial progress this case has already made.  A preliminary injunction was sought in this case on December 15, 2023, over a year before the Proposed Intervenors filed their own motion to intervene.  [R. 27.]  Briefing for that was completed in February 2024 and this Court held a hearing on the matter in April 2024.  [R. 43.]  The Court

6

then issued its decision in September 2024, which it clarified to a limited degree in October 2024. [R. 44; R. 50.] At no point along this continuum did the Proposed Intervenors seek to intervene. Instead, they waited until after this Court entered a scheduling order, an order intended to move this case towards its final resolution, to finally chime in. With a preliminary injunction entered, discovery begun, and several of the existing parties already contemplating settlement, [R. 69 at 2; R. 82], the Court thinks this case has progressed substantially.

b

The Sixth Circuit has acknowledged that its approach to the second subfactor, the purpose for which intervention is sought, has been "somewhat inconsistent." *In re Auto. Parts Antitrust Litig.*, 33 F.4th at 902. Sometimes courts have focused on "the legitimacy of the intervenors' purported interest" and other times have focused on "whether the would-be intervenors acted promptly in light of their stated purposes." *Id*. (citing *Kirsch v. Dean*, 733 F. App'x 268, 275–76 (6th Cir. 2018)). The Court opts to view this case through the second lens as it better reflects the concerns addressed by the timeliness factor overall.

The Proposed Intervenors ostensible purpose is to also challenge the DBE program overall. [R. 53 at 5.] However, they also seek to modify this Court's preliminary injunction to include themselves. *Id*. The Proposed Intervenors are companies that have "have lost bids on projects let by KYTC, as well as other state and federal agencies, solely as a result of these agencies' implementation of USDOT's unconstitutional DBE program regulations," for years prior to their motion to intervene. *Id*. at 3-5. In other words, they have been aware of the DBE program for years prior to their attempted intervention, including when this Court was conducting its preliminary injunction proceedings. The Proposed Intervenors emphasize that they "could not have known whether Defendants would pause enforcement of the DBE program

entirely or make some other changes to the program that may have nullified any need to file suit" or otherwise have predicted how this Court would structure its preliminary injunction. *Id*. at 7-8.

The Court acknowledges that the proper scope of preliminary injunctions has been up-in-the-air in recent years, with some courts providing broad, nationwide relief and others, like this Court, cabining relief to the parties before it. [*See* R. 50 at 4-6.] And perhaps it was initially unknowable how the Defendants would attempt to comply with this Court's order, as the Proposed Intervenors suggest. What is less clear is how this militates against earlier intervention. The Proposed Intervenors stated purpose is to challenge the DBE program overall and to essentially be awarded a preliminary injunction by modifying the one this Court has already issued. In pursuit of that end, they appear to have sat on the fence waiting to see if they would have to diligently pursue their own rights or if they could simply free ride on litigation carried out by others. Waiting for over a year, at least, while presumably being injured by ongoing Constitutional violations on the hope that other parties will do the work instead is not acting promptly in light of the Proposed Intervenors' stated purpose.

c

The Court now assesses the third timeliness subfactor, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case. As with the prior factor, this does not bode well for the Proposed Intervenors. The Sixth Circuit has repeatedly criticized the "wait-and-see" approach adopted by the Proposed Intervenors. *Blount-Hill v. Zelman*, 636 F.3d 278, 286 (6th Cir. 2011) (Proposed Intervenors' failed to act promptly despite actual or constructive knowledge of their interest in the litigation and this failure weighed heavily against the timeliness of their application to intervene); *United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001) ("An entity that is aware that its interests may

8

be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene"); *Stotts v. Memphis Fire Dep't,* 679 F.2d 579, 584 & n. 3 (6th Cir. 1982) (applicants "should have attempted to intervene when they first became aware of the action, rather than adopting a 'wait-and-see' approach").

The Proposed Intervenors' motion does not make clear the earliest point at which they heard about this case. They have, naturally, focused on this Court's preliminary injunction and its effect on their interests, but the Plaintiffs present compelling arguments as to why the Proposed Intervenors likely knew, or at least should have known, about this case much earlier. The Plaintiffs point out that this case has been in progress for quite some time, since October 2023, and has been "widely reported in national media outlets" such as the Washington Post. [R. 55 at 2.] In particular, the Plaintiffs draw the Court's attention to an article from as early as December 18, 2023, reporting on this lawsuit. *Id*. at 2 n.1. And the Proposed Intervenors' own reasons for waiting to intervene suggest an awareness of this case before this Court's preliminary injunction (and the ensuing DOT implementation memo) were issued. [R. 53 at 7-8.] Furthermore, the Court's clarification of its preliminary injunction also does not suggest that the Proposed Intervenors' interest in this case was only implicated later, because that clarification dealt with the geographic scope of the Court's prior order and did not contemplate sweeping in non-parties. [R. 50.] At minimum then, the instant motion to intervene came after many months of delay by the Proposed Intervenors, even after they likely knew, or at least should have known, about this action.

**d**

The Court next turns to whether there is any prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have

9

known of their interest in the case. Courts "examine the prejudice caused by the delay in intervention, rather than prejudice caused by the intervention itself." *In re Auto. Parts Antitrust Litig.*, 33 F.4th at 905 (citing *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013)). The Plaintiffs emphasize that discovery is well underway, with written discovery to be completed by February 10 and fact discovery to be completed by April 10. [R. 55 at 5-6; R. 52.] And they state that "[h]ad Proposed Intervenors contacted the parties on October 8, perhaps everyone could have worked out a plan so that the proceedings would not have been delayed." [R. 55 at 5.] The Proposed Intervenors argue that granting their motion "will not significantly delay any of the events set forth in the scheduling order" and will result in no undue prejudice to the parties. [R. 66 at 3-4.] The Plaintiffs and the Defendants have now filed a joint motion to stay this case for 90 days, [R. 69], which the Proposed Intervenors take to suggest that "Plaintiffs' willingness to stay this action for 90 days proves beyond doubt that they will not be prejudiced by altering any discovery or other deadlines towards resolution of this case." [R. 73 at 3.] The Plaintiffs and the Defendants have now also filed a Joint Motion for Extension of Time as to all scheduling deadlines "by the period of time running from the day the Parties' Joint Motion to Stay was filed on February 10, 2025, *see* ECF 69, to the day that motion is decided." [R. 75 at 2.] The Court has since granted both of those motions and the case remains stayed. [R. 85.]

      Based on the Joint Motion to Stay and the Joint Motion for Extension of Time, and the Court's granting of those motions, it seems plain that the Plaintiffs' arguments about prejudice in their Response, [R 55], are misplaced (or were at least premature). The very fact that the existing parties agreed to such potential delays establishes that allowing the Proposed Intervenors to intervene would likely cause very little undue delay, though at this point it may very well

distract from the pending Joint Motion for Entry of Consent Order which poses the possibility of a final resolution of this case.

Nevertheless, considering all of the timeliness subfactors paints a clear picture of delay on the part of the Proposed Intervenors. This case has been progressing for over a year, with significant briefing on and resolution of a preliminary injunction motion. This was followed by a scheduling order which laid out a clear path forward for this case. At no point during the resolution of that preliminary injunction motion, or even shortly thereafter, did the Proposed Intervenors seek to intervene. Nor did they act promptly in light of their alleged purpose in challenging the DBE program, and presumably obtaining an injunction, as they took no prior actions to support that purpose despite their purported ongoing injury. The backdrop of uncertainty as to how this Court may structure an injunction (or whether it would issue one at all) would seemingly counsel early intervention, not further fence-sitting. And the Proposed Intervenors knew, or should have known, about this action many months prior to when the ultimately did decide to intervene. The Proposed Intervenors have therefore failed to demonstrate all four criteria governing intervention as of right. *See Jansen,* 904 F.2d at 340. Intervention under Rule 24(a) is thus not appropriate in this case. *See Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). The Court need not address the remaining factors. *Id.* ("The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied.")

2

Nevertheless, in the interest of thoroughness the Court will briefly consider the other contested factor, whether the parties to the litigation can adequately protect the proposed intervenors' interests. The Sixth Circuit has held that "Rule [24(a)] is satisfied if the applicant

shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Michigan*, 41 F.4th 767, 774 (6th Cir. 2022) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

The Proposed Intervenors suggest that the existing Plaintiffs will not adequately represent their interests because "there is no reason for MAMCO and Bagshaw to expend effort asking the Court to extend the scope of its injunction further" and because, even though "their interests are generally aligned, Central Seal and Charbon bid on different projects than MAMCO and Bagshaw." [R. 53 at 11.] In retort the Plaintiffs emphasize that they "asked for a nationwide preliminary injunction in the complaint, in their motion for a preliminary injunction, re-affirmed their request for a nationwide preliminary injunction in their motion for clarification, and will continue to seek a nationwide permanent injunction at final judgment." [R. 55 at 7.] Furthermore, they suggest that it is unclear why it would matter what projects the Proposed Intervenors bid on differently than those bid on by the Plaintiffs. *Id.*

Given the minimal showing required under this factor, the Court thinks that the Proposed Intervenors' interests are sufficiently different from the Plaintiffs'. As the Proposed Intervenors point out, regardless of the Plaintiffs' initial approach to the preliminary injunction, the Plaintiffs are covered by this Court's order and the Proposed Intervenors are not. [R. 66 at 5.] The Plaintiffs thus have no incentive, at least in the interim, to seek modification of the injunction to apply to the Proposed Intervenors (nor would the Court contemplate such a solution if the Proposed Intervenors remained as non-parties). The Proposed Intervenors on the other hand actively seek to modify this Court's injunction so that it will apply to them. [R. 53 at 12-14.]

12

Additionally, the Proposed Intervenors eloquently describe the practical effects of how the Defendants have chosen to comply with the injunction and how such implementation drives a further wedge between the interests of the Proposed Intervenors and the Plaintiffs. [R. 66 at 6.] As the Proposed Intervenors describe the situation, the lifting of DBE goals on specific contracts bid upon by the Plaintiffs shifts a heavier burden on other contracts in order to meet overall DBE goals. *Id*. Thus, the fact that the Proposed Intervenors and the Plaintiffs frequently bid on different contracts prevents the Proposed Intervenors from even tangentially benefiting from this Court's injunction – and arguably even being harmed by it. It therefore does not seem that the Plaintiffs, despite their sharing of the same ultimate goal with the Proposed Intervenors, can adequately represent the Proposed Intervenors' interests entirely.

## B

The Proposed Intervenors also seek permissive intervention. Rule 24(b) provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1). To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005*)* (citing *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). Once the proposed intervenor establishes these two requirements, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*. Allowing permissive intervention is within the sound discretion of the trial judge. *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991). In fact, "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to

allow intervention." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d Ed. 2022).

As the Proposed Intervenors' motion is not timely, permissive intervention is not appropriate. *See Blount-Hill*, 636 F.3d at 287. However, other concerns also counsel caution on the part of the Court. If intervention were allowed at this point, it would present a difficult line drawing problem, along with all the "potential strains on judicial economy and the inevitable delays, confusion, and prejudice to the existing parties that would result from unrestricted intervention." *See Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 425 (E.D. Ky. 2015). In *Ark Encounter*, this Court was concerned with the possibility of virtually any Kentucky taxpayer intervening in the case. *Id*. As the Plaintiffs point out, the same concern is presented here with any business that similarly bids on federal roadbuilding contracts. [R. 55 at 8-9.] Rather than enabling a prompt resolution of this case, allowing potential intervenors to pile into this case at an already late hour would distract this Court from reaching core issues and potentially providing broad relief. It is hard to see how such interventions would promote judicial efficiency or avoid prejudice to the parties that have already litigated this case extensively.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Proposed Intervenor Plaintiffs' Motion to Intervene **[R. 53]** is **DENIED**.

This the 18th day of July, 2025.

Gregory F. Van Tatenhove
United States District Judge

14