UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| MID-AMERICA MILLING COMPANY, LLC, et al., | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) Case No. 3:23-cv-00072-GFVT-EBA ) ) |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., | ) ) ) |
| *Defendants*. | ) ) |

## INTERVENOR DBEs' REPLY IN SUPPORT OF MOTION TO DISMISS

Two years after Plaintiffs sued the Department of Transportation ("DOT" or "Government") to enjoin the "race and gender-based" presumption in the Disadvantaged Business Enterprise ("DBE") program, DOT eliminated those very presumptions through a sweeping Interim Final Rule ("IFR"). The Government concedes as much, "acknowledg[ing] that the IFR gives Plaintiffs much of the relief" they sought. ECF No. 133, at 2. Intervenor DBEs now ask the Court to dismiss the case for one simple reason: The Court cannot provide the requested injunction—or indeed "any effectual relief" at all, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)—because the challenged race- and gender-based presumptions no longer exist.

Plaintiffs and the Government ("Original Parties") ask the Court to ignore this reality—as well as the Government's concession that a case is ordinarily moot if the challenged rule is repealed, ECF No. 133, at 2—and allow them to continue litigating based on a litany of unsupported speculations: Some future administration *could* roll back the regulations. Some

1

litigants *could* one day challenge the IFR. The IFR *could* be stayed or vacated. And so on. But "[t]he mootness inquiry does not require [the Court] to layer hypotheticals on top of possibilities on top of what-ifs." *Gun Owners of Am., Inc. v. United States Dep't of Just.*, 157 F.4th 834, 840 (6th Cir. 2025).

The Original Parties are silent about, and therefore waive, several key issues raised by Intervenor DBEs. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (noting that arguments are waived if they are not briefed); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation modified). For example, the Original Parties do not contest the fact that no relief is left for the Court to provide, nor do they argue that the capable of repetition yet evading review exception should apply. They also fail to address key elements of the voluntary cessation doctrine, including the presumption that a government will not resume challenged conduct. This is especially notable in the face of the Government's repeated and emphatic position that the DBE program—as it previously existed—violated the Constitution and now ceases to exist. And the Original Parties do not even mount a defense to Intervenor DBEs' argument that the Court should vacate the preliminary injunction. The Court should adopt the Intervenor DBEs' unchallenged positions on these points.

In this litigation, Plaintiffs asked the Court to prevent harm they would allegedly suffer if the federal government continued to enforce race- and gender-based presumptions in the DBE Program. Without prompting by the Court, the Government took it a step further, striking those presumptions from the DBE Program entirely. But the Original Parties are not satisfied. They now

ask the Court to peer into a crystal ball, predict what future administrations or parties may or may not do, and rule in their favor regardless. Intervenor DBEs respectfully request that the Court decline this invitation and instead grant their motion to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(h)(3) and vacate the preliminary injunction pursuant to Rule 60(b)(5) or (b)(6).

## ARGUMENT

### I. The Voluntary Cessation Exception Does Not Apply

This case is practically and legally moot. Neither of the Original Parties attempts to address the hallmark of mootness, namely whether any relief will have a "practical effect" on the parties before the Court. *See Ohio v. U.S. Env't Prot. Agency*, 969 F.3d 306, 308 (6th Cir. 2020); *see generally* ECF Nos. 132; 133. Instead, the Original Parties attempt to shoehorn imagined hypotheticals into established doctrine, grossly misapplying the two-pronged test for voluntary cessation that simply does not save this case from mootness.

For their part, Plaintiffs do not point to any evidence to suggest that the IFR may be reversed, as required for the exception to apply, and they ignore the legal presumption that the government will not resume the challenged conduct. Rather than addressing these baseline requirements, Plaintiffs misconstrue case law and speculate on how the IFR could conceivably be repealed and how future administrations might govern. ECF No. 132, at 5-7. Similarly, the Government does not even invoke voluntary cessation, but only vaguely allude to broad speculations about potential future litigation. ECF No. 133, at 2 (noting that it is "possible" that "perhaps" Intervenor DBEs, or some other party, may take action that "could lead" to a specific "potential outcome"); *see also* ECF No. 132, at 6 (acknowledging that "[n]o one even sued over the IFR," including Intervenor DBEs).

3

   A.  *Hypothetical future actions do not trigger the voluntary cessation exception*

The Plaintiffs acknowledge, but profoundly misapply, the voluntary cessation test. They rely almost exclusively on *Lackey v. Stinnie*, a Supreme Court case that never considered whether the underlying dispute was moot. *See* ECF No. 132, at 5-6. Instead, *Lackey*, 604 U.S. 192 (2025), concerned whether a putative class of drivers who obtained a preliminary injunction against a state statute were prevailing parties for the purposes of an attorney's fees award where the statute was repealed, and the parties affirmatively agreed to dismiss the case as moot. *Id.* at 195-197. In rejecting the plaintiff class's contention that the government might resume the challenged conduct, the Supreme Court explained, in *dicta*, that voluntary cessation doctrine would protect against action by the government to strategically moot a case in an effort to avoid a fees award. *Id.* at 204. There, like here, "external events … moot[ed] the action and prevent the court from conclusively adjudicating the claim." *Id.* at 207.

Plaintiffs treat the abstract possibility that some administration may, someday, somehow, reverse the IFR as evidence that there is a reasonable expectation that the complained-of conduct will recur, and argue that thus the voluntary cessation exception applies. But this Circuit has confirmed that "the theoretical possibility of reversion" to an allegedly unconstitutional policy "is simply not sufficient" to trigger this mootness exception. *Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 328 (6th Cir. 2021). "[T]he mere possibility that the government *could* revert to a challenged practice" does not amount to evidence of flip flopping or altered conduct that gives rise to the voluntary cessation mootness exception. *Id*. (emphasis original). Meanwhile, Plaintiffs ask the Court to ignore evidence that suggests the challenged race- and gender-based presumption will in fact *not* be reinstated in the future. This administration has repeatedly and publicly opposed the race- and sex-based presumptions, including through filings before this Court and in a letter

4

notifying Congress that the Government interprets the presumptions to be unconstitutional. *See* ECF Nos. 122-1; 129 at 13. The Court should always presume that the government will not resume the challenged conduct, *Davis v. Coletrain Twnsp., Ohio*, 51 F.4th 174-75 (6th Cir. 2022), particularly in situations where, as here, the change was "formally promulgated." *Thomas*, 996 F.3d at 325. And the IFR itself mandates that certifying agencies unwind much of the infrastructure used to implement the presumption, which will require new guidance, staff training, and other changes that cannot easily be reversed. *See, e.g.*, IFR II(C)(8)-(9), (F)(12). By contrast, Plaintiffs do not point to any evidence that the Government, now or in the future, would change this policy. The Sixth Circuit has recognized that this type of situation—involving extensive changes amounting to "completely overhauling" a particular policy, failing to defend the challenged policy, and publicly disavowing the preexisting policy—demonstrates there is "simply no indication" that the government will repeal the changes. *Id*. at 329.

Just last year, this Circuit firmly rejected the type of "ever-possible" hypotheticals that form the bulk of Plaintiffs' argument, noting that they are little more than "speculative contingencies" that do not prevent mootness. *Gun Owners,* 157 F.4th at 839-40. A future administration can "*always*" move in another direction, and "avoiding mootness today to resolve a later dispute that might not even manifest in the same way" would "not honor" the court's duty to diligently monitor case-and-controversy requirements. *Id*. If Plaintiffs have their way, courts would never be able to dismiss regulatory or statutory challenges as moot because of the "mere possibility" that some future legislative or executive body may change course. Litigation would stretch out indefinitely, and cases would be completely disconnected from the actual harms and from materially changing circumstances, on the ground. The exception "would envelop the rule," obviating the entire doctrine of mootness. *Id*. at 841. The law simply does not allow this result.

B.  *Potential future litigation also does not trigger the voluntary cessation exception*

The Government's effort to save the case from mootness is even more cursory, limited to one paragraph that concedes the IFR provides the Plaintiffs with relief and acknowledges that cases, such as this one, where "an agency[] repeal[s] a challenged rule" are ordinarily moot. ECF No. 133, at 2. Nonetheless, the Government asks the Court to avoid the foreseeable conclusion because of baseless speculation that they frame as "unique circumstances": According to Defendants, it is "entirely possible" that the IFR *could* be challenged in litigation; those parties *could* be Intervenor DBEs; and that *could* lead to the IFR being stayed or vacated. *Id*. The "unique circumstances" the Government conjures are not unique at all. Instead, potential future policy changes—whether prompted by litigation, elections, or shifted priorities—are the very type of "speculative contingencies" that "do not prevent mootness." *Gun Owners*, 157 F.4th at 834.

The Government as much as concedes the point by relying exclusively on cherry-picked language from *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020). There, like here, "as a practical matter the [defendants] ha[d] already provided the [plaintiffs]" the relief they sought "by formally repealing the [challenged rule] and then replacing it with another," and thus an injunction "would lack any practical effect upon the rights asserted." *Id.* at 308. The Circuit emphasized that a case does not "remain live" merely because "the challenged conduct might recur at any time in the future, no matter how distant" because what the court "cannot foresee, [it] cannot reasonably expect." *Id.* at 310. But in the limited circumstances at issue there, where 15 existing cases, including one brought by the plaintiffs themselves, challenged the repeal of the originally challenged rule and a concrete threat loomed that a single nationwide order may lift the repeal and reinstate the challenged rule, it was foreseeable that the government would in fact resume the allegedly unlawful conduct. *Id*. That is markedly different from the facts at issue here. Indeed, the

6

Circuit in *Ohio* rejected the plaintiffs' effort to use the court as a bludgeon to beat down all potential eventualities:

> During the 1930s, Winston Churchill was asked what Britain should do if Stanley Baldwin—then Lord President of the Privy Council, and a notorious advocate of appeasement—were to die in office. "Embalm, bury, and cremate," Churchill answered. "Take no chances!" The plaintiff States advocate a similar tack for the "Clean Water Rule" here. Promulgated in 2015, the EPA and the Army Corps of Engineers ("the Agencies") have since repealed the Rule, and more recently have replaced it with another. Yet the States now appeal the district court's refusal to enjoin it as well. We dismiss the appeal as moot.

*Ohio*, 969 F.3d at 307.

Keeping this case alive solely because some party, somewhere, may sue, sometime, is asking the Court to foresee the unforeseeable, and is precisely the type of speculation that has no practical effect and that this Circuit rejects.

    C.   *Regulatory changes are sufficient to moot a case*

Plaintiffs' argument that this case is not moot as the regulatory changes did not reach the underlying statutes, ECF No. 132, at 6, is a red herring that distracts from the question at the heart of mootness. Mootness is a focused, precise inquiry: once the requested relief no longer has a "real impact" on the parties' legal interest, the issue is no longer live. *Thompson v. DeWine*, 7 F.4th 521, 523 (6th Cir. 2021). Plaintiffs point to no case law to suggest that the general existence of the federal statutes that are no longer enforced is sufficient to support a live controversy. Instead, they now point to the statutes as the source of their alleged injuries, without addressing that their original complaint specifies that regulations, such as 49 C.F.R. § 26.5 and 13 C.F.R. §§ 124.103-104, "impose [the allegedly] unconstitutional race and gender classifications" that they challenged, and those regulations have since been removed and replaced. *See* ECF No. 1 at ¶ 56. The sole injury Plaintiffs now claim stems from the statute is the same specter of a future harm, where, because intervenors "vigorously defend" the DBE program's constitutionality today, "there is no

7

reason" that a future administration may not do the same. *See* ECF No. 132, at 7. This speculative harm fails for all the reasons discussed *supra* in Section A-B.

Plaintiffs also downplay the IFR's rewriting of the regulatory scheme as "superficial," a notable reversal from their complaint, where they devoted extensive space asking the Court to overturn particular regulations that they argued "controlled" the then-existing DBE program. ECF No. 1 at ¶ 56. Regardless, this argument fails. The Sixth Circuit has held that litigation is moot if the challenged scheme was "effectively nullified" by amendments. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012). This is particularly true where there is "no evidence in the record that the [government] has announced any intention of, or made any threat to, reenact" the challenged scheme. *Id.* That marks a "critical" distinction from situations where the government "announced [an] intention to reenact" the allegedly unconstitutional language if the case was dismissed as moot. *Id*. (comparing *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997) and *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)). The *Billboard* court concluded that the challenge to an ordinance was moot because the challenged section of the ordinance in question was simply no longer in effect. *Id*. at 982. The same is true here.

Further, regulatory changes can moot a case, as they have here. In *Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir. 1990), the Circuit held that where regulatory changes provided the requested relief, the case was moot, and the "possibility of noncompliance" sometime in the future did not save the litigation. *Id*. at 414-15.[1] One court in this Circuit emphasized that the Sixth Circuit has "repeatedly labeled as moot" cases where relief was delivered through regulatory changes in government policies. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1015,

---

[1] Mooting litigation over the legality of the original regulation after an agency has rescinded and replaced it is such a "well-settled principle of law," that one Circuit noted it is routine to simply "handle such a matter in an unpublished order." *Alaska v. United States Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021).

8

1018 (M.D. Tenn. 2005). This Court should follow that precedent, find that the IFR has rendered Plaintiffs' claims moot, and dismiss this case.

## II. Plaintiffs Baseless Request for Summary Judgment Should Be Denied

Finally, Plaintiffs request that the Court construe the motion for a consent order as a motion for summary judgment is wholly unsupported and improper, both procedurally and substantively. The Court should reject it outright.

Plaintiffs provide no precedent to justify their request but rather ask the Court to rely on their conclusion that "there is no need for a trial in this case." ECF No. 132, at 7. They fail to "show[] that there is no genuine dispute as to any material fact," as they "must" under the Federal Rules of Civil Procedure to demonstrate that they are entitled to summary judgment. *See* Fed. R. Civ. P. 56(a), (c). They make no effort to point to "particular parts of materials in the record" or otherwise comport with the procedures set forth in the rule. *See id.* This failure alone is enough of a reason to deny the request.

The closest Plaintiffs come to meeting the requirements of Rule 56 is through the conclusory—and inaccurate—assertion that "[t]he parties do not dispute the facts." *See* ECF No. 132, at 7. That is plainly not true. There is a long record of genuine disputes of material fact between the Original Parties in this case. *See, e.g.*, ECF No. 44, at 18, 23 (describing the preliminary injunction record and leaving open the possibility that the Government could still introduce evidence sufficient to demonstrate a compelling interest to justify the presumption); *id.* at 16-18 (acknowledging reports introduced by the Government may be evidence of "intentional discrimination"). Moreover, Intervenor DBEs[2] have repeatedly noted disagreement with material

---

[2] *See, e.g.*, ECF No. 85, at 1 n. 1 (noting that Intervenor DBEs are "parties" whose position must be taken into account); *Moses v. City of Perry*, 90 F.4th 501 (6th Cir. 2024) (explaining a nonparty becomes a party when its motion to intervene is granted).

9

representations made by the Original Parties. *See, e.g.*, ECF No. 125, at 25-26 (highlighting the need for further factual development by disputing Plaintiffs' claim that they "regularly work" in 29 states).

Once the Government agreed to provide Plaintiffs relief beyond what they obtained through the preliminary injunction—first through the proposed consent order, then by agreeing not to enforce the then-existing DBE Program,[3] and finally through the IFR—any need to urgently resolve this matter disappeared.[4] Since there is no effectual relief left for the Court to provide, the proper mechanism to do so is not summary judgment but rather dismissing the case as moot and vacating the preliminary injunction.[5]

---

[3] *See, e.g.*, ECF No. 122-1 (notifying Congress that the Department of Justice would "no longer defend" the presumption).

[4] If the Plaintiffs' interests are in fact implicated in the future, as the Original Parties speculate they one day may be, the most straightforward path is that Plaintiffs, like every other potential litigant, are free to challenge action that they perceive to inflict an actual injury can simply bring new litigation. The courthouse door "remains open," *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1015, 1020 (M.D. Tenn. 2005), as Plaintiffs acknowledge. ECF No. 132, at 6. This, rather than continuing this litigation endlessly in fear of some imaginary administration, is the proper course.

[5] The Original Parties do not dispute that the preliminary injunction should be vacated and any opposition to Intervenor DBEs request is therefore waived. *See, e.g.*, *Brindley* at 509, *McPherson* at 995-96. Because they could not, as the plain facts demonstrate that enforcing the preliminary injunction would be "no longer equitable." *See Doe v. Briley*, 562 F.3d 777, 781 (6th Cir. 2009) (citation modified); *see generally* ECF No. 129, at 15. None of the arguments advanced by nonparties Central Seal and Charbon Contracting ("Denied Intervenors") are persuasive, either. First, the Denied Intervenors filed, without leave of the Court or permission of the parties, a purported opposition to Intervenor DBEs' Motion to Dismiss and Vacate. ECF No. 134. Because they are not parties to this case–this Court having denied their motion to intervene, ECF No. 123–they are no more entitled to file in this case than any other nonparty onlooker, and their response should carry no weight in this Court's deliberation. *See, e.g.*, *Smith v. DeBoyer*, No. 2:22-CV-11572, 2022 WL 3447498, at *1 (E.D. Mich. Aug. 17, 2022) (striking filings by a third party as "improper" and noting that neither the Federal Rules of Civil Procedure or the district's local rules "permit a non-party to file briefs or other documents"). Moreover, Denied Intervenors' arguments boil down to the same unfounded speculation as those advanced by the Original Parties and already addressed above. *See supra* Sec. I; *contra Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003) (finding the potential for damages to be a central reason a challenge to a rescinded rule was not moot); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019) (distinguishing between "regulatory changes [] effected through formal" procedures

## CONCLUSION

"When events during the course of litigation … make it impossible for the relevant court to grant any effectual relief, the court must dismiss the case as moot." *Gun Owners*, 157 F.4th at 837 (internal citations omitted). That is precisely what happened here, and none of the Original Parties' speculative arguments mandate a different result. And because they fail to even counter Intervenor DBEs' argument that the preliminary injunction should be vacated, any opposition is waived. For the foregoing reasons, Intervenor DBEs respectfully request that the Court grant the motion to dismiss and vacatur of the preliminary injunction.

Dated: January 26, 2026                                    Respectfully submitted,

| | |
|---|---|
| Sarah von der Lippe* | */s/ Brooke Menschel* |
| D.C. Bar No. 454585 | Brooke Menschel* |
| Minority Business Enterprise Legal Defense and Education Fund, Inc. | D.C. Bar No. 9000389 |
| | Adnan Perwez* |
| 1104 East Capitol St. NE | D.C. Bar No. 90027532 |
| Washington, DC 20002 | Audrey Wiggins* |
| (202) 744-5415 | D.C. Bar No. 482877 |
| outsidecounsel1@mbeldefwatchdog.org | Democracy Forward Foundation |
| | P.O. Box 34553 |
| Douglas L. McSwain | Washington, DC 20043 |
| KY Bar No. 46895 | (202) 448-9090 Ext. 1011 |
| Bricker Graydon Wyatt, LLP | bmenschel@democracyforward.org |
| 250 West Main Street | aperwez@democracyforward.org |
| Suite 1600 | awiggins@democracyforward.org |
| Lexington, KY 40507 | |
| (859) 288-7415 | |
| dmcswain@bricker.com | |

*Counsel for Intervenor DBEs*
**Admitted pro hac vice*

---

with those where "there are no formal processes required to effect the change," such as in *Akers*). They should be rejected for the same reasons.

11